1  Richard J. Grabowski (SBN 125666)
   rgrabowski@jonesday.com
2  John A. Vogt (SBN 198677)
   javogt@jonesday.com
3  Cheryl L. O'Connor (SBN 173897)
   coconnor@jonesday.com
4  Ryan D. Ball (SBN 321773)
   rball@jonesday.com
5  JONES DAY
   3161 Michelson Drive, Suite 800
6  Irvine, California 92612.4408
   Telephone:  +1.949.851.3939
7  Facsimile:   +1.949.553.7539

8  Kerianne Tobitsch (*pro hac* forthcoming)
   ktobitsch@jonesday.com
9  JONES DAY
   250 Vesey Street
10 New York, New York  10281.1047
   Telephone:  +1.212.326.3939
11 Facsimile:   +1.212.755.7306

12 Attorneys for Plaintiff
   Experian Information Solutions, Inc.

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                   SOUTHERN DIVISION

17

| 18 EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio Corporation, | Civil Action No. 8:24-cv-1186 |
|---|---|

18  EXPERIAN INFORMATION
19  SOLUTIONS, INC., an Ohio
    Corporation,                      Civil Action No. 8:24-cv-1186

20              Plaintiff,            **COMPLAINT**

21       v.                          1.   Violation of the RICO Act
                                          (18 U.S.C. §§ 1961, 1962(c)
22  STEIN SAKS, PLLC, a New York          1964(c)) by:
    company; JUDAH STEIN, a New Jersey
23  resident; YAAKOV SAKS, a Florida      a.   Wire Fraud
    resident, TAMIR SALAND, a New              (18 U.S.C. §§ 1343, 1349)
24  York resident, ELIYAHU BABAD, a
    New Jersey resident, ZEIG LAW FIRM,  b.   Mail Fraud
25  LLC, a Florida company, JUSTIN            (18 U.S.C. §§ 1341, 1349)
    ZEIG, a Florida resident, CHESKY
26  MONK, a New Jersey resident,         c.   Extortion
    DANIEL J. SOFFER, a New Jersey           (18 U.S.C. § 1951)
27  resident, and DOE DEFENDANTS 1-
    10,                                  d.   Obstruction of Justice
28                                            (18 U.S.C. §§ 1503, 1512(c))

| | | |
|---|---|---|
| 1 | Defendants. | e.   Witness Tampering (18 U.S.C. §§ 1512(b)); and |
| 2 | | |
| 3 | | f.   Money Laundering (18 U.S.C. §§ 1956, 1957) |
| 4 | | 2. Violation of the RICO Act (18 U.S.C. §§ 1961, 1962(d) |
| 5 | | 1964(c)) |
| 6 | | 3. Fraud |
| 7 | | 4. Unjust Enrichment |
| 8 | | 5. Abuse Of Process |
| 9 | | 6. Unfair Competition (California Business & Professions Code |
| 10 | | § 17200 *et seq.*) |
| 11 | | <u>JURY TRIAL DEMANDED</u> |

- 2 -

Plaintiff Experian Information Solutions, Inc. ("Experian") alleges as follows:

## **NATURE OF THE ACTION**

1.      Stein Saks, PLLC ("Stein Saks")—a law firm with offices in New Jersey and New York and operating around the country—markets itself as "dedicated to defending and protecting the rights of [its] clients."[1] In reality, the firm and its founders, Yaakov Saks and Judah Stein, have operated a nationwide RICO enterprise comprised of, among others: Stein Saks attorneys, Tamir Saland ("Saland") and Eliyahu Babad ("Babad") (collectively, the "Stein Saks Defendants"); a Florida-based lawyer, Justin Zeig ("Zeig"), and his law firm, Zeig Law Firm, LLC ("Zeig Law"); a New Jersey credit repair operator, Chesky Monk ("Monk); and a New Jersey mortgage broker, Daniel J. Soffer ("Soffer") (collectively, "Defendants"). Defendants also conspired with Yenon Argy ("Argy"), a Florida credit repair operator, and others known and unknown to advance the interests of the enterprise.

2.      The enterprise's ultimate aim was to extort Experian to settle sham lawsuits under the Fair Credit Reporting Act ("FCRA") at fraudulent values. To effectuate the scheme, Defendants conspired to recruit consumer plaintiffs and "set up" cases by manufacturing fake credit denial letters to fabricate claims of injury and actual damages. Using these fake letters, Stein Saks flooded federal courts across the country with sham lawsuits, filing more FCRA cases over the past several years than all but one other law firm.

3.      Defendants' fraud was not limited to Experian or the courts, but also extended to the consumers who had placed their trust in Defendants and on whose behalf Stein Saks filed sham lawsuits against Experian. After settling a sham lawsuit, Defendants would keep nearly all of the proceeds for themselves without informing their clients of how the proceeds would be shared. And, to conceal the fraudulent scheme, a portion of ill-gotten settlement payments would be laundered through the client trust accounts of Stein Saks and Zeig Law to enrich the members of the

---

[1] https://steinsakslegal.com/

enterprise, rather than remitted to the unwitting consumers who had placed their trust in Defendants.

4.     When Experian became suspicious of Defendants' conduct and sought discovery regarding the fraudulent credit denial letters, the Stein Saks Defendants obstructed justice and tampered with witnesses in furtherance of the illegal enterprise by falsely informing the witnesses that their depositions had been cancelled or the lawsuit in which they had been subpoenaed was about to be dismissed.

5.     As a result of Defendants' scheme, Experian has not only been defrauded into settling meritless claims, but it also endured years of litigation in federal courts across the country, incurring substantial legal fees as a proximate and foreseeable result of Defendants' fraudulent scheme. Experian suffered direct and substantial injury to its property, reputation, and goodwill stemming from Defendants' false allegations, and suffered millions of dollars in financial losses litigating the sham lawsuits.

6.     Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (the "RICO" Act), with predicate acts of extortion, mail and wire fraud, money laundering, obstruction of justice, and witness tampering, among others. In addition, Defendants' conduct constitutes common law fraud, unjust enrichment, an abuse of process, and an unfair business practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

7.     Experian brings this action for damages to recoup its losses and remedy the harm caused by Defendants' scheme to defraud Experian, as well as injunctive relief to prevent future harm to Experian and others.

## PARTIES AND NON-PARTY PARTICIPANTS

### A.     Parties

8.     Plaintiff Experian Information Solutions, Inc. is an Ohio corporation with its principal place of business in Costa Mesa, California. Experian is a

"consumer reporting agency" ("CRA") as defined by the FCRA, 15 U.S.C. § 1681a(f).

9.      Defendant Stein Saks, PLLC is a professional limited liability company registered in Nassau County, New York, which according to its website, maintains offices in Hackensack, New Jersey and Cedarhurst, New York. Stein Saks is a law firm that purports to provide consumer protection law services in four principal areas: FCRA violations; Fair Debt Collections Practices Act ("FDCPA") matters; Telephone Consumer Protection Act ("TCPA") issues; and bankruptcy advice and assistance.

10.     Defendant Judah Stein is an attorney licensed in the States of New York and New Jersey, and resides in New Jersey. Judah Stein is one of the named partners and founding members of Stein Saks, where he is a practicing attorney. As described below, Judah Stein designed, initiated, directed, and pursued fraudulent legal claims against Experian in multiple federal district courts. Judah Stein orchestrated the fabrication of false and fraudulent "credit denial letters" from Cornerstone First Mortgage ("Cornerstone") and Funding Resources Mortgage Corp. ("FRMC") that were the basis for the sham lawsuits filed by Stein Saks as counsel of record in multiple federal districts. Judah Stein directed, supervised, and conspired with other Stein Saks employees, multiple credit repair organizations, and other individuals who have unlawfully aided and abetted the scheme to defraud Experian through the fabrication of evidence for use in sham lawsuits.

11.     Defendant Yaakov Saks is an attorney licensed in the State of New Jersey and resides in Florida. Yaakov Saks is one of the named partners and founding members of the law firm Stein Saks, where he is a practicing attorney. As described below, Yaakov Saks designed, initiated, directed, and pursued fraudulent legal claims against Experian in multiple federal district courts. Yaakov Saks also directed and participated in the fabrication of "credit denial letters" from Cornerstone and FRMC that were the basis for sham lawsuits filed by Stein Saks as counsel of record in

multiple federal districts. In addition, Yaakov Saks appeared as counsel of record in some lawsuits based on fake credit denial letters, namely lawsuits filed in the District of New Jersey. Yaakov Saks directed, supervised, and conspired with other Stein Saks employees, multiple credit repair organizations, and other individuals who have unlawfully aided and abetted the scheme to defraud Experian through the fabrication of evidence for use in sham lawsuits.

12.    Defendant Tamir Saland is an attorney licensed in the State of New York and resides in New York. Saland is a practicing attorney with the title Associate at the law firm Stein Saks. As described below, Saland designed, initiated, and pursued fabricated and fraudulent legal claims against Experian in multiple federal district courts. Saland also directed and participated in the fabrication of "credit denial letters" from Cornerstone and FRMC that were the basis for sham lawsuits filed by Stein Saks as counsel of record in multiple federal districts. Saland appeared as counsel of record in at least five sham lawsuits based on false credit denial letters, including in the Eastern District of New York and Central District of California.

13.    Defendant Eliyahu Babad is an attorney licensed in the States of New York and New Jersey and resides in New York. Babad is a practicing attorney with the title Of Counsel at the law firm Stein Saks. As described below, Babad designed, initiated, and pursued fabricated and fraudulent legal claims against Experian in multiple federal district courts. Babad also directed and participated in the fabrication of "credit denial letters" from Cornerstone and FRMC that were the basis for sham lawsuits filed by Stein Saks as counsel of record in multiple federal districts. Babad appeared as counsel of record in sham lawsuits based on a false credit denial letters in the District of New Jersey.

14.    At all times relevant to this Complaint, Defendants Judah Stein, Yaakov Saks, Saland, and Babad were acting as agents of Stein Saks and were acting within the course of that agency.

15.    Defendant Justin Zeig is an attorney licensed in the State of Florida and

resides in Florida. Zeig is a practicing attorney, and is the founder and managing partner of Zeig Law. As described below, acting as an agent of Zeig Law, Zeig initiated and pursued fabricated and fraudulent legal claims against Experian. Zeig also directed and participated in the fabrication of "credit denial letters" from Cornerstone that were the basis for sham lawsuits filed by Stein Saks as counsel of record in multiple federal districts. Zeig appeared as counsel of record in a sham lawsuit based on a false credit letter in the Middle District of Florida.

16. Defendant Zeig Law Firm, LLC is a limited liability company registered in Florida, that maintains offices at 3475 Sheridan Street, Suite 310, Hollywood, Florida 33021. Zeig Law was founded by Zeig, and is a law firm that purports to provide legal services in real estate, family law, and commercial litigation.

17. Defendant Chesky Monk resides in New Jersey. Monk is the Vice President of Sales at Innovative Credit Consultants, a credit repair organization. Monk used his position at Innovative Credit Consultants to identify and recruit plaintiffs for sham lawsuits to be filed by Stein Saks in multiple federal district courts. Monk created or caused to be created fraudulent "credit denial letters" from Cornerstone to be submitted as evidence in the sham lawsuits in exchange for a portion of any settlement money obtained through the lawsuit. Monk directed the sham plaintiffs to sign a "retainer agreement" with Stein Saks, even though the sham plaintiffs had not consulted with or even met any lawyer from Stein Saks before signing the "retainer agreement."

18. Defendant Daniel J. Soffer resides in New Jersey. Soffer is the Vice President of Funding Resources Mortgage Corporation, a licensed mortgage banker. Soffer used his position at FRMC and coordinated with the Stein Saks Defendants to identify consumers for lawsuits, create false evidence of a mortgage denial from FRMC, and share business referrals amongst themselves from which they derive revenue and profit.

19. Defendants DOES 1-10 are presently unidentified or unknown

individuals and/or entities who have facilitated, participated, or cooperated in the unlawful enterprise and scheme to defraud Experian through fabricated legal claims initiated by Stein Saks. The nature and identity of those defendants will become known through discovery.

**B.**    **Non-Party Participants**

20.    Yenon Argy operates a credit repair clinic, Collective Credit International, LLC ("CCI"), located in Hallandale Beach, Florida. Argy is not a lawyer. Since 2018, Argy has worked with Judah Stein, Monk, and Zeig by referring potential lawsuits to Stein Saks and sharing settlement proceeds. Argy conspired and agreed with the other Defendants to manufacture false credit denial letters, as directed by Judah Stein, to extract higher settlement values for cases referred to, and initiated by, Stein Saks. The settlement proceeds from these cases were then laundered by Zeig through Zeig Law and shared with Monk and Argy.

21.    Collective Credit International LLC is a limited liability company registered in Florida that, according to its website, maintains an office in Hallandale Beach, Florida. CCI is a credit repair organization. Since approximately 2010, Argy has been affiliated with CCI and conducted credit repair work through this entity.

## JURISDICTION AND VENUE

22.    This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims brought under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ *et seq.* ("RICO") arise under the laws of the United States.

23.    This Court also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Experian has its principal place of business in California, no Defendant resides in California, and the amount in controversy exceeds $75,000.

24.    This Court has supplemental jurisdiction over all state claims pursuant to 28 U.S.C. § 1367(a).

COMPLAINT
Case No. 8:24-cv-1186

25.     The Court has personal jurisdiction over Stein Saks and Saland because they purposefully directed their activities at the forum, including at Experian who is a resident of the forum. Stein Saks and Saland purposefully directed their activities at the forum and Experian by intentionally filing or causing to be filed sham lawsuits in the Central District of California against Experian, hiring local counsel to facilitate the filing of such lawsuits, and filing motions to appear *pro hac vice* as counsel of record, directly causing harm to Experian in California, where Experian has its principal place of business. *See Hano v. Equifax Info. Servs.*, LLC, No. 2:23-cv-02273 (C.D. Cal.); *Kahen v. Equifax Info. Servs., LLC*, 2:23-cv-08106 (C.D. Cal); *Rostami v. Equifax Info. Servs., LLC,* No. 2:23-cv-04872 (C.D. Cal.). Stein Saks' and Saland's contacts with the forum arise from the same conduct driving Experian's claims – namely, the filing of sham lawsuits against Experian based on fabricated evidence of damages. Accordingly, it would not offend traditional notions of fair play and substantial justice for the Court to exercise personal jurisdiction over Stein Saks and Saland.

26.     This Court has personal jurisdiction over all Defendants pursuant to 18 U.S.C. § 1965(b) because the Court has personal jurisdiction over Stein Saks and Saland for the reasons described above, there is no other district in which a court will have personal jurisdiction over all alleged co-conspirators, and the facts establish a single nationwide RICO enterprise and conspiracy. There is no district in which a court would have personal jurisdiction over all alleged co-conspirators because Defendants reside in different states: Judah Stein, Soffer, and Monk reside in New Jersey; Yaakov Saks and Zeig reside in Florida and Zeig Law is registered in Florida; and Saland and Babad reside in New York and Stein Saks is registered in New York.

27.     Venue is proper under 28 U.S.C. § 1391(b)(2) because Stein Saks filed at least two of the sham lawsuits against Experian giving rise to this complaint in this district, Experian has suffered all of the harm caused by the enterprise and conspiracy in this district, and a substantial part of the property that is the subject of this action

is situated here, namely payments made by Experian to settle sham lawsuits filed by Stein Saks and attorneys' fees incurred by Experian in defending sham lawsuits filed by Stein Saks in this and other Districts.

28.    Venue is also proper under 28 U.S.C. § 1391(b)(3) because Stein Saks and Saland are subject to this Court's personal jurisdiction, and the remaining defendants reside in at least three different states.

## FACTUAL ALLEGATIONS

### A.    The Stein Saks Business Model

29.    Over the last several years, Stein Saks has become one of the most prolific filers of FCRA lawsuits in the country. Between 2021 and 2023, Stein Saks commenced the most class action lawsuits in the country, filing 1,668 cases in 51 federal districts.[2] And the firm ranked second amongst plaintiffs' firms in FCRA cases, filing 1,139 such lawsuits from 2020 to 2022.[3]

30.    Stein Saks' high-volume business model is fueled by credit repair organizations, which solicit consumers to sign up for credit repair services. These organizations typically charge (illegal) fees to attempt to remove derogatory items of credit information from the consumers' files. Regardless of whether the derogatory information is inaccurate, the credit repair organization will bombard CRAs with frivolous dispute letters designed to manufacture FCRA claims. After the CRA completes its reinvestigation, and the disputed derogatory information remains, the credit repair organizations will refer cases to Stein Saks to commence a lawsuit, even where the information at issue is entirely accurate and/or the consumer has suffered no harm. In return, Stein Saks impermissibly shares a portion of the settlement proceeds with the credit repair organizations.

31.    Stein Saks' practices have repeatedly been criticized by courts. As Judge

---

[2] https://www.law360.com/articles/1831912/nj-ny-law-firms-dominate-class-action-filings-since-2021

[3] https://www.law360.com/articles/1590277/fcra-data-breach-suits-fuel-consumer-protection-docket

Chen put it, Stein Saks "appears to be bringing multiple meritless FCRA suits, presumably in the hopes of scoring a quick settlement and attorney's fees." *Butnick v. Experian Info. Sols., Inc.*, 2021 WL 395808, at *5 n.8 (E.D.N.Y. Feb. 4, 2021). Judge Seibel similarly admonished the firm for "advanc[ing] farfetched, if not absurd, interpretations of the statute." *Ostreicher v. Chase Bank USA, N.A.*, 2020 WL 6809059, at *6 (S.D.N.Y. Nov. 19, 2020). As a result of these practices, courts have issued sanctions against Stein Saks. *See*, *e.g.*, *Kaufman v. Equifax Info. Servs., LLC*, 2019 WL 3997461 (E.D.N.Y. Aug. 22, 2019).

32.     In 2021, Stein Saks' model of advancing frivolous lawsuits was put into jeopardy by the Supreme Court's decision in *Transunion LLC v. Ramirez*, 594 U.S. 413 (2021), which held that the mere risk of future harm does not establish Article III standing. In the wake of *Ramirez,* courts routinely dismissed lawsuits brought by Stein Saks for failure to satisfy Article III. *See*, *e.g.*, *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387 (E.D.N.Y. 2022); *Spira v. Trans Union LLC*, No. 21-cv-2367, 2022 WL 2819469 (S.D.N.Y. July 19, 2022); *Krausz v. LoanDepot.com, LLC*, No. 22-cv-152, 2022 WL 16960928 (S.D.N.Y. Nov. 16, 2022).

33.     In April 2023, the string of dismissals culminated in a sanctions order against Stein Saks for filing yet another lawsuit that "obviously fails adequately to allege standing." *Zinnamon v. Satya Jewelry II, LLC*, No. 23-cv-781, 2023 WL 3511123, at *1 (S.D.N.Y. Apr. 28, 2023). As Judge Caproni observed, "Stein Saks ha[s] a business model that appears to rest on filing a high volume of virtually identical complaints" and "[t]he firm's apparent decision to spend no time developing the facts necessary to allege standing and just hope that it does not get caught [] wasting the Court's time." Judge Caproni further made clear that "[t]he firm's model must change." *Id*. at *3.

**B.     The RICO Enterprise And Scheme To Defraud**

34.     In response to *Ramirez*, Stein Saks changed its business model by implementing a scheme to manufacture evidence of credit denials to demonstrate

1  standing and actual damages in FCRA lawsuits against Experian.

2      35.    Stein Saks and its founders, Judah Stein and Yaakov Saks, formed an

3  association-in-fact enterprise with Saland, Babad, Zeig Law, Zeig, Soffer, Monk,

4  Argy, and others known and unknown to conduct the scheme through a pattern of

5  racketeering activity. The purpose of the enterprise was to secure rapid out-of-court

6  settlements from Experian, and thereafter largely appropriate the settlement proceeds

7  themselves, before Experian could discover that the injury and damages alleged in

8  the sham lawsuits were based upon fake, false, and fraudulent evidence.

9      36.    The enterprise operated at least two schemes: the "Cornerstone Scheme"

10  and the "FRMC Scheme." Both schemes operated under similar methodologies,

11  targeted the same victim, enriched the same or similar RICO participants, and were

12  pursued for the same or similar purposes.

13      37.    In the Cornerstone Scheme, the Stein Saks Defendants, Zeig Law, Zeig,

14  Monk, and Argy knowingly and intentionally agreed and conspired to identify

15  consumers for lawsuits, fabricate evidence of damages, induce settlement payments,

16  and share ill-gotten fees and settlement proceeds amongst themselves. The scheme

17  was effectuated by manufacturing fake, false, and fraudulent denial letters from

18  Cornerstone (the "Fake Cornerstone Letters").

19      38.    In the FRMC Scheme, the Stein Saks Defendants, Zeig Law, Zeig, and

20  Soffer knowingly and intentionally agreed and conspired to identify consumers for

21  lawsuits, fabricate evidence of damages, induce settlement payments, and share ill-

22  gotten fees and settlement proceeds amongst themselves. Like the Cornerstone

23  Scheme, the FRMC Scheme was facilitated by the creation of fake, false, and

24  fraudulent denial letters from FRMC (the "Fraudulent FRMC Letters").

25      39.    As an integral part of the enterprise, the Stein Saks Defendants and Zeig,

26  through Zeig Law, paid Monk, Soffer, and Argy to compile litigation packages to

27  "set up" cases. These packages included, among other things, an executed Stein Saks

28  retainer agreement, a copy of any dispute correspondence with Experian, and the

1    manufactured "evidence" of credit denials.

2        40.    The plaintiffs in the sham lawsuits never met or consulted with the Stein

3    Saks Defendants prior to the filing of their respective cases. While Stein Saks claimed

4    in its retainer agreement that it "explained" the terms of the agreement to its clients

5    (*i.e.*, the plaintiff), the Stein Saks Defendants never communicated with the clients

6    regarding the basis for their claims (or lack thereof). Nor did the Stein Saks

7    Defendants explain to the clients the fee arrangements, including how any settlement

8    amounts would be shared, let alone that the fees would be shared with the credit

9    repair operators.

10       41.    Had Experian not discovered the conspiracy and scheme in early 2024,

11   the illegal conduct of the enterprise would have likely continued indefinitely.

12   **C.    The Cornerstone Scheme**

13       **1.    The Cornerstone Participants**

14       42.    In early 2018, the Stein Saks Defendants, Zeig Law, Zeig, Monk, and

15   Argy (the "Cornerstone Participants") began coordinating to "set up" FCRA cases

16   by manufacturing fraudulent credit denials and sharing ill-gotten settlement

17   proceeds. To facilitate the scheme, and with the specific intent to defraud, the

18   Cornerstone Participants would sign up consumer clients to submit disputes of

19   derogatory items of credit information, even if the information was entirely accurate.

20   Once Experian (or the other CRAs) completed the reinvestigation, the Cornerstone

21   Participants would instruct the clients to apply for credit opportunities for which the

22   Cornerstone Participants knew the clients would not qualify. This, in turn, would

23   generate a credit denial letter that could be used as fraudulent "evidence" of standing

24   and damages caused by Experian.

25       43.    The case of *James Leone v. Equifax*, No. 22-cv-00714 (D.N.J.) is

26   illustrative. Prior to filing the case, Judah Stein instructed Argy to create evidence to

27   support Leone's claims of injury. On January 5, 2022, Judah Stein wrote to Argy's

28   assistant, copying Argy, expressing the need for a credit denial: "VERY

IMPORTANT (I spoke to [Argy]) – can you have client apply for credit, we need pulls from Equ and TU. I see back in September on the report there were credit checks for Nj Lenders, that would work again, were they rejected? A mortgage denial would be great, if not a CC denial."

**From:** Judah Stein <jstein@SteinSaksLegal.com>
**Sent:** Wednesday, January 5, 2022 2:06 PM
**To:** Lucy C. <lucilleicc@hotmail.com>
**Cc:** Yenon Argy @ CCI <yenon@callcci.com>; Yenon Argy <yenonargy@hotmail.com>
**Subject:** RE: JAMES LEONE VS EQUIFAX, TRANSUNION, CHASE

Please send the retainer. VERY IMPORTANT (I spoke to Yenon)– can you have client apply for credit, we need pulls from Equ and TU. I see back in September on the report there were credit checks for Nj Lenders, that would work again, were they rejected? A mortgage denial would be great, if not a CC denial.

Thank you,

Judah


Judah Stein, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
P. (201) 282-6500 ext 103
F. (201) 282-6501
steinsakslegal.com

**PLEASE NOTE OUR NEW ADDRESS**



44.     When there was no response, Judah Stein followed up several times. On January 6, 2022, Judah Stein wrote to Argy and his assistant: "Is he going to apply for credit?" Judah Stein again wrote to Argy and his assistant on January 10, 2022: "Following up again – can you get the client to apply for credit. We need a pull from TU and EQU." Judah Stein wrote the same message on January 14, 2022. Judah Stein subsequently emphasized the need for the fraudulent credit denial on January 20, 2022: "I need that before I file, so please keep that in mind." Getting no response, Judah Stein wrote again on January 27, 2022: "Can someone please respond on this." That same day, Argy's assistant responded to Judah Stein, advising him that the client

COMPLAINT
Case No. 8:24-cv-1186

does not want to apply for credit: "He wont apply," to which Judah Stein replied: "Yenon – please call me back on this."

45.     On February 3, 2022, Judah Stein wrote to Argy and his assistant: "Did you try one more time with this guy? Regarding applying for credit?" The person that Judah Stein flippantly refers to as "this guy" is his own client. Argy's assistant wrote back that same day, on February 3, 2022: "He said he was declined in December already does he still need to apply? What date does it need to be declined? When was the case filed?"

46.     In response, Judah Stein then instructs Argy's assistant as to the exact type of credit denial he needed: "The case was not filed, I was waiting on a credit denial. Both his TU and EQU have no inquires since September so if he applied they did not pull from there which is what we need. The disputes are dated 10/26 so ideally declines from end of November and on work."

From: Judah Stein <jstein@SteinSaksLegal.com>
Sent: Thursday, February 3, 2022 4:34 PM
To: Lucy C. <lucilleicc@hotmail.com>
Cc: Yenon Argy @ CCI <yenon@callcci.com>
Subject: RE: JAMES LEONE VS EQUIFAX, TRANSUNION, CHASE

The case was not filed, I was waiting on a credit denial. Both his TU and EQU have no inquires since September so if he applied they did not pull from there which is what we need. The disputes are datd 10/26 so ideally declines from end of November and on work.


Thank you,


Judah


Judah Stein, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
P. (201) 282-6500 ext 103
F. (201) 282-6501
steinsakslegal.com

PLEASE NOTE OUR NEW ADDRESS



47.     In accordance with Judah Stein's instruction, Argy wrote to Judah Stein

on February 17, 2022: "He applied with Discover but was declined. They only did a soft inquiry[.] Told him to apply for Target & Barc or Capital one. Will let you know."

**From:** yenon@callcci.com <yenon@callcci.com>
**Sent:** Thursday, February 17, 2022 12:31 PM
**To:** Judah Stein <jstein@SteinSaksLegal.com>; 'Lucy C.' <lucilleicc@hotmail.com>
**Subject:** RE: JAMES LEONE VS EQUIFAX, TRANSUNION, CHASE

He applied with Discover but was declined. They only did a soft inquiry

Told him to apply for Target & Barc or Capital one. Will let you know.

48.     Judah Stein then instructed Argy on February 17, 2022, to manufacture fraudulent credit denials by having Leone apply for credit with Capital One Venture X, which, according to Judah Stein, was a premium card for higher income individuals and was hard to get.

**To:**        yenon callcci.com[yenon@callcci.com]; 'Lucy C.'[lucilleicc@hotmail.com]
**From:**    Judah Stein[jstein@SteinSaksLegal.com]
**Sent:**     Thur 2/17/2022 12:48:03 PM (UTC-05:00)
**Subject:**  RE: JAMES LEONE VS EQUIFAX, TRANSUNION, CHASE
This card pulls from all three and is hard to get:
https://www.capitalone.com/credit-cards/venture-x/
Thank you,
Judah
Judah Stein, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
P. (201) 282-6500 ext 103
F. (201) 282-6501
steinsakslegal.com
PLEASE NOTE OUR NEW ADDRESS

49.     This same scheme was carried out in many other matters, including the case of *Miriam Nachison v. Equifax*, No. 22-cv-02833 (S.D.N.Y.). As in the *Leone* matter, on February 16, 2023, Judah Stein directed Argy to have Nachison "apply for credit that pull from [Equifax] and [Experian]," suggesting the Capital One Venture

X card.

From: Judah Stein <jstein@SteinSaksLegal.com>
Sent: Wednesday, February 16, 2022 9:42 AM
To: Lucy C. <lucilleicc@hotmail.com>
Cc: Yenon Argy @ CCI <yenon@callcci.com>
Subject: RE: MIRIAM NACHISON VS EXPERIAN, EQUIFAX, AMERICAN EXPRESS
Please send the retainer and please have the client apply for credit that pull from EQU and Exp. It can be from anywhere but if you want a card that pull from all three, this one des:
https://www.capitalone.com/credit-cards/venture-x/
Thank you,
Judah
Judah Stein, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
P. (201) 282-6500 ext 103
F. (201) 282-6501
steinsakslegal.com
PLEASE NOTE OUR NEW ADDRESS

50.     On February 25, 2022, Judah Stein directed Argy to "get the client to apply for something that she will get rejected from" because, in Judah Stein's words, "it would help her case" against Experian.

To:      Lucy C.[lucilleicc@hotmail.com]
Cc:      yenon callcci.com[yenon@callcci.com]
From:    Judah Stein[jstein@SteinSaksLegal.com]
Sent:    Fri 2/25/2022 11:45:11 AM (UTC-05:00)
Subject: RE: MIRIAM NACHISON VS EXPERIAN, EQUIFAX, AMERICAN EXPRESS

We can go forward as is, if you think you can get the client to apply for something that she will get rejected from or at least will not get as good of a deal as she would have, like a mortgage, refinance or a loan, it would help her case.
Thank you,
Judah
Judah Stein, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
P. (201) 282-6500 ext 103
F. (201) 282-6501
steinsakslegal.com
PLEASE NOTE OUR NEW ADDRESS

51.     The *Leone* and *Nachison* matters were not outliers. To the contrary, the Cornerstone Participants actively conspired to manufacture fraudulent credit card denials to "set up" numerous cases.

52.     On October 6, 2022, Monk and Argy exchanged a series of WhatsApp messages regarding setting up numerous cases. In one case, the client was apparently "a very wealthy guy," which caused Monk to express concern regarding "risking [the client] getting an approval." Following Judah Stein's directive, Argy instructed Monk to have the client apply for the Capital One Venture X credit card and include an income of $60,000."

```
[10/6/22, 9:52:58 AM] Chesky Monk: Setting up email accounts. , what's Belen's last
name ? It's asking me for that
[10/6/22, 10:05:06 AM] ןופ: Patterson
[10/6/22, 10:10:46 AM] Chesky Monk: Thanks will do later I had to leave office
[10/6/22, 10:10:54 AM] Chesky Monk: See if yours works
[10/6/22, 10:10:59 AM] Chesky Monk: I sent you the info
[10/6/22, 10:12:01 AM] ןופ: Ok.  I can't get it to download
[10/6/22, 10:37:29 AM] Chesky Monk: What ?
[10/6/22, 12:40:29 PM] Chesky Monk: Pls do breaks they need 680+
[10/6/22, 12:40:43 PM] ןופ: OK
[10/6/22, 12:40:52 PM] Chesky Monk: Are you getting DN notifications ?
[10/6/22, 12:40:57 PM] ןופ: we need the icreditgroup.com emails so we can get the dn
notifications
[10/6/22, 12:40:58 PM] Chesky Monk: And belen ?
[10/6/22, 12:41:11 PM] Chesky Monk: Did you set it up ?
[10/6/22, 1:10:51 PM] Chesky Monk: Can you pls do Yosef Colish
[10/6/22, 1:11:19 PM] ןופ: Done
[10/6/22, 1:11:25 PM] Chesky Monk: Ty
[10/6/22, 9:40:46 PM] Chesky Monk: Which card should Daniel Taillard apply for to
get a denial ?
[10/6/22, 9:40:56 PM] Chesky Monk: He is a very wealthy guy .. we are risking him
getting an approval
[10/6/22, 9:41:27 PM] ןופ: Capita one venture x.  Must put annual income of $60k
[10/6/22, 9:42:52 PM] Chesky Monk: Ok
```

53.     On January 18, 2023, Argy again instructed Monk to get a denial for another client by having him apply for the Capital One Venture X credit card "[w]ith a low income."

| | | |
|---|---|---|
| [1/18/23 | 9:56:46 AM] Chesky Monk: Kanelsky which card should he try inorder to get a denial ? | |
| [1/18/23 | 9:57:51 AM] ןופ: Capital one venture x | |
| [1/18/23 | 9:57:57 AM] ןופ: With a low income | |

54.     On information and belief, the Cornerstone Participants secured hundreds of settlements based upon fraudulent credit card denials.

**2.     Operation of the Cornerstone Scheme**

55.     Although manufacturing credit card denials initially proved effective, Judah Stein told Argy that they would need to try something different in or around

COMPLAINT
Case No. 8:24-cv-01186

January 2023. To that end, Judah Stein told Monk and Argy that he had developed a new method to fabricate injury and damages with fraudulent mortgage denial letters, which worked better than credit card denials. Argy and Monk enthusiastically embraced the new method of falsifying evidence by creating the Fake Cornerstone Letters.

56.     On January 23, 2023, Judah Stein directed Argy to use a template to create the Fake Cornerstone Letters. In an email to Argy with a subject line "Mortgage denial," Judah Stein wrote: "This is an example of a letter" and pasted the content for the template, which identified the specific item of information at issue in the litigation Judah Stein planned to initiate.

**From:** Judah Stein <jstein@SteinSaksLegal.com>
**Sent:** Monday, January 23, 2023 2:22 PM
**To:** yenon callcci.com <yenon@callcci.com>
**Subject:** Mortgage denial

This is an example of a letter:

RE: Refinance

Dear _____,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, at this time, due to the late mortgage payment with NR/SMS/CAL, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance.

Thank you,

Judah


Judah Stein, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
P. (201) 282-6500 ext 103
F. (201) 282-6501
steinsakslegal.com

**PLEASE NOTE OUR NEW ADDRESS**



57.     Argy followed Judah Stein's direction and used the template to manufacture dozens of Fake Cornerstone Letters that were used in sham lawsuits filed by members of enterprise. The Fake Cornerstone Letters appeared on

Cornerstone's letterhead and appeared to be signed by Carol Franz ("Franz"), a Florida-based mortgage broker. The Fake Cornerstone Letters were nearly identical (including the same typographical error on nearly every one) to the January 23, 2023 template that Judah Stein instructed Argy to use.



## Refinance

May 17th, 2023

Dear Sheindle Sofer,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Synchrony/ Gap account that appears, your credit scores has been   affected   and you would be paying a higher interest rate. Based on your current scores, it would   not   make   sense   for   you   to refinance your mortgage.

58. According to Judah Stein, the Fake Cornerstone Letters worked better than standard credit denials because, as revealed on the face of the model language that Judah Stein sent to Argy, the Fake Cornerstone Letter specifically and falsely said that the denial was based solely upon the derogatory account on which Judah Stein was going to sue. That way, Judah Stein could argue that his client was denied credit because of Experian's reporting of that specific account, and that specific account alone, and not as the result of any other derogatory tradelines that were reporting on his client's credit file, which would harm the sham lawsuit.

59. For example, in one case, the client had ten negative accounts reporting on his credit file—with six of those accounts listed in "charge off" status totaling $89,837.00, and others reporting as "paid in settlement" and "paid for less than full balance." Despite the seriousness of these delinquencies, the only derogatory account mentioned in the Fake Cornerstone Letter was a Verizon account reporting as $178 past due as of January 23, 2023, which was the least derogatory account appearing in the client's credit file.

60.     The Cornerstone Scheme proved lucrative. In a voicemail left by Monk to Argy in June 2023, Monk boasted that if they could find 20 additional consumers a month for lawsuits, then they could boost revenue for all participants in the enterprise by generating "***180 violations a month at $5,000 a violation, [] you're talking about almost a million dollars a month. Times that by 12, that's $12 million a year. … That's a lot of money.*** And it's only 20 files. Twenty files on our end is not a big deal. ***You're talking about a lot of money for not that much amount of effort. It's all a matter of having it set up correctly.*** Which is probably what we should be doing now. [] ***Making sure all the pieces work. There's no holes in the system . . . . Make sure it's air tight, water tight, and then we can scale it.***"

61.     Between January 2023 and September 2023, Stein Saks, through its agents Judah Stein, Yaakov Saks, Saland, and Babad, filed numerous sham lawsuits against Experian based on the Fake Cornerstone Letters created by Argy, including on behalf of Amin Adjmi, Jason Gang, Shmuel Glick, Yonaton Hano, Armin Kahen, Yehuda Kanelsky, Yosef King, Adam Mizrahi, Sheindle Sofer, and Mark Zabludovsky.

62.     The Fake Cornerstone Letters were used to support false allegations regarding the purported injury and actual damages suffered by the plaintiffs. The sham Cornerstone lawsuits were filed in at least six different jurisdictions: Central District of California, Eastern District of New York, Southern District of New York, District of New Jersey, Eastern District of Pennsylvania, and Middle District of Florida.

63.     Sean Cahan ("Cahan"), the President and Chief Executive Officer of Cornerstone, confirmed that the Fake Cornerstone Letters were indeed fake, false, and fraudulent.

64.     On January 23, 2024, Cahan declared under penalty of perjury that he had conducted a search of Cornerstone's business records and systems and verified that none of the plaintiffs in the sham Cornerstone lawsuits had "ever applied for

credit, or had their credit run, or received a declination letter from Cornerstone." In fact, he declared that Cornerstone did not have any record of any of the plaintiffs. Cahan also identified attributes of Fake Cornerstone Letters themselves that indicated fraud. For example, the letters included "only the very top portion of Cornerstone's letterhead" and were missing a "seafoam green line that typically appears below the 'Cornerstone First Mortgage' lettering on all genuine Cornerstone letters." They were also "missing other information that is included in genuine letters from Cornerstone, including Cornerstone's licensing information in the various jurisdictions in which it does business."

65. Franz, the purported signatory on the Fake Cornerstone Letters, also declared under penalty of perjury that she did not prepare, authorize, sign, or authorize another person to apply her signature to the Fake Cornerstone Letters for any of the plaintiffs in the sham Cornerstone lawsuits.

### 3. Laundering the Proceeds of the Cornerstone Scheme

66. The Cornerstone Participants used the fake credit denials to extort a settlement from Experian. Once a case settled, the proceeds would be laundered through the client trust accounts of Stein Saks and Zeig Law and distributed amongst the Cornerstone Participants with little to no money paid to the plaintiff in the lawsuit.

67. Specifically, the Cornerstone Participants knowingly and intentionally conspired and agreed to launder the settlement proceeds from the sham lawsuits as follows:

    a. The entire settlement check would be deposited into the Stein Saks's client trust account;

    b. Stein Saks would retain 60% of the settlement proceeds and transfer 40% to Zeig through the Zeig Law's client trust account;

    c. Zeig would then mail a check for half of his share (20% of the total) to Argy;

    d. Argy would electronically transfer a portion of his share via Zelle to

Monk; and

e.  the client would receive no more than $1,000, but often received nothing.

68.    The Cornerstone Participants devised and agreed to this intentionally opaque structure to conceal the nature of the fraudulent scheme, the fact that the money was illicitly-obtained, and the payment of unlawful referral fees to Zeig Law, Zeig, Monk, and Argy.

69.    By laundering the money in this way, the Stein Saks Defendants avoided alerting authorities of impermissibly sharing settlement proceeds with an out-of-state lawyer (Zeig Law and Zeig) who performed no actual legal work on any case and with non-lawyers (Monk and Argy), both of which are prohibited by the New York Rules of Professional Conduct and other ethical standards.

70.    Between December 26, 2022 and February 22, 2024, Zeig Law and Zeig issued dozens of checks from his attorney trust account to Argy related to settlements of suits filed on behalf of plaintiffs Zeig and Argy had referred to Stein Saks.

71.    The checks issued by Zeig Law and Zeig to Argy's company, CCI, for his 20% share of settlement proceeds included the plaintiff's name listed on the memo line of each check.

72.    This intentionally opaque financial structure was intended to hide the both the involvement of Zeig Law, Zeig, Argy, and Monk in the sham lawsuits and the payment of referral fees to them, and became an essential part to the illegal activity by the association-in-fact enterprise.

### 4.    Consciousness of Guilt and Obstruction

73.    As the Cornerstone Scheme progressed, Monk and Argy grew worried that their fraud would be discovered because the plaintiffs' Experian credit files did not show credit inquiries that corresponded to the Fake Cornerstone Letters. They were concerned that using the Fake Cornerstone Letters "didn't make sense" without a record of such an inquiry.

74.     In a phone call with Judah Stein, Monk and Argy expressed their concerns regarding the lack of credit inquiries corresponding to the Fake Cornerstone Letters. Judah Stein assured Monk and Argy that the Fake Cornerstone Letters were sufficient to extract a settlement from Experian and that no one would discover the fraud.

75.     Although their concerns were initially assuaged by Judah Stein's assurances, Monk and Argy raised alarm on December 15, 2023, that their fraud would be uncovered during the deposition of Adam Mizrahi, who was a plaintiff in one of the sham Cornerstone lawsuits. In a series of WhatsApp messages, Monk and Argy discussed the Cornerstone Scheme and the potential consequences of their actions, citing a link to a DOJ press release of a guilty plea mortgage fraud conspiracy in the District of New Jersey: https://www.justice.gov/opa/pr/real-estate-investor-pleads-guilty-165m-mortgage-fraud-conspiracy.

| [12/15/23] | 9:33:23 AM] Chesky Monk: I am not so comfortable with Mizrachi going to depo |
| --- | --- |
| [12/15/23] | 9:33:35 AM] יָנוֹן: Why |
| [12/15/23] | 9:34:32 AM] Chesky Monk: Corner stone |
| [12/15/23] | 9:34:52 AM] Chesky Monk: Wasn't happy with the whole idea but esp now |
| [12/15/23] | 11:37:50 AM] Chesky Monk: https://www.justice.gov/opa/pr/real-estate-investor-pleads-guilty-165m-mortgage-fraud-conspiracy |
| [12/15/23] | 12:53:12 PM] Chesky Monk: Pls call me |
| [12/15/23] | 3:42:24 PM] יָנוֹן: I wouldn't talk by phone right now to Moshe if I were you |
| [12/15/23] | 3:43:53 PM] Chesky Monk: Oish I did already ? You think that's ok ? I didn't say anything |
| [12/15/23] | 3:48:33 PM] Chesky Monk: <attached: 00012970-AUDIO-2023-12-15-15-48-33.opus> |
| [12/15/23] | 3:50:27 PM] יָנוֹן: <attached: 00012971-AUDIO-2023-12-15-15-50-27.opus> |
| [12/15/23] | 3:51:05 PM] Chesky Monk: Yep thx |

76.     Monk made clear that that he was "not so comfortable with Mizrachi going to depo" because of "Corner stone." Monk also reiterated that he "[w]asn't happy with whole idea but esp now." Wanting to conceal the fraud, Argy responded that he "wouldn't talk by phone right now to Moshe if I were you."[4]

77.     The concerns amongst the Cornerstone Participants regarding the potential exposure of the Cornerstone Scheme intensified after Experian issued subpoenas to Cornerstone and Franz for documents and a deposition in the *Mizrahi*

---

[4] Argy's WhatsApp handle is יָנוֹן, which means Yenon in Hebrew.

case on or around December 7 and 18, 2023, respectively.

78.     In response to the subpoenas, Judah Stein and Argy coordinated to prevent Franz from responding to the subpoenas and to obstruct Experian from uncovering the fraud.

79.     On December 12, 2023, Argy left Franz a voicemail, informing her that he had spoken to Judah Stein, who "said there's nothing to worry about" because the case would "settle out." The next day, Argy circled back with Judah Stein to see if anything had changed, because he "want[ed] to keep [Franz] in the loop."

80.     After Experian served a second subpoena on Franz to take her deposition on January 3, 2024, Franz immediately reached out to Argy, informed him that she "[g]ot second service," and Argy responded that he's "talking to Judah now."

81.     When it became clear that her deposition was inevitable, Stein Saks, on January 2, 2023, sought Experian's consent to dismiss the case with prejudice—one day before Franz was scheduled to be deposed. That same day, Experian refused to consent to the dismissal, explaining to Stein Saks that Experian intended to complete third party discovery and depose the plaintiff. Afterwards, Argy asked Judah Stein: "Did they [Experian] agree to dismiss?" When Judah Stein wrote back, "No," Argy expressed his fear that the fraud would be uncovered by responding "Omg."

82.     The next day, on or around January 3, 2024, Stein Saks filed a motion to dismiss the *Mizrahi* case with prejudice. At the same time, Judah Stein directed Argy to lie to Franz to prevent her from testifying, specifically instructing Argy to "[j]ust tell her everything is on hold but if she gets anything else she should tell you ASAP before she does anything." Nothing was "on hold," however. As consequence of that direction, Franz did not appear for her deposition, forcing Experian to expend the time and incur expense of a motion to compel.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

From: Judah Stein <jstein@SteinSaksLegal.com>
Sent: Wednesday, January 3, 2024 10:52 AM
To: Yenon @ CCI <yenon@callcci.com>
Subject: RE: Adam Mizrahi
Ok did you talk to her about it all? Just tell her everything is on hold but if she gets anything else she should tell you ASAP before she does anything.

Thank you,
Judah
Judah Stein, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
P. (201) 282-6500 ext 103
F. (201) 282-6501
steinsakslegal.com



83.    On January 4, 2024, Experian served Franz with the motion to compel. Franz, in turn, forwarded a copy of the motion to Argy, who passed it along to Judah Stein. That same day, Juda Stein and Argy spoke on the phone, while Argy was simultaneously communicating with Franz and relaying Judah Stein's instructions about how to respond to Experian's motion.

84.    In addition to preventing Franz from being deposed, Judah Stein and Argy also coordinated to prevent the deposition of Cahan and Cornerstone. On January 4, 2024, at the direction of Judah Stein, Argy told Franz in a WhatsApp communication that there was "No need to respond" to Experian, and to "Tell [C]ornerstone not to respond as well." Based on information from Judah Stein and Argy, Franz told Cahan that the *Mizrahi* case had been dismissed and forwarded to Cahan the dismissal papers that "they" (*i.e.*, Stein Saks) had sent her.

85.    Six days later, on January 10, 2024, Experian filed its opposition to Stein Saks' motion to dismiss in *Mizrahi*, revealing for the first time its belief that the Fake

Cornerstone Letters appeared fraudulent and that Stein Saks appears to have obstructed Experian's efforts to depose Franz.

86.    The next day, on January 11, 2024, Judah Stein and Argy communicated by WhatsApp because the "Messages and calls are end-to-end encrypted" and "No one outside of this chain, even WhatsApp, can read or listen to them." In the communication, Argy highlighted three other cases—Sofer, Gang, and Hano—in which the Fake Cornerstone Letters were used and asked whether Judah Stein would respond that the Fake Cornerstone Letters were merely "an opinion and not a denial." In response, Judah Stein acknowledged the other cases and said that "[t]here is no response to be made now."

| [1/11/24, 8 59 48 AM] Judah Stein | Messages and calls are end-to-end encrypted. No one outside of this chat, not even WhatsApp, can read or listen to them. |
| [1/11/24, 8 59 48 AM] אני | They answered.  And referenced sofer, gang , Hano |
| [1/11/24, 9 49 57 AM] אני | Voice call, No answer |
| [1/11/24, 9 52 04 AM] Judah Stein | yup |
| [1/11/24, 9 52 34 AM] אני | Call me |
| [1/11/24, 1 24 38 PM] אני | Are you responding to the motion that this letter was just an opinion and not a denial ? |
| [1/11/24, 1 27 14 PM] Judah Stein | There is no response to be made now |

87.    Thereafter, on January 16, 2024, the Stein Saks Defendants, as in *Mizrahi*, attempted to dismiss another case, without the knowledge or consent of the client, to conceal their fraud. In doing so, the Stein Saks Defendants falsely represented to the court that the plaintiff "no longer wishes to pursue her claims against . . . Experian."

88.    The Stein Saks Defendants knowingly undertook these actions to obstruct Experian's efforts to uncover the fraud perpetuated in the Cornerstone Scheme.

### 5.    The Sham Cornerstone Lawsuits

#### a.    *Mizrahi v. Experian*

89.    On June 20, 2023, Stein Saks, through its agent Saland, electronically filed a sham lawsuit in the Eastern District of New York on behalf of Adam Mizrahi ("Mizrahi"), alleging FCRA violations against Experian, Equifax, and Verizon. *See*

*Mizrahi vs. Equifax Information Services, LLC, et al.*, No. 2:23-cv-4570 (E.D.N.Y.). Stein Saks, through Saland, electronically filed the Mizrahi Complaint through the Eastern District of New York CM/ECF system.

90.     In doing so, Stein Saks and Saland knowingly and intentionally made false allegations in the Mizrahi Complaint in order to state an FCRA claim, including, among others, that: (1) Mizrahi had applied for a refinance mortgage loan from Cornerstone in May 2023; (2) Mizrahi received a letter from Cornerstone "advising him that 'due to the Verizon account that appears, your credit scores has been affected and you would be paying a higher interest rate'" and "[b]ased on your current scores, it would not make sense for you to refinance your mortgage;" and (3) Experian's "inaccurate reporting of the Account was a substantial factor contributing to [Mizrahi's] inability to qualify for an affordable interest rate on a refinanced loan." Mizrahi Compl. ¶¶ 42-45.

91.     Mizrahi has never applied for credit with Cornerstone, including in May 2023 or at any other time. Cornerstone has also never run a credit check on Mizrahi or otherwise obtained his consumer report.

92.     On May 17, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for Mizrahi on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter to Judah Stein by email.

93.     Other than the name of the recipient (Mizrahi), the specific account identified (Verizon), and adding "and reviewed all three credit reports" after "I ran your credit," the Fake Cornerstone Letter is identical to the January 23, 2023 template that Judah Stein directed Argy to use.

**Cornerstone** FIRST MORTGAGE

## Refinance

May 17th, 2023

Dear Adam Mizrahi

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Verizon account that appears , your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance your mortgage.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

94.     The Fake Cornerstone Letter for Mizrahi included the same typographical error that "your credit **scores has** been affected" from the Judah Stein template that was common across all but one of the Fake Cornerstone Letters.

95.     Stein Saks and Saland knew that Mizrahi had not applied for a loan with Cornerstone and that Cornerstone did not obtain Mizrahi's consumer report from Experian. Stein Saks and Saland knew that Argy had fabricated the Fake Cornerstone Letter alleged in the Mizrahi Complaint at the direction of Judah Stein.

96.     Stein Saks and Saland knew that the false statements in the Mizrahi Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Saland knew that without an allegation that Mizrahi had suffered a concrete injury and actual damages as a result of errors in his credit report there would not be a viable FCRA claim against Experian.

97.     Although Stein Saks and Saland knew that each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally caused

COMPLAINT
Case No. 8:24-cv-01186

those allegations to be made in the Mizrahi Complaint in order to fraudulently induce Experian to pay money to settle the case.

98.   On October 13, 2023, Stein Saks and Saland, produced the Fake Cornerstone Letter for Mizrahi to Experian by email in response to discovery requests in the sham lawsuit.

99.   On October 13, 2023, Stein Saks and Saland, knowingly and intentionally served by email materially false responses to Experian's Interrogatories 6 and 7, which called for disclosure of all applications for credit made by or on behalf of Mizrahi during the previous five years and for all denials of credit or insurance for Mizrahi from the previous five years. The only application or denial of credit identified in the responses to Interrogatories 6 and 7 was the "May 17, 2023 letter from Cornerstone First Mortgage," which is the Fake Cornerstone Letter created by Argy at the direction of Judah Stein.

100.   On November 22, 2023, Experian served Stein Saks, through Saland, a notice of deposition of Mizrahi following the parties' agreement that Mizrahi would appear for his deposition on December 18, 2023.

101.   On December 7 and December 18, 2023, Experian served third-party subpoenas for documents and testimony, respectively, on Franz, the apparent signatory on the Fake Cornerstone Letter produced by Stein Saks, though Saland. The December 14, 2023 subpoena noticed Franz's deposition for January 3, 2024.

102.   On December 7 and December 18, 2023, Experian served third-party subpoenas for documents and testimony on Cornerstone. The December 14, 2023 subpoena noticed Cornerstone's deposition for January 5, 2024.

103.   On December 15, 2023, Stein Saks, though Saland, informed Experian that they were unilaterally cancelling the mutually agreed-upon December 18, 2023 deposition of Mizrahi, and that Mizrahi would not appear on that date.

104.   Between December 2023 and January 2024, Judah Stein falsely informed Franz and Cornerstone through an intermediary (Argy) that the Mizrahi

case would settle and that they did not need to appear for their lawfully scheduled depositions.

105.  Stein Saks, Judah Stein, and Argy knowingly and intentionally conveyed this false information to Franz and Cornerstone in order to prevent Experian from discovering that Franz did not draft, sign, or authorize the Fake Cornerstone Letter. Stein Saks, Saland, and Argy did so in order to conceal the scheme to defraud Experian into paying money to settle frivolous claims.

106.  On January 3, 2024, Stein Saks and Saland filed a motion to dismiss the sham Mizrahi lawsuit with prejudice under FRCP 41(a)(2), without the consent of Experian.

107.  On January 10, 2024, Experian filed an opposition to Mizrahi's unilateral motion to dismiss, in which it first publicly raised its suspicions about the Fake Cornerstone Letters and informed the court of the attempts by Stein Saks, though Saland, to interfere with Experian's good faith efforts to take the depositions of Franz and Cornerstone. Experian requested permission to conduct discovery into potential misconduct and seek appropriate sanctions.

108.  On January 11, 2024, the court denied Mizrahi's motion to dismiss and allowed Experian to take discovery into "potentially sanctionable conduct."

109.  As a result of having to litigate the sham Mizrahi lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

b.  *Sofer v. Experian*

110.  On June 28, 2023, Stein Saks, through its agent Saland, electronically filed a sham lawsuit in the Eastern District of New York on behalf of Sheindle Sofer ("Sofer"), alleging FCRA violations by Experian, TransUnion, Equifax, and Synchrony Bank. *See Sofer vs. Transunion, LLC, et al.*, 1:23-cv-4844 (E.D.N.Y.). Stein Saks, though Saland, electronically filed the Sofer Complaint through the Eastern District of New York CM/ECF system.

111.    In doing so, Stein Saks and Saland knowingly and intentionally made false allegations in the Sofer Complaint to state an FCRA claim, including, among others, that: (1) Sofer had applied for a refinance mortgage loan from Cornerstone in May 2023; (2) Sofer received a letter from Cornerstone advising her that "due to the Synchrony/Gap account that appears, your credit scores has been affected and you would be paying a higher interest rate,'" and that "[b]ased on your current scores, it would not make sense for you to refinance;" and (3) Experian's reporting of Sofer's Synchrony/Gap account in an Experian credit report was "a substantial factor contributing to [Sofer's] inability to qualify for an affordable interest rate on a refinanced mortgage." Sofer Compl. ¶¶ 41-44, 50.

112.    Stein Saks and Saland knew that: (1) Sofer had never applied to refinance a mortgage with Cornerstone in May 2023; (2) Cornerstone had never advised Sofer that as a result of the Synchrony/Gap account she would have to pay a higher interest rate; and (3) Cornerstone had never advised Sofer that it would not make sense for her to refinance based no her credit score. Stein Saks and Saland knew that Argy had fabricated the Fake Cornerstone Letter alleged in the Sofer Complaint at the direction of Judah Stein.

113.    On May 17, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for Sofer on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter to Judah Stein by email.

114.    Other than the name of the recipient (Sofer), the specific account identified (Synchrony/Gap), and adding "and reviewed all three credit reports" after "I ran your credit," the Fake Cornerstone Letter is identical to the January 23, 2023 template that Judah Stein directed Argy to use.

COMPLAINT
Case No. 8:24-cv-1186

1
2
3
4
5
6
7
8
9
10
11
12
13
14



## Refinance

May 17th, 2023

Dear Sheindle Sofer,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Synchrony/ Gap account that appears, your credit scores has been   affected   and you would be paying a higher interest rate. Based on your current scores, it would   not   make   sense   for   you   to refinance your mortgage.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

15    115.   The Fake Cornerstone Letter for Sofer included the same typographical

16  error that "your credit *scores has* been affected" from the Judah Stein template that

17  was common across all but one of the Fake Cornerstone Letters.

18    116.   Stein Saks and Saland knew that: (1) Sofer had never applied to

19  refinance a mortgage with Cornerstone in May 2023; (2) Cornerstone had never

20  advised Sofer that as a result of the Synchrony/Gap account she would have to pay a

21  higher interest rate; and (3) Cornerstone had never advised Sofer that it would not

22  make sense for her to refinance based on her credit score. Stein Saks and Saland knew

23  that Argy had fabricated the Fake Cornerstone Letter alleged in the Sofer Complaint

24  at the direction of Judah Stein.

25    117.   Stein Saks and Saland knew that the false statements in the Sofer

26  Complaint were material to the FCRA cause of action because they established

27  standing and actual damages. Stein Saks and Saland knew that without an allegation

28  that Sofer had suffered a concrete injury and actual damages as a result of errors in

his Experian credit report there would not be a viable FCRA claim against Experian.

118.   Although Stein Saks and Saland knew that each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally caused those allegations to be made in the Sofer Complaint in order to fraudulently induce Experian to pay money to settle the case.

119.   Stein Saks, though Saland, electronically served Sofer's purportedly verified responses to Interrogatories on October 20, 2023. The response to Interrogatory 7 stated that "the inaccurate and derogatory reporting of the Synchrony account has led to negative effects including, but not limited to, higher interest rates offered to [Sofer] by furnishers, and decreased credit lines. *See* May 17, 2023 Cornerstone First Mortgage denial."

120.   The verification of the responses was false. Sofer did not sign it or authorize anyone else to sign it for her. On information and belief, a Stein Saks attorney or employee signed the verification, falsely signing Sofer's signature without Sofer's knowledge or authorization. The response to Interrogatory 7 was also false because the "May 17, 2023 Cornerstone First Mortgage denial" referred to the Fake Cornerstone Letter Argy created for Sofer at the direction of Judah Stein.

121.   On October 20, 2023, Stein Saks and Saland produced the Fake Cornerstone Letter for Sofer to Experian by email in response to discovery requests in the sham lawsuit.

122.   In January 2024, at the same time that Stein Saks and Saland were obstructing Experian's discovery in the *Mizrahi* case, Stein Saks and Saland attempted to dismiss the case without Sofer's or Experian's consent.

123.   On January 16, 2024, Stein Saks and Saland electronically filed a motion to dismiss, and falsely informed the Court that Sofer "no longer wishes to pursue her claims." At the time, neither Saland nor anyone else from Stein Saks had ever spoken to Sofer, nor had she told anyone that she "no longer wish[ed] to pursue her claims" in any way.

124. As in the *Mizrahi* case, Experian opposed Sofer's unilateral motion to dismiss and sought permission to conduct discovery into potential misconduct and seek appropriate sanctions. On January 25, 2024, the Court held that complete dismissal would unduly prejudice Experian and authorized discovery into the alleged misconduct.

125. At the end of January 2024, Yaakov Saks contacted Sofer's husband to ask for his assistance in responding to Experian's sanctions-related discovery. Until that communication, the Sofer and her husband were unaware of any litigation activity in the case and had never previously spoken with any attorney at Stein Saks.

126. Following the call from Yaakov Saks, the Sofers became worried about their potential liability for sanctions for conduct in the lawsuit that they did not commit or authorize. At that point, Sofer engaged new counsel and filed a motion to substitute counsel.

127. In March 2024, Sofer's new counsel served verified responses to Experian's interrogatories, confirming Sofer did not apply for credit with Cornerstone, never received a credit denial letter from Cornerstone, and had never even heard of Cornerstone until she was told about the company as a result of the sanctions-related discovery in January 2024.

128. As a result of having to litigate the sham Sofer lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### c.   *Zabludovsky v. Experian*

129. On March 13, 2023, Stein Saks, through its agents Babad and local counsel Scott Bernstein ("Bernstein"), filed a sham lawsuit in the Eastern District of Pennsylvania on behalf of Mark Zabludovsky ("Zabludovsky"), alleging FCRA violations by Experian, Equifax, TransUnion, and Consumers Cooperative Credit Union ("Consumers Cooperative"). *See Zabludovsky v. Equifax Info. Servs. LLC, et al.*, 2:23-cv-00974 (E.D. Pa.). Stein Saks and Babad caused Bernstein to

1  electronically file the Zabludovsky Complaint through the Eastern District of
2  Pennsylvania CM/ECF system.

3       130.   In doing so, Stein Saks and Babad knowingly and intentionally made
4  material false allegations in the Zabludovsky Complaint to state an FCRA  claim,
5  including, among others, that: (1)  Zabludovsky applied for a refinanced mortgage
6  loan; (2) Zabludovsky received a letter from Cornerstone informing him that "due to
7  the balance reporting with Consumers Coop' his credit score was negatively
8  impacted making the refinance cost-prohibitive;" and (3) "[d]ue to [Experian's]
9  actions, [Zabludovky] was unable to secure the necessary credit for his home,"
10  resulting in damages and emotional distress. Zabludovsky Compl. ¶¶ 72, 74-75.

11       131.   Zabludovky has never applied for credit with Cornerstone. Cornerstone
12  has never run a credit check on Zabludovsky or otherwise obtained his Experian
13  credit report. Cornerstone never told Zabludovsky that a refinance would be cost-
14  prohibitive.

15       132.   On January 23, 2023, at the direction of Judah Stein, Argy fabricated a
16  credit denial letter for Zabludovky on Cornerstone letterhead. Thereafter, Argy sent
17  the Fake Cornerstone Letter to Judah Stein by email.

18       133.   Other than the name of the recipient (Zabludovsky) and the specific
19  account identified (Consumers Coop), the Fake Cornerstone Letter is identical to the
20  January 23, 2023 template that Judah Stein directed Argy to use.

21
22
23
24
25
26
27
28

COMPLAINT
Case No. 8:24-cv-1186



## Refinance

January 23, 2023

Dear Mark Zabludovsky,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, at this time, due to the balance reporting with Consumers Coop, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance your Freedom Mortgage account.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

134. The Fake Cornerstone Letter for Zabludovsky included the same typographical error that "your credit **scores has** been affected" from the Judah Stein template that was common across all but one of the Fake Cornerstone Letters.

135. Stein Saks and Babad knew that Zabludovsky never applied for credit with Cornerstone, that Cornerstone never ran a credit check on Zabludovsky, and that Cornerstone never told Zabludovsky that the refinance would be cost-prohibitive. Stein Saks and its Babad knew that Argy had fabricated the Fake Cornerstone Letter at the direction of Judah Stein

136. Stein Saks and Babad knew that the false statements in the Zabludovsky Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Babad knew that without an allegation that Zabludovsky had suffered a concrete injury and actual damages as a result of errors in his Experian consumer report there would not be a viable FCRA claim

COMPLAINT
Case No. 8:24-cv-1186

against Experian.

137.   Although Stein Saks and Babad knew that each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally caused those allegations to be made in the Zabludovsky Complaint in order to fraudulently induce Experian to pay money to settle the case.

138.   On June 1, 2023, by email, Stein Sak and Babad demanded a settlement payment of $70,000 from Experian to resolve the sham lawsuit.

139.   On July 11, 2023, Stein Saks and Babad produced the Fake Cornerstone Letter to Experian by email in response to discovery requests in the sham lawsuit.

140.   On September 4, 2023, Stein Saks, through Babad, caused  an executed Settlement Agreement and Release to resolve all claims and disputes arising out of the Zabludovsky Complaint to be sent to Experian by email. As part of that Agreement, Experian agreed to make a lump sum payment to "'Stein Saks, PLLC' as attorneys for Mark Zabludovsky" that was to be sent to "[Zabludovsky's] attorney, Eliyahu Babad, Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601." But for the allegations based on the Fake Cornerstone Letter, Experian would not have settled the case.

141.   On October 13, 2023, Experian mailed the settlement check payable to Stein Saks to Babad at Stein Saks' New Jersey office.

142.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMorgan Chase ("JPMC").

143.   On October 17, 2023, check payable to Stein Saks as attorneys for Mark Zabludovsky cleared Experian's bank account and was credited to an account at JPMC.

144.   Between October 17 and 23, 2023, Stein Saks paid a portion of the settlement proceeds to Zeig Law and Zeig, who caused the money to be deposited into the Zeig Law client trust account.

145.   On October 23, 2023, Zeig Law and Zeig paid a portion of the settlement

1   proceeds to Argy by mailing a check for $3,900 drawn on the Zeig Law client trust

2   account to Argy's credit repair organization, CCI, writing in the memo line "Mark

3   Zabludovsky v. Experian."



13   146.   On information and belief, Argy then transferred a portion of the

14   Zabludovsky settlement proceeds to Monk via Zelle.

15   147.   As a result of having to litigate the sham Zabludovsky lawsuit, Experian

16   has incurred a substantial amount of attorneys' fees and costs. Experian will prove

17   the exact amount of damages at trial.

18                  *d.*   *Hano v. Experian*

19   148.   On March 28, 2023, Stein Saks, through its agent Saland, and local

20   counsel Jonathan Stieglitz ("Steiglitz), filed a sham lawsuit in the Central District of

21   California on behalf of Yonaton Hano ("Hano"), alleging FCRA violations by

22   Experian, Equifax, TransUnion, and US Bank. *See Hano vs. Equifax Information*

23   *Services, LLC, et al.*, 2:23-cv-02273 (C.D. Cal.). Stein Saks and Saland caused

24   Stieglitz to file the Hano Complaint electronically through the Central District of

25   California CM/ECF system.

26   149.   On June 19, 2023, Saland electronically filed an application to appear

27   *pro hac vice* as counsel of record for Hano through the CM/ECF system, which the

28   Court granted on June 23, 2023.

150.   In filing the Hano Complaint, Stein Saks and Saland knowingly and intentionally made material false allegations to state an FCRA claim, including, among others, that: (1) Hano "applied for a refinanced mortgage loan from Cornerstone First Mortgage;" (2) Hano "received a letter on February 13, 2023 advising him that he would 'be paying a higher interest rate' due to the 'US Bank account' on his credit report"; and (3) "[b]ased on the [US Bank account], a licensed mortgage banker advised [Hano] 'it would not make sense for you to refinance your mortgage.'" Hano Compl. ¶¶ 45-46.

151.   Hano never applied for a mortgage with Cornerstone in February 2023 or at any other time. Cornerstone also never advised Hano that he would pay a higher interest rate, or that it would not make sense for Hano to refinance his mortgage.

152.   On February 13, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for Hano on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter to Judah Stein by email.

153.   Other than the name of the recipient (Hano) and the specific account identified (US Bank), and adding "and reviewed all three credit reports" after "I ran your credit," the Fake Cornerstone Letter is identical to the January 23, 2023 template that Judah Stein directed Argy to use.



**Cornerstone** FIRST MORTGAGE

## Refinance

February 13th, 2023

Dear Yonatan Hano,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the US Bank account that appears, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance your mortgage.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

COMPLAINT
Case No. 8:24-cv-1186

154.   The Fake Cornerstone Letter included the same typographical error that "your credit **scores has** been affected" from the Judah Stein template that was common across all but one of the Fake Cornerstone Letters.

155.   Stein Saks and Saland knew that Hano never applied for a mortgage with Cornerstone in February 2023, and that Cornerstone had never advised Hano that he would pay a higher interest rate or that it would not make sense for Hano to refinance his mortgage. Stein Saks and Saland also knew that Argy had fabricated the Fake Cornerstone Letter alleged in the Hano Complaint at the direction of Judah Stein.

156.   Stein Saks and Saland knew that the false statements in the Hano Complaint were material to Hano's FCRA cause of action because they established standing and actual damages. Stein Saks and Saland knew that without an allegation that Hano had suffered a concrete injury and actual damages as a result of errors in his Experian consumer report, there would not be a viable FCRA claim against Experian.

157.   Although Stein Saks and Saland knew each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally caused those allegations to be made in the Hano Complaint in order to fraudulently induce Experian to pay money to settle the case.

158.   On information and belief, Stein Saks and Saland served or caused to be served by email responses to Experian's Interrogatories, which identified a fake "February 13, 2023 denial letter" as evidence that Hano had been denied credit.

159.   On April 14, 2023, by email, Stein Saks and Saland demanded a payment of $30,000 to resolve the sham Hano lawsuit.

160.   On August 3, 2023, Stein Saks and Saland produced the Fake Cornerstone Letter for Hano to Experian by email in response to discovery requests in the sham lawsuit.

161.   On November 8, 2023, Stein Saks and Saland caused an executed

COMPLAINT
Case No. 8:24-cv-1186

Settlement Agreement and Release to resolve all claims and disputes arising out of the Hano Complaint to be sent to Experian's counsel by email. As part of that Agreement, Experian agreed to make a lump sum payment to "Stein Saks, PLLC as Attorneys for Yonaton Hano" that was to be sent to "Stein Saks, PLLC Attn: Tamir Saland, One University Plaza, Suite 620, Hackensack, NJ 07601." But for the allegations based on the Fake Cornerstone Letter, Experian would not have settled the case.

162.   On December 11, 2023, pursuant to the terms of the Settlement Agreement, Experian mailed the settlement check to Stein Saks' New Jersey office.

163.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC.

164.   On December 15, 2023, the settlement check cleared Experian's bank account and was credited to an account at JPMC.

165.   On information and belief, between December 15 and December 27, 2023, Stein Saks paid a portion of the Hano settlement proceeds to Zeig Law and Zeig, who caused the money to be deposited into the Zeig Law client trust account.

166.   On December 27, 2023, Zeig Law and Zeig paid a portion of the Hano settlement proceeds to Argy by mailing a check for $2,400 drawn on the Zeig Law client trust account to Argy's credit repair organization, CCI, writing in the memo line "Yonaton Hano v. Experian."



167. On information and belief, Argy transferred a portion of the Hano settlement proceeds to Monk via Zelle.

168. As a result of having to litigate the sham Hano lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

e. *King v. Experian*

169. On March 30, 2023, Stein Saks, through its agent Yaakov Saks, filed a sham lawsuit on behalf of plaintiff Yosef King ("King"), alleging FCRA violations by defendants Experian, TransUnion, and Verizon. *See King vs. TransUnion, LLC, et al.*, 3:23-cv-1799 (D.N.J.). Stein Saks, through Yaakov Saks, electronically filed the King Complaint through the District of New Jersey CM/ECF system.

170. In doing so, Stein Saks and Yaakov Saks knowingly and intentionally made material false allegations in the King Complaint to state an FCRA claim, including, among others, that: (1) King applied for a mortgage loan from Cornerstone in February 2023; and (2) King was denied a mortgage loan from Cornerstone as a result of an alleged inaccuracy on an Experian credit report regarding King's Verizon account. King Compl. ¶¶ 37-38, 48.

171. King had never applied for a mortgage with Cornerstone in February 2023 or at any other time. Cornerstone also never ran a credit check on King or denied King a mortgage based on Experian's reporting or for any other reason.

172. On February 8, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for King on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter to Judah Stein by email.

173. Other than the name of the recipient (King) and the specific account identified (Verizon), and adding "and reviewed all three credit reports" after "I ran your credit," the Fake Cornerstone Letter is identical to the January 23, 2023 template that Judah Stein directed Argy to use.

1
2
3
4
5
6
7
8
9
10
11
12
13



## Refinance

February 8th, 2023

Dear Yosef King,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Verizon account that appears, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance your mortgage.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

14
15
16
17

174. The Fake Cornerstone Letter included the same typographical error that "your credit **scores has** been affected" from the Judah Stein template that was common across all but one of the Fake Cornerstone Letters.

18
19
20
21
22
23

175. Stein Saks and Yaakov Saks knew that (1) King had never applied for a mortgage with Cornerstone; (2) Cornerstone had never run a credit check on King; and (3) Cornerstone had never denied King a mortgage based on Experian's reporting or for any other reason. Stein Saks and Yaakov Saks knew that Argy had fabricated the Fake Cornerstone Letter alleged in the King Complaint at the direction of Judah Stein.

24
25
26
27
28

176. Stein Saks and Yaakov Saks knew that the false statements in the King Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Yaakov Saks knew that without an allegation that King had suffered a concrete injury and actual damages as a result of errors in his Experian credit report there would not be a viable FCRA claim against

COMPLAINT
Case No. 8:24-cv-01186

Experian.

177.   Although Stein Saks and Yaakov Saks knew that each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally made the allegations in the King Complaint in order to fraudulently induce Experian to pay money to settle the case.

178.   On July 20, 2023, pursuant to negotiations with Stein Saks and Yaakov Saks, Experian sent a draft Settlement Agreement and Release to resolve all claims and disputes arising out of the King Complaint to Yaakov Saks by email. As part of the Agreement, Experian agreed to make a lump sum payment in two checks. Both checks were to be sent to "Tamir Saland, Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601." But for the allegations based on the Fake Cornerstone Letter, Experian would not have settled the case.

179.   On information and belief, Stein Saks and Yaakov Saks provided the draft Settlement Agreement to King. Thereafter, King became angry about the amount he was receiving from the settlement. Monk sent a WhatsApp message to Argy, describing King as a "troublemaker" because King, who is an accountant, was asking questions regarding the allocation of settlement proceeds.

[8/28/23, 5:45:38 PM] Chesky Monk: It's Yosef king  not Joseph
[8/28/23, 5:47:47 PM] יוסי: Does he care ?
[8/28/23, 5:55:30 PM] Chesky Monk: Don't know .. he could .. he is a trouble maker .. should I send ?
[8/28/23, 5:55:48 PM] יוסי: Send it and see what he says
[8/28/23, 5:55:57 PM] Chesky Monk: Ok .
[8/28/23, 5:57:05 PM] Chesky Monk: You sure ? He may really loose it .. I guess he won't respond anyway

180.   King had demanded more of the settlement proceeds, and Argy complained to Judah Stein that it was "not right that we would lose" their promised share of settlement funds just because someone in Judah Stein's office "messed up" and did not handle the plaintiff properly.

> -----Original Message-----
> From: Yenon Argy @ CCI <yenon@callcci.com>
> Sent: Tuesday, July 25, 2023 2:39 PM
> To: Judah Stein <jstein@SteinSaksLegal.com>
> Subject: Re: Yosef king
>
> This isn't good. Client is an accountant and he saw it and wants the $7000 to him.  It's not right that we would lose because someone in your office messed it up.
>

181.   Monk sent Argy a WhatsApp message regarding a message he received from King, where King complained that he did not understand the process for sharing attorneys' fees and said he would not refer anyone he knows to work with Monk, Argy, and the Stein Saks Defendants, to which Argy responded that King is an "[i]diot."

[9/28/23, 1:25:22 PM] Chesky Monk: It wasn't just about not understanding the process
I don't think the whole story was said over and I didn't get a good feeling at all from this service to say the least .

I am an accountant and can't say I would be be able to honestly send people to you all.
[9/28/23, 1:25:29 PM] Chesky Monk: From king
[9/28/23, 1:25:50 PM] יונן: Idiot

182.   In another exchange of WhatsApp messages, Monk and Argy discussed King questioning why a portion of the settlement proceeds was going to Monk and Argy, both non-lawyers. King asked Monk why he was receiving $2,400, and Monk responded that he was "not going down a rabbit hole with [King]. We offered him the $1k he didn't want it so he isn't entitled to ask any questions."

[9/28/23, 2:53:35 PM] Chesky Monk: During my phone call with the lawyer he said he is suing to get off the verizon from credit report and he charges no money and that's why he gets the full settlement minus $1,000. Just curious what exactly was my $2,400 for? Was there something else you did to fix my credit?
[9/28/23, 2:53:44 PM] Chesky Monk: Should I ignore ?
[9/28/23, 2:57:36 PM] יונן: It was supposed to be $3400 and $1000 was supposed to be paid back if we won
[9/28/23, 3:04:21 PM] Chesky Monk: I am not going down a rabbit  hole with him . We offered him the $1k he didn't want it so he isn't entitled to ask any questions .
[9/28/23, 3:05:11 PM] Chesky Monk: I didn't even tell him we built the case for Saks bc I don't know what Saks is saying and let him think it's all Saks so he can't come back with issues
[9/28/23, 3:05:55 PM] יונן: I just spoke to Judah.  He said we setup the case and that's why he should be happy.
[9/28/23, 3:07:07 PM] Chesky Monk: Ok
[9/28/23, 3:09:51 PM] Chesky Monk: Did he ever mention the mortgage app ?
[9/28/23, 3:11:05 PM] Chesky Monk: He is sending the W9 ?
[9/28/23, 3:13:56 PM] יונן: Yes

COMPLAINT
Case No. 8:24-cv-1186

183.   Monk went on to tell Argy that he "didn't even tell [King] we built the case for Saks bc I don't know what Saks is saying." Monk wanted to "let [King] think it's all Saks so he can't come back with issues." Argy then "spoke to Judah," who reassured Argy and Monk that "we setup the case and that's why he should be happy."

184.   Ultimately, King agreed to the terms of the Settlement Agreement and, on October 26, 2023, Stein Saks and Yaakov Saks caused the executed Settlement Agreement and Release to resolve all claims and disputes arising out of the King Complaint to be returned to Experian by email.

185.   On November 8, 2023, Experian mailed the two settlement checks specified in the Agreement to Stein Saks' New Jersey office.

186.   In the end, months later, in December 2023, King finally accepted his share, as dictated by Stein Saks. The Cornerstone Participants viewed the settlement proceeds as belonging to them, not to the plaintiffs. Argy and Monk called King a "thief" because his amount came out of Monk and Argy's share of the settlement proceeds, not Stein Saks' share.

```
[12/1/23, 2:28:44 PM] ינימ: <attached: 00012921-PHOTO-2023-12-01-14-28-44.jpg>
[12/1/23, 3:16:16 PM] Chesky Monk: Thanks a lot
[12/1/23, 3:16:42 PM] Chesky Monk: Looks like king did take $1000!! Remember he
said he doesn't want anything etc
[12/1/23, 3:16:58 PM] ינימ: Call him out on it
[12/1/23, 3:17:02 PM] ינימ: He's a thief
[12/1/23, 3:18:02 PM] Chesky Monk: Love the way Saks took it of our check not his
own !!
[12/1/23, 3:18:30 PM] ינימ: I know
[12/1/23, 3:19:02 PM] Chesky Monk: מה נעשה ! 🤷‍♂️
[12/1/23, 3:19:09 PM] Chesky Monk: It is what it is
```

187.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC.

188.   On November 13, 2023, the settlement check from Experian to Stein Saks cleared Experian's bank account and was credited to an account at JPMC.

189.   On a date unknown, Stein Saks paid a portion of the King settlement proceeds to Zeig Law and Zeig, who caused the money to be deposited into the Zeig Law client trust account.

190.   On December 28, 2023, Zeig mailed a check for $2,479.60 drawn on the Zeig Law client trust account to Argy's credit repair organization, CCI, writing in the memo line "King v. Experian (King already received $1,000.0."

191.   On December 1, 2023, Argy then transferred a $1,239.80 of the King settlement proceeds to Monk through Zelle.

192.   To date, the settlement check has not been deposited or cashed.

193.   As a result of having to litigate the sham King lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

f.   *Kanelsky v. Experian*

194.   On May 9, 2023, Stein Saks, through its agent Babad, filed a sham lawsuit in the District of New Jersey on behalf of Yehuda Kanelsky ("Kanelsky"), alleging FCRA violations by Experian, TransUnion, and Verizon. *See Kanelsky vs. Experian Info. Sols., Inc., et al.*, 2:23-cv-02524 (D.N.J.). Stein Saks, through Babad, electronically filed the Kanelsky Complaint through the District of New Jersey CM/ECF system.

195.   In doing so, Stein Saks and Babad knowingly and intentionally made material false allegations in the Kanelsky Complaint, including, among others, that: (1) "[Kanelsky] was seeking to obtain a mortgage loan to refinance;" and (2) "[d]ue to Defendants' actions and the fraudulent appearance of the [Verizon] Account on [Kanelsky's] credit report, [Kanelsky] was unable to obtain a mortgage." Kanelsky Compl. ¶¶ 62-63, 69.

196.   Kanelsky never sought to refinance his mortgage, and Kanelsky was not denied a mortgage. Cornerstone has never run a credit check on Kanelsky or otherwise obtained his credit report.

197.   On or January 23, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for Kanelsky on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter to Judah Stein by email.

198.   Other than the name of the recipient (Kanelsky), the specific account identified (Verizon), and adding "and reviewed all three credit reports" after "I ran your credit," the Fake Cornerstone Letter is identical to the January 23, 2023 template that Judah Stein directed Argy to use.



**Refinance**

January 23, 2023

Dear Yehuda Kanelsky,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Verizon account that appears, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance your mortgage.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

199.   The Fake Cornerstone Letter for Kanelsky included the same

COMPLAINT
Case No. 8:24-cv-1186

typographical error that "your credit *scores has* been affected" from the Judah Stein template that was common across all but one of the Fake Cornerstone Letters.

200.   Stein Saks and Babad knew that (1) Kanelsky never sought to refinance his mortgage; (2) that Kanelsky was not denied a mortgage; and (3) that Cornerstone never ran a credit check on Kanelsky or otherwise obtained his credit report. Stein Saks and Babad knew that Argy had fabricated the Fake Cornerstone Letter alleged in the Kanelsky Complaint at the direction of Judah Stein.

201.   Stein Saks and Babad knew that the false statements in the Kanelsky Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Babad knew that without an allegation that Kanelsky had suffered a concrete injury and actual damages as a result of errors on his Experian credit report there would not be a viable FCRA claim against Experian.

202.   Although Stein Saks and Babad knew that each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally made those allegations in the Kanelsky Complaint in order to fraudulently induce Experian to pay money to settle the case.

203.   On October 17, 2023, Stein Saks and Babad produced the Fake Cornerstone Letter for Kanelsky to Experian by email in response to discovery requests in the sham lawsuit.

204.   On October 17, 2023, Stein Saks and Babad served responses to Experian's Interrogatories on Experian by email. Interrogatory 17 asked for the basis for the allegation in the Complaint that due to Experian's "actions and the fraudulent appearance of the Account on [Kanelsky's] credit report, [Kanelsky] was unable to obtain a mortgage." The response to Interrogatory 17, drafted by Stein Saks and Babad, referred Experian to Kanelsky's document production, which included the Fake Cornerstone Letter.

205.   On June 28, 2023, by email, Stein Saks and Babad demanded a

settlement payment of $20,000 from Experian to resolve the Kanelsky sham lawsuit.

206.   On December 14, 2023, Stein Saks filed a Notice of Settlement with Experian via the CM/ECF system, and on December 28, 2023, United States District Judge Arleo dismissed Experian from the case.

207.   On January 8, 2024, Stein Saks and Babad caused an executed Settlement Agreement and Release to resolve all claims and disputes arising out of the Kanelsky Complaint to be emailed to Experian. As part of that Agreement, Experian agreed to make a lump sum payment to "Stein Saks, PLLC as Attorneys for Yehuda Kanelsky" that was to be sent to "Stein Saks, PLLC Attn: Eliyahu Babad, One University Plaza, Suite 620, Hackensack, NJ 07601."

208.   On February 14, 2024, Experian requested that that the Court reopen proceedings and reinstate it as a party in order to conduct discovery into the Fake Cornerstone Letter. On February 21, 2024, the Court granted Experian's request and reinstated the case.

209.   On February 20, 2024, Yaakov Saks filed a notice of appearance in the Kanelsky case.

210.   As a result of having to litigate the sham Kanelsky lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial..

g.    *Gang v. Experian*

211.   On May 23, 2023, Stein Saks, through its agent Saland, filed a sham lawsuit in the Eastern District of New York on behalf of Jason Gang ("Gang"), alleging FCRA violations by Experian, Equifax, and Ford Motor Credit Company, LLC, al. ("Ford"). *See Gang vs. Equifax Information Services, LLC, et al.*, 2:23-cv-03834 (E.D.N.Y.). Stein Saks, through Saland, electronically filed the Gang Complaint through the Eastern District of New York CM/ECF system.

212.   In doing so, Stein Saks and Saland knowingly and intentionally made material false allegations in the Gang Complaint to state an FCRA claim, including,

among others, that: (1) Gang applied for a mortgage from Cornerstone in April 2023; and (2) Gang was denied a mortgage loan from Cornerstone in April 2023 as a result of an alleged inaccuracy on the Ford account in an Experian credit report. Gang. Compl. ¶¶ 40-42, 49.

213.   Gang never applied for a mortgage from Cornerstone and Cornerstone never denied Gang a mortgage loan. Cornerstone also never ran a credit check on Gang or otherwise obtained his credit report.

214.   On April 21, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for Gang on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter by email to Judah Stein.

215.   Other than the name of the recipient (Gang),the specific account identified (Ford), and adding "and reviewed all three credit reports" after "I ran your credit," the Fake Cornerstone Letter is identical to the January 23, 2023 template that Judah Stein directed Argy to use.



## Refinance

April 21st, 2023

Dear Jason Gang,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Ford account that appears, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance your mortgage.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

216.   The Fake Cornerstone Letter for Gang included the same typographical

error that  "your credit *scores has* been affected" from the Judah Stein template that was common across all but one of the Fake Cornerstone Letters.

217.   Stein Saks and Saland knew that (1) Gang never applied for a mortgage from Cornerstone; (2) Cornerstone never denied Gang a mortgage loan; and (3) Cornerstone never ran a credit check on Gang. Stein Saks and Saland knew that Argy fabricated the Fake Cornerstone Letter alleged in the Gang Complaint at the direction of Judah Stein.

218.   Stein Saks and Saland knew that the false statements in the Gang Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Saland knew that without an allegation that Gang had suffered a concrete injury and actual damages as a result of errors in his Experian consumer report there would not be a viable FCRA claim against Experian.

219.   Although Stein Saks and Saland knew that each of the allegations based on the Fake Cornerstone Letters was false, they knowingly and intentionally caused those allegations to be made in the Gang Complaint in order to fraudulently induce Experian to pay money to settle the case.

220.   On June 23, 2023, by email, Stein Saks and Saland demanded a settlement payment of $30,000 from Experian to resolve the Gang sham lawsuit.

221.   On November 13, 2023, Stein Saks and Saland produced the Fake Cornerstone Letter for Gang to Experian by email in response to discovery requests in the sham lawsuit.

222.   On March 20, 2024, by email, Stein Saks and Saland returned an executed Settlement Agreement and Release to resolve all claims and disputes arising out of the Gang Complaint. As part of that Agreement, Experian agreed to make a lump sum payment to "Stein Saks, PLLC, as Attorney for Jason Gang" to be sent to "Tamir Saland, Esq., Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601."

223.   On March 26, 2024, Experian mailed the settlement check payable to Stein Saks to Saland at Stein Saks's New Jersey office.

224.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC.

225.   On March 28, 2024, the settlement check cleared Experian's bank account and was credited to an account at JPMC.

226.   On information and belief, Stein Saks paid a portion of the Gang settlement proceeds to Zeig Law and Zeig, who caused the money to be deposited into the Zeig Law client trust account.

227.   On information and belief, Zeig paid a portion of the Gang settlement proceeds to Argy by mailing a check drawn on the Zeig Law client trust account to Argy's credit repair organization, CCI, writing in the memo line "Gang v. Experian."

228.   On information and belief, Argy transferred a portion of the Gang settlement proceeds to Monk via Zelle.

229.   As a result of having to litigate the sham Gang lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### h.   *Kahen v. Experian*

230.   On September 27, 2023, Stein Saks, through its agents Saland and local counsel Jonathan Stieglitz, caused a sham lawsuit to be filed in the Central District of California on behalf of Armin Kahen ("Kahen"), alleging FCRA violations by defendants Experian, Equifax, and Hyundai Capital America, Inc. d/b/a Kia Motors Finance ("Kia"). *See Kahen vs. Equifax Information Services, LLC, et al.*, 2:23-cv-08106 (C.D. Cal.). Stein Saks and Saland caused Stieglitz to file the Kahen Complaint electronically through the Central District of California CM/ECF system.

231.   On January 22, 2024, Saland electronically filed an application to appear *pro hac vice* in the Kahen case.

232.   In filing the Kahen Complaint, Stein Saks and Saland knowingly and

intentionally made material false allegations to state an FCRA claim, including, among others, that: (1) Kahen applied for a mortgage loan from Cornerstone in July 2023; (2) Cornerstone advised "him that he would 'be paying a higher interest rate' due to the 'Kia account' on his credit report"; and (3) "[b]ased on the Account, a licensed mortgage banker advised [Kahen] 'it would not make sense for you to purchase a property'" resulting in damages and emotional distress to Kahen. Kahen. Compl. ¶¶ 37-39.

233.   On July 28, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for Kahen on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter to Judah Stein by email.

234.   Other than the name of the recipient (Kahen), the account identified (Kia Finance America) and the change from "Refinance" to "Purchase" with the corresponding change from "it would not make sense for you to refinance" to "it would NOT make sense for you to purchase a property," the Fake Cornerstone Letter is identical to the January 23, 2023 template that Judah Stein directed Argy to use.



## Purchase

July 28th, 2023

Dear Armin Kahen,

I am a licensed mortgage banker. We have reviewed your credit report.   As discussed, due to the KIA Finance America derogatory account reporting on your credit, your scores have been affected negatively and you would be paying a higher interest rate.   Based   on your current   scores,   it would **NOT**  make  sense  for  you  to  purchase a property.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

235.   Kahen never applied for a mortgage with Cornerstone in July 2023 or at

any other time. Cornerstone also never advised Kahen that he would be paying a higher interest rate due to the Kia account. Nor did it advise Kahen that it did not make sense for him to purchase a property. Indeed, Cornerstone never ran a credit check on Kahen or otherwise obtained his credit report.

236.  Stein Saks and Saland knew that the false statements in the Kahen Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Saland knew that without an allegation that Kahen had suffered a concrete injury and actual damages as a result of errors in his Experian credit report there would not be a viable FCRA claim against Experian.

237.  Although Stein Saks and Saland knew that each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally caused those allegations to be made in the Kahen Complaint in order to fraudulently induce Experian to pay money to settle the case.

238.  On November 2, 2023, by email, Stein Saks and Saland demanded a settlement payment of $30,000 from Experian to resolve the sham lawsuit.

239.  On February 13, 2024, Stein Saks and Saland produced the Fake Cornerstone Letter for Kahen to Experian by email in response to discovery requests in the sham lawsuit.

240.  On April 8, 2024, the Court granted Kahen's stipulation to dismiss Experian with prejudice.

241.  As a result of having to litigate the sham Kahen lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### i.  *Adjmi v. Experian*

242.  On September 28, 2023, Stein Saks, through its agent Babad, filed a sham lawsuit in the District of New Jersey on behalf of Amin Adjmi ("Adjmi"), alleging FCRA violations by Experian, TransUnion, and Discover Bank ("Discover"). *See Adjmi v. Experian Info. Sols. Inc. et al.*, 3:23-cv-20736 (D.N.J.).

Stein Saks, through Babad, electronically filed the Adjimi Complaint through the District of New Jersey CM/ECF system.

243.   In doing so, Stein Saks and Babad knowingly and intentionally made material false allegations in the Adjmi Complaint to state an FCRA claim, including, among others, that Adjmi applied for a mortgage and was "denied due to the [Discover] Account because it negatively impacted his interest rates making a mortgage too expensive." Adjmi Compl. ¶ 89.

244.   Adjmi never applied for a mortgage with Cornerstone and Cornerstone never ran a credit check on Adjmi or otherwise obtained her credit report. Nor did Cornerstone ever deny credit to Admji.

245.   Stein Saks and Babad knew that (1) Adjmi never applied for a mortgage with Cornerstone, (2) that Cornerstone never ran a credit check on Adjmi or otherwise obtained her credit report, and (3) that Cornerstone never denied credit to Admji at any time. Stein Saks and Babad knew that Argy had fabricated the Fake Cornerstone Letter alleged in the Adjmi Complaint at the direction of Judah Stein.

246.   On June 19, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for Adjimi on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter to Judah Stein by email.

247.   Other than the name of the recipient (Adjmi), the account identified (Discovery Financial), adding "and reviewed all three credit reports" after "I ran your credit," and changing "Refinance" to "Purchase" and "it would not make sense for you to refinance" to "it would not make sense for you to purchase a property," the Fake Cornerstone Letter is identical to the January 23, 2023 template that Judah Stein directed Argy to use.



**Purchase**

June 19th, 2023

Dear Amin Adjmi,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Discover Financial account that appears, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to purchase a property.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

248. The Fake Cornerstone Letter for Adjmi included the same typographical error that "your credit **scores has** been affected" from the Judah Stein template that was common across all but one of the Fake Cornerstone Letters.

249. Stein Saks and Babad knew that the false statements in the Adjmi Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Babad knew that without an allegation that Adjmi had suffered a concrete injury and actual damages as a result of errors in his Experian credit report that there would not be a viable FCRA claim

250. Although Stein Saks and Babad knew each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally caused those allegations to be made in the Adjmi Complaint in order to fraudulently induce Experian to pay money to settle the case.

251. On December 18, 2023, Stein Saks and Yaakov Saks demanded a settlement payment of $30,000 from Experian to resolve the sham lawsuit.

252. As a result of having to litigate the sham Adjimi lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

COMPLAINT
Case No. 8:24-cv-1186

*j.*      *Glick v. Experian*

253.   On August 11, 2023, Stein Saks, through its agent Yaakov Saks, filed a lawsuit in the District of New Jersey on behalf of Shmuel Glick ("Glick"), alleging FCRA violations by Experian and Toyota Motor Credit Corporation ("Toyota"). *See Glick vs. Experian Info. sols., Inc*, 3:23-cv-4335 (D.N.J.). Stein Saks and Yaakov Saks electronically filed the Glick Complaint electronically through the District of New Jersey CM/ECF system.

254.   In so doing, Stein Saks and Yaakov Saks knowingly and intentionally made material false allegations in the Glick Complaint to state an FCRA claim, including, among others, that: (1) Glick applied for a mortgage loan from Cornerstone in June 2023; (2) he received a letter from Cornerstone "advising of him that 'due to Toyota Motor credit account on his credit report' [Glick] would have to pay 'a higher interest rate;'" and (3) "[t]he inaccurate open balance listed on the Account was a substantial factor contributing to [Glick's] inability to qualify for an affordable interest rate on a new mortgage." Glick Compl. ¶¶ 27-29, 33.

255.   Glick did not apply for a mortgage with Cornerstone in June 2023 or at any other time. Nor did he receive a letter from Cornerstone advising him that due to the Toyota account he would have to pay a higher interest rate. Cornerstone also never ran a credit check on Glick or otherwise obtained his credit report.

256.   On June 7, 2023, at the direction of Judah Stein, Argy fabricated a credit denial letter for Glick on Cornerstone letterhead. Thereafter, Argy sent the Fake Cornerstone Letter to Judah Stein by email.

257.   Other than the name of the recipient (Glick), the account identified (Toyota Motor Credit), adding "and reviewed all three credit reports" after "I ran your credit," and changing "refinance" to "purchase," and "it would not make sense for you to refinance," to "it would not make sense for you to purchase a property," the Fake Cornerstone Letter is nearly identical to the January 23, 2023 template that Judah Stein directed Argy to use.

**Cornerstone**
FIRST MORTGAGE

Purchase

June 7th, 2023

Dear Shmuel Glick,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Toyota Motor Credit account that appears, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to purchase a property.

Sincerely,

Carol Franz
Mortgage Loan Consultant
Phone: 866-815-1803
Email: cfranz@cfmtg.com
NMLS #1224287

258.   The Fake Cornerstone Letter for Glick included the same typographical error that "your credit **scores has** been affected" from the Judah Stein template that was common across all but one of the Fake Cornerstone Letters.

259.   Stein Saks and Yaakov Saks knew that: (1) Glick did not apply for a mortgage with Cornerstone in June 2023 or at any other time; and (2) Glick did not receive a letter from Cornerstone advising him that due to the Toyota account he would have to pay a higher interest rate. Stein Saks and Yaakov Saks knew that Argy had fabricated the Fake Cornerstone Letter alleged in the Glick Complaint at the direction of Judah Stein.

260.   Stein Saks and Yaakov Saks knew that the false statements in the Glick Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Yaakov Saks knew that without an allegation that Glick had suffered a concrete injury and actual damages as a result of errors on his Experian credit report there would not be a viable FCRA claim against Experian.

COMPLAINT
Case No. 8:24-cv-1186

261.    Although Stein Saks and Yaakov Saks knew that each of the allegations based on the Fake Cornerstone Letter was false, they knowingly and intentionally caused these allegations to be made in the Glick Complaint in order to fraudulently induce Experian into paying money to settle the case.

262.    On December 18, 2023, Stein Saks and Yaakov Saks demanded a settlement payment of $20,000 from Experian to resolve the sham lawsuit.

263.    On April 18, 2024, Stein Saks and Yaakov Saks produced the Fake Cornerstone Letter to Experian by email in response to discovery requests in the sham lawsuit.

264.    As a result of having to litigate the sham Glick lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

**D.    The FRMC Scheme**

**1.    Operation of the Scheme**

265.    In addition to the Cornerstone scheme, the Stein Saks Defendants, Zeig Law, Zeig and Soffer (the "FRMC Participants") knowingly and intentionally conspired and agreed to manufacture fake credit denials to fabricate injury and actual damages. The fake denials would then be used to extort an inflated settlement from Experian, and the settlement proceeds would be shared amongst the FRMC Participants.

266.    Since at least November 2022, the FRMC Participants have knowingly used the Fraudulent FRMC Letters to manufacture damages and prop up baseless FCRA claims against Experian. These cases were filed by Stein Saks, through Yaakov Saks, Saland, and/or Babad, on behalf of the following consumers: Ruth Amiram, Sharon Dorray, David Greenblatt, Jeffrey Herskowitz, Stephanie Woods Johnson, Jonathan Malichi, Aaron Mendlowitz, Dina Silber, Emily Small, Aquilas Vargas, and Shaddad Zokari. Zeig Law and Zeig also filed a case based upon a Fraudulent FRMC Letter on behalf of Sharon Dorray.

267.   To facilitate the scheme, and with the specific intent to defraud, Judah Stein directed Soffer to create the Fraudulent FRMC Letters and instructed Soffer to use specific language. As with the Fake Cornerstone Letters, the Fraudulent FRMC Letters specifically and falsely state that the denial was based solely upon the derogatory account on which Judah Stein was going to sue. That way, Judah Stein could argue that his client was denied credit because of Experian's reporting of that specific account, and that specific account alone, and not as the result of any other derogatory tradelines that were reporting on his client's credit file, which would harm the sham lawsuit.

268.   For example, in one case, the client had a Chapter 13 bankruptcy—the most serious derogatory notation for a consumer—and three negative accounts reporting on her file, with two of those accounts discharged in the bankruptcy and the third showing multiple late payments. Despite the seriousness of these delinquencies, the only account mentioned in the Fraudulent FRMC Letter was an Ocwen mortgage that was actually reporting positively as "transferred/never late."

269.   On February 2, 2023, Judah Stein directed Soffer to use specific language in a Fraudulent FRMC Letter.

**Daniel Soffer**

| | |
|---|---|
| **From:** | Daniel Soffer |
| **Sent:** | Thursday, February 2, 2023 5:05 PM |
| **To:** | Judah Stein |
| **Subject:** | RE: Vargas |
| **Attachments:** | Letter.pdf |

Here you go...

**From:** Judah Stein <jstein@SteinSaksLegal.com>
**Sent:** Thursday, February 2, 2023 4:39 PM
**To:** Daniel Soffer <DSoffer@fundingrmc.com>
**Subject:** RE: Vargas

Does this work:

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, it is my opinion that your credit scores from Experian and Transunion are currently lower due to the fact that you have multiple late payments reporting on your credit from Capital One as well as Barclays Bank/Old Navy. Less significant but also negatively impacting your score, are the accounts with more than [50%?] ratio of balance to available credit.  These lower scores will cause you to have a higher interest rate on your mortgage.

Thank you,

Judah

270.   Soffer complied with Judah Stein's instructions. Within a half an hour, Soffer responded with a copy of the letter, which included virtually the same language Judah Stein had directed him to use in the Fraudulent FRMC Letter.



**FUNDING RESOURCES**
MORTGAGE CORP.

February 2, 2023

Aquiles Vargas Jr.

RE: Purchase

Dear Aquiles,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, it is my opinion that your credit scores are currently lower due to the fact that you have multiple late payments reporting on your credit from Captial One as well as Barclays Bank/Old Navy. Less significant but also negatively impacting your scores, are the accounts with a high ratio of balance to available credit. These lower scores will cause you to have a higher interest rate on your mortgage.

Sincerely,

Daniel J Soffer
VP

271.   This language is similar to the language that Judah Stein instructed Argy to use in the Fake Cornerstone Letters. The Fraudulent FRMC Letters and the Fake Cornerstone Letters all state the following: "I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, it is my opinion that your credit scores are currently lower due to the fact" that something is reporting negatively only on the account at issue in the litigation.

272.   Both the FRMC and Cornerstone letters conclude that the consumers' credit scores have been affected and the consumer would be paying a higher interest rate.

273.   Soffer knew that Judah Stein was requesting the Fraudulent FRMC Letters to support damages claims in litigation against Experian and the other credit

reporting agencies.

274.   Soffer and Judah Stein worked together through email to revise the Fraudulent FRMC Letters until they contained what Judah Stein thought the lawyers at his firm needed to support damages. For example, when Judah Stein wanted to add a reference to a specific late payment in a Fraudulent FRMC Letter, Soffer updated the letter to include a reference to the late payment at issue in the litigation.

**Daniel Soffer**

| | |
|---|---|
| From: | Daniel Soffer |
| Sent: | Tuesday, December 20, 2022 4:08 PM |
| To: | Judah Stein |
| Cc: | yitz@paay.co |
| Subject: | RE: Mendlowitz |
| Attachments: | Letter.pdf |

Updated letter attached.

**From:** Daniel Soffer
**Sent:** Tuesday, December 20, 2022 4:02 PM
**To:** Judah Stein <jstein@SteinSaksLegal.com>
**Cc:** yitz@paay.co
**Subject:** FW: Mendlowitz

Here you go...

Daniel J Soffer
VP
Funding Resources Mortgage Corp.
777 Passaic Avenue
Clifton, NJ 07012

Phone - 973-471-0869
Fax - 973-777-9111
dsoffer@fundingrmc.com
866 LEND 144
NMLS #24770

275.   Similarly, when Judah Stein wanted to add Equifax to a lawsuit against Experian and TransUnion, Judah Stein requested that Soffer revise and "re-issue the same letter and just add that EQU in as well to the last line."

COMPLAINT
Case No. 8:24-cv-01186

**Daniel Soffer**

| | |
|---|---|
| **From:** | Daniel Soffer |
| **Sent:** | Friday, May 5, 2023 10:51 AM |
| **To:** | Judah Stein |
| **Cc:** | SHADDAD.H.ZOKARI@GMAIL.COM |
| **Subject:** | RE: Zokari Credit |
| **Attachments:** | Letter.pdf; Zokari Credit.pdf |

It now reports with all three bureaus.  I updated the letter to include all three.

Here is the updated letter and report.

From: Judah Stein <jstein@SteinSaksLegal.com>
Sent: Wednesday, May 3, 2023 2:24 PM
To: Daniel Soffer <DSoffer@fundingrmc.com>
Cc: SHADDAD.H.ZOKARI@GMAIL.COM
Subject: RE: Zokari Credit

Daniel – EQU added the Mercedes account in question back on the report, it was not there when you pull the credit last, it was only on TU.  I confirmed with Mr. Zokari that he would like for you to re-pull his credit and if you can re-issue the same letter and just add that EQU in as well to the last line.

Thanks

Judah

Thank you,

Judah

Judah Stein, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
P. (201) 282-6500 ext 103
F. (201) 282-6501
steinsakslegal.com

276.   Soffer responded to Judah Stein by email, updating the Fraudulent FRMC Letter. The updated Fraudulent FRMC Letter was subsequently used and produced in litigation against Experian, TransUnion, and Equifax. The final letter reflects that Equifax was added to the last line, as Judah Stein had instructed.

COMPLAINT
Case No. 8:24-cv-1186



May 5, 2023

Shaddad Zokari

███████████████

RE: Refinance

Dear Shaddad,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. Unfortunately, at this time we would be unable to offer you a loan based on your credit. As discussed, it is my opinion that your credit is currently lower due to the fact that MB Financial is reporting negatively with Transunion, Experian and Equifax on your trade-line with them.

Sincerely,

*[signature]*

Daniel J Soffer
VP

## 2. Consciousness of Guilt and Obstruction

277. Despite representing that the Fraudulent FRMC Letters were prepared "after receiving your loan application," none of the consumers submitted a completed loan application.

278. After Experian became suspicious of the Fraudulent FRMC Letters, it subpoenaed Soffer to produce, among other things, documents related to the Fraudulent FRMC Letters.

279. In response to the subpoena, Soffer produced loan applications that purported to correspond to the Fraudulent FRMC Letters. None of these applications were legitimate or completed by the consumers.

280. The applications produced by Soffer to Experian failed to satisfy the basic requirements for a loan application. *See* 12 C.F.R. § 1024.2(b). For example, the applications failed to include a loan amount and/or property address for the

COMPLAINT
Case No. 8:24-cv-1186

property the consumer purportedly sought to purchase or refinance. And none of the applications were signed by any of the consumers.

281.   On information and belief, Judah Stein directed Soffer to paper over the FRMC Scheme by completing the top of the applications with the names and contact information of the consumers after Experian subpoenaed Soffer.

### 3.   The Sham FRMC Lawsuits

#### a.   *Amiram v. Experian*

282.   On November 16, 2022, Stein Saks, through its agent Saland, filed a sham lawsuit in the Eastern District of New York on behalf of Ruth Amiram ("Amiram"), alleging FCRA violations by Experian, TransUnion, Equifax, and Bank of America, N.A. *See Amiram v. Transunion, LLC, et al.*, 2:22-cv-07018 (E.D.N.Y). Stein Saks, through Saland, electronically filed the Amiram Complaint through the Eastern District of New York CM/ECF system.

283.   In doing so, Stein Saks and Saland knowingly and intentionally made false allegations in the Amiram Complaint in order to state an FCRA claim, including, among others, that: (1) Armiram "was denied a mortgage on November 14, 2022"; (2) FRMC denied the mortgage "due to the 'multiple late payments with the Bank of America Mortgage that are listed on the your credit report"; and (3) Armiram "experienced anxiety" and "suffered concrete harm" because of Experian's reporting. Amiram Compl. ¶¶ 43-44, 49, 51.

284.   Amiram has never applied for credit with FRMC. And FRMC never denied her mortgage application in November 2022, or at any other time.

285.   On November 14, 2022, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Amiram on FRMC letterhead. Thereafter, Soffer sent the Fraudulent FRMC Letter to Judah Stein by email.

286.   The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the Fraudulent FRMC Letter purports (i) to be from a "licensed mortgage banker"; (ii) that it written "after receiving your

COMPLAINT
Case No. 8:24-cv-1186

loan application"; (iii) that a mortgage banker ran the consumer's credit; and (iv) the consumer would not be able to obtain a mortgage due to the reporting of the particular account at issue in the litigation.



**FUNDING RESOURCES**
MORTGAGE CORP.

November 14, 2022

Ruth Amiram

RE: FL Purchase

Dear Ruth,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. Unfortunately, at this time we will be unable to offer you a mortgage to purchase a property in Florida due to the multiple late payments with the Bank of America Mortgage that are listed on your credit report.

Sincerely,

Daniel J Soffer
VP

287.   Stein Saks, Saland, and Soffer knew that Amiram had not applied for a loan with FRMC. Stein Saks and Saland knew that Soffer had fabricated the Fraudulent FRMC Letter alleged in the Amiram Complaint at the direction of Judah Stein.

288.   Stein Saks and Saland knew that the false statements in the Amiram Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Saland knew that without an allegation that Amiram had suffered a concrete injury and actual damages as a result of errors in his credit report there would not be a viable FCRA claim against Experian.

289.   Although Stein Saks and Saland knew that each of the allegations based

on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused those allegations to be made in the Amiram Complaint in order to fraudulently induce Experian to pay money to settle the case.

290.   Stein Saks and Saland demanded a settlement payment from Experian to resolve the case.

291.   On April 26, 2023, Amiram and Experian entered into a Settlement Agreement and Release to resolve all claims and disputes arising out of the Amiram Complaint. As part of the resulting Settlement Agreement and Release, Experian agreed to make a lump sum payment to "Stein Saks, PLLC as Attorney for Ruth Amiram" that was to be sent to "Tamir Saland, Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601." But for the allegations based on the Fraudulent FRMC Letter, Experian would not have settled the case.

292.   Experian mailed the settlement check, dated July 26, 2023, to Stein Saks' New Jersey offices as specified in the Settlement Agreement and Release.

293.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC.

294.   On July 31, 2023, the settlement check payable to Stein Saks as attorneys for Amiram cleared Experian's bank account and was credited to an account at JPMC.

295.   As a result of having to litigate the sham Amiram lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### b.   *Herskowitz v. Experian*

296.   On November 23, 2022, Stein Saks, through its agent Saland, filed a sham lawsuit in the Eastern District of New York on behalf of Jeffrey Herskowitz ("Herskowitz"), alleging FCRA violations against Experian, TransUnion, Equifax, and Carrington Mortgage Services, LLC. *See Herskowitz v. TransUnion, LLC*, 2:22-cv-07151 (E.D.N.Y.). Stein Saks, through Saland, electronically filed the Herskowitz

Complaint through the Eastern District of New York CM/ECF system.

297.   In doing so, Stein Saks and Saland knowingly and intentionally made false allegations in the Herskowitz Complaint in order to state an FCRA claim, including, among others, that: (1) Herskowitz "was denied a refinanced loan"; (2) FRMC denied the refinance loan due to the "pending foreclosure with Carrington Mortgage that is listed on your credit report"; and (3) Herskowitz "suffered concrete harm" and "mental and emotional pain" as a result of Experian's reporting. Herskowitz Compl. ¶¶ 44-45, 56.

298.   Herskowitz never applied for credit with FRMC. And FRMC never denied his refinanced mortgage loan at any time.

299.   On November 11, 2022, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Herskowitz on FRMC letterhead. Thereafter, Soffer sent the Fraudulent FRMC Letter to Judah Stein by email.

300.   The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the letter purports (i) to be from a "licensed mortgage banker"; (ii) that the letter was written "after receiving your loan application"; (iii) that the mortgage banker ran the consumer's credit; and (iv) the consumer would not be able to refinance due to the reporting of the particular account at issue in the litigation.

1
2



3

4

November 11, 2022

5

Jeffrey Herskowitz & Esther Zelcer

6

RE: Refinance

7

Dear Jeffrey & Esther,

8      I am a licensed mortgage banker. After receiving your loan application, I ran your
       credit. Unfortunately, at this time we will be unable to offer you a refinance loan
       due to the pending foreclosure with Carrington Mortgage that is listed on your
9      credit report. Additionally, due to this pending foreclosure, your credit scores are
       below our minimum credit score required.

10     Sincerely,

11     

12     Daniel J Soffer
       VP

13

14        301.   Stein Saks and Saland knew that Herskowitz had not applied for a loan

15     with FRMC and that FRMC did not deny Herskowitz credit based on a consumer

16     report from Experian. Stein Saks and Saland knew that Soffer had fabricated the

17     Fraudulent FRMC Letter alleged in the Herskowitz Complaint at the direction of

18     Judah Stein.

19        302.   Stein Saks and Saland knew that the false statements in the Herskowitz

20     Complaint were material to the FCRA cause of action because they established

21     standing and actual damages. Stein Saks and Saland knew that without an allegation

22     that Herskowitz had suffered a concrete injury and actual damages as a result of errors

23     in his credit report there would not be a viable FCRA claim against Experian.

24        303.   Although Stein Saks and Saland knew that each of the allegations based

25     on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused

26     those allegations to be made in the Herskowitz Complaint in order to fraudulently

27     induce Experian to pay money to settle the case.

28        304.   On March 24, 2023, plaintiff Herskowitz and Experian entered into a

COMPLAINT
Case No. 8:24-cv-1186

Settlement Agreement and Release to resolve all claims and disputes arising out of the Herskowitz Complaint. As part of the resulting Settlement Agreement and Release, Experian agreed to make a lump sum payment to "Stein Saks, PLLC as Attorney for Jeffrey Herskowitz" that was to be sent to "Tamir Saland, Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601." But for the allegations based on the Fraudulent FRMC Letter, Experian would not have settled on these terms.

305.   Experian mailed the settlement check, dated May 10, 2023, to Stein Saks' New Jersey offices as specified in the Settlement Agreement and Release.

306.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC.

307.   On May 16, 2023, the settlement check payable to Stein Saks as attorneys for Jeffrey Herskowitz cleared Experian's bank account and was credited to an account at JPMC.

308.   As a result of having to litigate the sham Herskowitz lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

*c.*   *Vargas v. Experian*

309.   On February 20, 2023, Stein Saks, through its agent Babad, filed a sham lawsuit in the Eastern District of New York on behalf of Aquilas Vargas ("Vargas"), alleging FCRA violations against Experian, TransUnion LLC, Equifax, Bank of America, N.A., Barclays Bank Delaware, and Capital One, N.A. *See Vargas v. Equifax Info. Servs., LLC*, 1:23-cv-01325 (E.D.N.Y.). Stein Saks, through Babad, electronically filed the Vargas Complaint through the Eastern District of New York CM/ECF system

310.   In doing so, Stein Saks and Babad knowingly and intentionally made false allegations in the Vargas Complaint in order to state an FCRA claim, including, among others, that: (1) Vargas applied for a mortgage; (2) FRMC denied the

mortgage due to Experian's reporting of the Barclays, Capital One, and Bank of America accounts; and (3) Vargas "was emotionally distraught" and "unable to secure necessary credit" because of Experian's reporting. Vargas. Compl. ¶¶ 118, 120, 122-123.

311. Vargas never applied for credit with FRMC. And FRMC never denied Vargas a mortgage at any time.

312. Stein Saks and Babad knew that Vargas had not applied for a loan with FRMC. Stein Saks and Babad also knew that Soffer had fabricated the Fraudulent FRMC Letter alleged in the Vargas Complaint at the direction of Judah Stein.

313. On February 2, 2023, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Vargas on FRMC letterhead. Thereafter, Soffer sent the Fraudulent FRMC Letter to Judah Stein by email.

314. The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the letter purports (i) to be from a "licensed mortgage banker"; (ii) that it was written "after receiving your loan application"; (iii) that the mortgage banker ran the consumer's credit; and (iv) the consumer would not be able to obtain a mortgage due to the reporting of the particular accounts at issue in the litigation.



**FUNDING RESOURCES**
MORTGAGE CORP.

February 2, 2023

Aquiles Vargas Jr.

RE: Purchase

Dear Aquiles,

I am a licensed mortgage banker.  After receiving your loan application, I ran your credit.  As discussed, it is my opinion that your credit scores are currently lower due to the fact that you have multiple late payments reporting on your credit from Captial One as well as Barclays Bank/Old Navy.  The lower scores will cause you to have a higher interest rate on your mortgage.

Sincerely,



Daniel J Soffer
VP

315.   Stein Saks and Babad knew that Vargas had not applied for a loan with FRMC. Stein Saks and Babad also knew that Soffer had fabricated the Fraudulent FRMC Letter alleged in the Vargas Complaint at the direction of Judah Stein.

316.   Stein Saks and Babad knew that the false statements in the Vargas Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Babad knew that without an allegation that Vargas had suffered a concrete injury and actual damages as a result of errors in his credit report there would not be a viable FCRA claim against Experian.

317.   Although Stein Saks and Babad knew that each of the allegations based on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused those allegations to be made in the Vargas Complaint in order to fraudulently induce Experian to pay money to settle the case.

318.   On September 6, 2023, Vargas and Experian entered into a Settlement

Agreement and Release to resolve all claims and disputes arising out of the Vargas Complaint. As part of the resulting Settlement Agreement and Release, Experian agreed to make a settlement payment to "Stein Saks, PLLC as Attorney for Aquilas Vargas" that was to be sent to "Eliyahu Babad, Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601. But for the allegations based on the Fraudulent FRMC Letter, Experian would not have settled the case.

319.   On December 4, 2023, Experian mailed the settlement check to Stein Saks's New Jersey offices as specified in the Settlement Agreement and Release.

320.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC.

321.   On December 6, 2023, the settlement check payable to Stein Saks as attorneys for Vargas cleared Experian's bank account and was credited to an account at JPMC.

322.   As a result of having to litigate the sham Vargas lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### d.   *Mendlowitz v. Experian*

323.   On February 22, 2023, Stein Saks, through its agent Saland, filed a sham lawsuit in the Eastern District of New York on behalf of Aaron Mendlowitz ("Mendlowitz"), alleging FCRA violations by Experian, TransUnion, Equifax, and NewRez, LLC d/b/a/ Shellpoint Mortgage Servicing ("NewRez"). *See Mendlowitz v. TransUnion, LLC*, 2:23-cv-01408 (E.D.N.Y.). Stein Saks, through Saland, electronically filed the Mendlowitz Complaint through the Eastern District of New York CM/ECF system.

324.   In doing so, Stein Saks and Saland knowingly and intentionally made false allegations in the Mendlowitz Complaint in order to state an FCRA claim, including, among others, that: (1) Mendlowitz was unable to "qualify for an affordable interest rate on a refinanced loan"; (2) FRMC informed him on December

20, 2022 that he "would have to pay 'a higher interest rate'" "due to the late mortgage payment" on his NewRez account and that "it would not make sense for [him] to refinance"; and (3) Mendlowitz "suffered concrete harm" and "mental and emotional pain" because of Experian's reporting. Mendlowitz Compl. ¶¶ 53-55, 61.

325.   Mendlowitz has never applied for credit with FRMC. And FRMC never informed him he would have to pay a higher interest rate on a refinanced mortgage loan in December 2022, or at any other time.

326.   On December 20, 2022, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Mendlowitz on FRMC letterhead. Thereafter, Soffer sent the Fraudulent FRMC Letter to Judah Stein by email.

327.   The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the Fraudulent FRMC Letter purports (i) to be from a "licensed mortgage banker"; (ii) that it written "after receiving your loan application"; (iii) that a mortgage banker ran the consumer's credit; and (iv) the consumer would have pay a higher interest rate on a refinanced mortgage loan due to the reporting of the particular account at issue in the litigation:



December 20, 2022

Aaron Mendlowitz



RE: Refinance

Dear Aaron,

I am a licensed mortgage banker.  After receiving your loan application, I ran your credit.  As discussed, at this time, due to the late mortgage payment on 10/22 with NR/SMS/CAL, your credit scores have dropped below 740 and you would be paying a higher interest rate.  Based on your current scores, it would not make sense for you to refinance.

Sincerely,



Daniel J Soffer
VP

328.   Stein Saks and Saland knew that Mendlowitz had not applied for a loan with FRMC. Stein Saks and Saland also knew that Soffer had fabricated the Fraudulent FRMC Letter alleged in the Mendlowitz Complaint at the direction of Judah Stein.

329.   Stein Saks and Saland knew that the false statements in the Mendlowitz Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Saland knew that without an allegation that Mendlowitz had suffered a concrete injury and actual damages as a result of errors in his credit report there would not be a viable FCRA claim against Experian.

330.   Although Stein Saks and Saland knew that each of the allegations based on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused those allegations to be made in the Mendlowitz Complaint in order to fraudulently induce Experian to pay money to settle the case.

331.   On May 4, 2023, Mendlowitz and Experian entered into a Settlement Agreement and Release to resolve all claims and disputes arising out of the Mendlowitz Complaint. As part of the resulting Settlement Agreement and Release, Experian agreed to make a lump sum payment by delivery of two checks: (i) one made payable to Mendlowitz and (ii) the other payable to Mendlowitz's attorney "Tamir Saland, Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601." But for the allegations based on the Fraudulent FRMC Letter, Experian would not have settled on these terms.

332.   On May 24, 2023, Experian mailed two settlement checks payable to Stein Saks and Mendlowitz as specified in the Settlement Agreement and Release.

333.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC. The other check was separately endorsed for deposit into a bank account at JPMC.

334.   On May 31, 2023, the settlement check payable to Stein Saks as attorneys for Medlowitz cleared Experian's bank account and was credited to an account at JPMC. On June 5, 2023, the settlement check payable to Medlowitz cleared Experian's bank account and was credited into a back account at JPMC.

335.   As a result of having to litigate the sham Medlowitz lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### e.   *Zokari v. Experian*

336.   On May 18, 2023, Stein Saks, through its agent Babad, filed a sham lawsuit was filed in the Eastern District of New York on behalf of Shaddad Zokari ("Zokari"), alleging FCRA violations by Experian, TransUnion, Equifax, and Mercedes-Benz Financial Services USA LLC ("Mercedes-Benz"). *See Zokari v. Equifax Info. Servs., LLC*, 1:23-cv-03702 (E.D.N.Y.). Stein Saks, through Babad, electronically filed the Zokari Complaint through the Eastern District of New York CM/ECF system.

337.   In doing so, Stein Saks and Babad knowingly and intentionally made false allegations in the Zokari Complaint in order to state an FCRA claim, including, among others, that: (1) Zokari "was denied    a mortgage"; (2) the mortgage was denied "due to the" the Mercedes Benz Account; and (3) Zokari was "emotionally distraught" and "unable to secure the necessary credit" because of Experian's reporting. Zokari Compl. ¶¶ 99, 101-03.

338.   Zokari never applied for credit with FRMC. And FRMC never denied his mortgage application.

339.   On April 4, 2023, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Zokari on FRMC letterhead. Thereafter, Soffer sent the Fraudulent FRMC Letter to Judah Stein by email.

340.   The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the Fraudulent FRMC Letter purports (i) to be from a "licensed mortgage banker"; (ii) that it written "after receiving your loan application," (iii) that a mortgage banker ran the consumer's credit; and (iv) the consumer would not be able to obtain a mortgage due to the reporting of the particular account at issue in the litigation.

1
2
3
4
5
6
7
8
9
10
11
12



**FUNDING RESOURCES**
MORTGAGE CORP.

April 4, 2023

Shaddad Zokari

RE: Refinance

Dear Shaddad,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. Unfortunately, at this time we would be unable to offer you a loan based on your credit. As discussed, it is my opinion that your credit is currently lower due to the fact that MB Financial is reporting negatively with Transunion on your tradeline with them.

Sincerely,



Daniel J Soffer
VP

13
14
15      341.   Stein Saks and Babad knew that Zokari had not applied for a loan with

16   FRMC. Stein Saks and Babad knew that Soffer had fabricated the Fraudulent FRMC

Letter alleged in the Zokari Complaint at the direction of Judah Stein.

17      342.   Stein Saks and Babad knew that the false statements in the Zokari

18   Complaint were material to the FCRA cause of action because they established

standing and actual damages. Stein Saks and Babad knew that without an allegation

19   that Zokari had suffered a concrete injury and actual damages as a result of errors in

20   his credit report there would not be a viable FCRA claim against Experian.

21      343.   Although Stein Saks and Babad knew that each of the allegations based

22   on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused

23   those allegations to be made in the Zokari Complaint in order to fraudulently induce

24   Experian to pay money to settle the case.

25      344.   On December 4, 2023, Zokari and Experian entered into a Settlement

26   Agreement and Release to resolve all claims and disputes arising out of the Zokari

27   Complaint. As part of the resulting Settlement Agreement and Release, Experian

28

COMPLAINT
Case No. 8:24-cv-1186

agreed to make a payment to the plaintiff and a separate payment to Stein Saks, which was sent to "Eliyahu Babad, Stein Saks, One University Plaza, Hackensack, NJ 07601." But for the allegations based on the Fraudulent FRMC Letter, Experian would not have settled the case.

345.   On February 9, 2024, Experian mailed the settlement checks to Stein Saks' New Jersey offices as specified in the Settlement Agreement and Release.

346.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC.

347.   On February 13, 2024, the settlement check payable to Stein Saks as attorneys for Zokari cleared Experian's bank account and was credited to an account at JPMC.

348.   As a result of having to litigate the sham Zokari lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

f.     *Small v. Experian*

349.   On July 20, 2023, Stein Saks, through its agent Saland, filed a sham lawsuit in the Eastern District of Pennsylvania on behalf of Emily Small ("Small"), alleging FCRA violations by Experian, TransUnion, Equifax, TD Bank USA N.A., and Wells Fargo Bank, N.A., d/b/a Wells Fargo Card Services ("Wells Fargo"). *See Small v. TransUnion, LLC*, 2:23-cv-02782 (E.D. Pa.). Stein Saks and Saland electronically filed the Small Complaint through the Eastern District of Pennsylvania's CM/ECF system via local counsel.

350.   In doing so, Stein Saks and Saland knowingly and intentionally made false allegations in the Small Complaint in order to state an FCRA claim, including, among others, that: (1) Small was denied a mortgage in June 2023; (2) FRMC denied the mortgage due to "multiple late payments reported by TD Bank/Target and Wells Fargo"; and (3) Small "suffered concrete harm" and "mental and emotional pain" because of Experian's reporting. Small Compl. ¶¶ 56-64, 102-109.

351.  Small never applied for credit with FRMC. And FRMC never denied her mortgage application in June 2023, or at any other time.

352.  On June 22, 2023, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Small on FRMC letterhead. Thereafter, Soffer sent the Fraudulent FRMC Letter to Judah Stein by email.

353.  The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the letter purports (i) to be from a "licensed mortgage banker"; (ii) that the letter was written "after receiving your loan application"; (iii) that the mortgage banker ran the plaintiff's credit; (iv) the consumer would have pay a higher interest rate on a refinanced mortgage loan due to the reporting of the particular account at issue in the litigation.



June 22, 2023

Emily Sara Small

████████████████

RE: Refinance

Dear Emily,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, based on your credit scores and the multiple late payments reported by TD Bank/Target and Wells Fargo, it would not make sense for you to refinance. The adjustments for the interest rate, due to your credit score, cause the rate to be too high and therefore we cannot refinance you at this time. If you have any questions, feel free to reach out.

Sincerely,

*Dil Soff*

Daniel J Soffer
VP

354.  Stein Saks and Saland knew that Small had not applied for a loan with FRMC. Stein Saks and Saland knew that Soffer had fabricated the Fraudulent FRMC Letter alleged in the Small Complaint at the direction of Judah Stein.

355.   Stein Saks and Saland knew that the false statements in the Small Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Saland knew that without an allegation that Small had suffered a concrete injury and actual damages as a result of errors in his credit report there would not be a viable FCRA claim against Experian.

356.   Although Stein Saks and Saland knew that each of the allegations based on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused those allegations to be made in the Small Complaint in order to fraudulently induce Experian to pay money to settle the case.

357.   On November 13, 2023, Small and Experian entered into a Settlement Agreement and Release to resolve all claims and disputes arising out of the Small Complaint. As part of the resulting Settlement Agreement and Release, Experian agreed to make a lump sum payment to "Stein Saks, PLLC, as Attorney for Emily Small" that was to be sent to "Tamir Saland, Esq., Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601." But for the allegations based on the Fraudulent FRMC Letter, Experian would not have settled the case.

358.   On December 6, 2023, Experian mailed the settlement check to Stein Saks' New Jersey offices as specified in the Settlement Agreement and Release.

359.   The settlement check was endorsed by Stein Saks for deposit into a bank account at JPMC.

360.   On December 8, 2023, the settlement check payable to Stein Saks as attorneys for Small cleared Experian's bank account and was credited to an account at JPMC.

361.   As a result of having to litigate the sham Small lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

g.   *Greenblatt v. Experian*

362.   On September 19, 2023, Stein Saks, through its agent Saland, filed a

sham lawsuit in the Eastern District of New York on behalf of David Greenblatt ("Greenblatt"), alleging FCRA violations by Experian, TransUnion, Equifax, American Honda Finance Corp., and Nissan-Infiniti LT. *See Greenblatt v. TransUnion, LLC*, 2:23-cv-06943 (E.D.N.Y.). Stein Saks and Saland electronically filed the Greenblatt Complaint through the Eastern District of New York CM/ECF system.

363.   In doing so, Stein Saks and Saland knowingly and intentionally made false allegations in the Greenblatt Complaint in order to state an FCRA claim, including, among others, that: (1) Greenblatt was unable to "qualify for an affordable interest rate on a refinanced loan"; (2) FRMC informed him on May 24, 2023 that he "would have to pay 'a higher interest rate'" due to the reporting of the American Honda account on his consumer report and that "it would not make sense for [him] to refinance"; and (3) Greenblatt "suffered concrete harm" and "mental and emotional pain" because of Experian's reporting. Greenblatt Compl. ¶¶ 40-42, 73-75, 81.

364.   Greenblatt never applied for credit with FRMC. And FRMC never denied his refinanced mortgage loan in May 2023, or at any other time.

365.   On May 24, 2023, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Greenblatt on FRMC letterhead. Thereafter, Soffer sent the Fraudulent FRMC Letter to Judah Stein by email.

366.   The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the letter purports (i) to be from a "licensed mortgage banker"; (ii) that the letter was written "after receiving your loan application," (iii) that the mortgage banker ran the consumer's credit; and (iv) the consumer would have to pay a higher interest rate on refinanced mortgage loan due to the reporting of particular accounts at issue in the litigation.

1

2



3

4       May 24, 2023

        David Greenblatt

5       ████████████████████

6       RE: Refinance

7       Dear David,

8       I am a licensed mortgage banker. After receiving your loan application, I ran your
        credit. As discussed, based on your current credit scores, the interest would be
        higher than usual if you choose to refinance at this time.  In my opinion, your scores
9       are currently negatively impacted by the tradelines with American Honda Finance
        and Nissan/Infiniti. They each report a late payment with all three credit bureaus
10      and this is the only derogatory information reporting on your credit report.  If you
        have any questions, feel free to reach out.

11      Sincerely,

12

13      Daniel J Soffer
        VP

14      367.   Stein Saks and Saland knew that Greenblatt had not applied for a loan

15  with FRMC. Stein Saks and Saland also knew that Soffer had fabricated the

16  Fraudulent FRMC Letter alleged in the Greenblatt Complaint at the direction of

17  Judah Stein.

18      368.   Stein Saks and Saland knew that the false statements in the Greenblatt

19  Complaint were material to the FCRA cause of action because they established

20  standing and actual damages. Stein Saks and Saland knew that without an allegation

21  that Greenblatt had suffered a concrete injury and actual damages as a result of errors

22  in his credit report there would not be a viable FCRA claim against Experian.

23      369.   Although Stein Saks and Saland knew that each of the allegations based

24  on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused

25  those allegations to be made in the Greenblatt Complaint in order to fraudulently

26  induce Experian to pay money to settle the case.

27      370.   On January 12, 2024, Saland notified the court that Greenblatt and

28

Experian entered into a Settlement Agreement and Release to resolve all claims and disputes arising out of the Greenblatt Complaint. As part of the resulting Settlement Agreement and Release, Experian agreed to make a lump sum payment to "Stein Saks, PLLC, as Attorney for David Greenblatt" that was to be sent to "Tamir Saland, Esq., Stein Saks, PLLC, One University Plaza, Suite 620, Hackensack, NJ 07601." But for the allegations based on the Fraudulent FRMC Letter, Experian would not have settled the case.

371.   As a result of having to litigate the sham Greenblatt lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### h.   *Dorray v. Experian*

372.   On September 29, 2023, Zeig Law, through its agent Zeig, filed a sham lawsuit in the Middle District of Florida on behalf of Sharon Dorray ("Dorray"), alleging FCRA violations by Experian, TransUnion, Equifax, and Pentagon Federal Credit Union ("PenFed"). *See Dorray v. Equifax Info. Servs., LLC*, 8:23-cv-02224 (M.D. Fla.). Zeig Law, through Zeig, electronically filed the Dorray Complaint through the Middle District of Florida CM/ECF system.

373.   In doing so, Zeig Law and Zeig knowingly and intentionally made false allegations in the Dorray Complaint in order to state an FCRA claim, including, among others, that: (1) Dorray "was only able to obtain a loan with a very high interest rate"; (2) it "would have been financially unfeasible for [her] to have refinanced" due to the PenFed account; and (3) Dorray was "emotionally distraught" and "unable to secure the necessary credit" because of Experian's reporting. Dorray Compl. ¶¶ 70, 73-77.

374.   Dorray never applied for credit with FRMC. And FRMC never denied her refinance mortgage loan application at any time.

375.   On May 17, 2023, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Dorray on FRMC letterhead. Thereafter, Soffer sent the

1 | Fraudulent FRMC Letter to Judah Stein by email.

2 |     376.   The Fraudulent FRMC Letter had the same common characteristics as

3 | the Fake Cornerstone Letters. For example, the letter purports (i) to be from a

4 | "licensed mortgage banker"; (ii) that the letter was written "after receiving your loan

5 | application"; (iii) that the mortgage banker ran the plaintiff's credit; and (iv) the

6 | consumer could not refinance her mortgage loan due to the reporting of the particular

7 | account at issue in the litigation.



FUNDING RESOURCES
MORTGAGE CORP.

May 17, 2023



Sharon Dorray

RE: Refinance

Dear Sharon,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, based on your current credit scores, the interest would be higher and therefore it would not make sense for you to refinance at this time.  In my opinion, your scores are currently negatively impacted by the tradeline with PentagonBC.  They report several late payments with all three bureaus.  If you have any questions, feel free to reach out.

Sincerely,



Daniel J Soffer
VP

19 |     377.   Zeig Law and Zeig knew that Dorray had not applied for a loan with

20 | FRMC. Zeig Law and Zeig also knew that Soffer had fabricated the Fraudulent

21 | FRMC Letter alleged in the Dorray Complaint at the direction of Judah Stein.

22 |     378.   Zeig Law and Zeig knew that the false statements in the Dorray

23 | Complaint were material to the FCRA cause of action because they established

24 | standing and actual damages. Zeig Law and Zeig knew that without an allegation that

25 | Dorray had suffered a concrete injury and actual damages as a result of errors in her

26 | credit report there would not be a viable FCRA claim against Experian.

27 |     379.   Although Zeig Law and Zeig knew that each of the allegations based on

28 | the Fraudulent FRMC Letter was false, they knowingly and intentionally caused

those allegations to be made in the Dorray Complaint in order to fraudulently induce Experian to pay money to settle the case.

380.   As a result of having to litigate the sham Dorray lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

*i.    Woods Johnson v. Experian*

381.   On October 24, 2023, Stein Saks, through its agent Yaakov Saks, filed a sham lawsuit in the District of New Jersey on behalf of Stephanie Woods Johnson ("Woods Johnson"), alleging FCRA violations by Experian, TransUnion, Equifax, and Ocwen Loan Servicing LLC ("Ocwen"). *See Johnson v. TransUnion, LLC*, 1:23-cv-21404 (D.N.J.). Stein Saks, through Yaakov Saks, electronically filed the Woods Johnson Complaint through the District of New Jersey CM/ECF system.

382.   In doing so, Stein Saks and Yaakov Saks knowingly and intentionally made false allegations in the Woods Johnson Complaint in order to state an FCRA claim, including, among others, that: (1) Woods Johnson was unable "to qualify for an affordable interest rate on a refinanced loan"; (2) FRMC informed her on July 5, 2023 that she "would have to pay a 'higher interest rate'" due to the Ocwen account; and (3) Woods Johnson "suffered concrete harm" and "mental and emotional pain" because of Experian's reporting. Woods Johnson Compl. ¶¶ 65-68, 74.

383.   Woods Johnson has never applied for credit with FRMC. And FRMC never denied her refinanced mortgage loan in July 2023, or at any time.

384.   On July 5, 2023, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Woods Johnson on FRMC letterhead.

385.   The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the letter purports (i) to be from a "licensed mortgage banker"; (ii) that the letter was written "after receiving your loan application"; (iii) that the mortgage banker ran the plaintiff's credit; and (iv) the consumer could not refinance her mortgage due to the reporting of the particular

account at issue in the litigation.

**FUNDING RESOURCES**
MORTGAGE CORP.

July 5, 2023

Stephanie Woods Johnson

██████████████

RE: Refinance

Dear Stephanie,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, based on your credit scores and the multiple late payments reported by Ocwen, it would not make sense for you to refinance. The adjustments for the interest rate, due to your credit score, cause the rate to be too high and therefore we cannot refinance you at this time. If you have any questions, feel free to reach out.

Sincerely,



Daniel J Soffer
VP

386.   Stein Saks and Yaakov Saks knew that Woods Johnson had not applied for a loan with FRMC. Stein Saks and Yaakov Saks also knew that Soffer had fabricated the Fraudulent FRMC Letter alleged in the Woods Johnson Complaint at the direction of Judah Stein.

387.   Stein Saks and Yaakov Saks knew that the false statements in the Woods Johnson Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Yaakov Saks knew that without an allegation that Woods Johnson had suffered a concrete injury and actual damages as a result of errors in her credit report there would not be a viable FCRA claim against Experian.

388.   Although Stein Saks and Yaakov Saks knew that each of the allegations based on the Fraudulent FRMC Letter was false, they knowingly and intentionally

caused those allegations to be made in the Woods Johnson Complaint in order to fraudulently induce Experian to pay money to settle the case.

389.   As a result of having to litigate the sham Woods Johnson lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### j.   *Malichi v. Experian*

390.   On November 20, 2023, Stein Saks, through its agent Babad, filed a sham lawsuit in the Eastern District of New York on behalf of Jonathan Malichi ("Malichi"), alleging FCRA violations against Experian, TransUnion, and Equifax. *See Malichi v. Equifax Info. Servs., LLC*, 1:23-cv-08628 (E.D.N.Y.). Stein Saks, through Babad, electronically filed the Malichi Complaint through the Eastern District of New York CM/ECF system.

391.   In doing so, Stein Saks and Babad knowingly and intentionally made false allegations in the Malichi Complaint in order to state an FCRA claim, including, among others, that: (1) Malichi's application for a refinancing loan was denied; (2) Malichi's mortgage broker informed him that "based on the multiple late mortgage payments reported by New Rez/Shellpoint, [it was] unable to offer [him] an option to refinance at this time"; and (3) Malichi has been "denied funding opportunities" and suffered "mental and emotional pain" because of Experian's reporting. Malichi Compl. ¶¶ 65-68.

392.   Malichi has never applied for credit with FRMC. And FRMC never denied his refinanced mortgage loan at any time.

393.   On June 12, 2023, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Malichi on FRMC letterhead. Thereafter, Soffer sent the Fraudulent FRMC Letter to Judah Stein by email.

394.   Stein Saks and Babad knew that Malichi had not applied for a loan with FRMC and that FRMC had not denied Malichi's mortgage loan application based on a consumer report from Experian. Stein Saks and Babad knew that Soffer had

fabricated the Fraudulent FRMC Letter alleged in the Malichi Complaint at the direction of Judah Stein

395.   The Fraudulent FRMC Letter had the same common characteristics as the Fake Cornerstone Letters. For example, the letter purports (i) to be from a "licensed mortgage banker"; (ii) that the letter was written "after receiving your loan application"; (iii) that the mortgage banker ran the plaintiff's credit; and (iv) the consumer could not refinance his mortgage due to the reporting of the particular account at issue in the litigation.



June 12, 2023

Jonathan Malichi

████████████

RE: Refinance

Dear Jonathan,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, based on the multiple late mortgage payments reported by New Rez/Shellpoint, we are unable to offer you an option to refinance at this time. If you have any questions, feel free to reach out.

Sincerely,

Daniel J Soffer
VP

396.   Stein Saks and Babad knew that the false statements in the Malichi Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Babad knew that without an allegation that Malichi had suffered a concrete injury and actual damages as a result of errors in his credit report there would not be a viable FCRA claim against Experian.

397.   Although Stein Saks and Babad knew that each of the allegations based on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused those allegations to be made in the Malichi Complaint in order to fraudulently induce

1    Experian to pay money to settle the case.

2    398.  As a result of having to litigate the sham Mallachi lawsuit, Experian has

3    incurred a substantial amount of attorneys' fees and costs. Experian will prove the

4    exact amount of damages at trial.

5    *k.    Silber v. Experian*

6    399.  On July 24, 2023, Stein Saks, through its agent Yaakov Saks, filed a

7    sham lawsuit in the District of New Jersey on behalf of Dina Silber ("Silber"),

8    alleging FCRA violations by Experian, TransUnion, Equifax, and US Bank, National

9    Association ("US Bank"). *See Silber v. Transunion, LLC*, 2:23-cv-03927 (D.N.J.).

10   Stein Saks, through Yaakov Saks, electronically filed the Silber Complaint through

11   the District of New Jersey CM/ECF system.

12   400.  In doing so, Stein Saks and Yaakov Saks knowingly and intentionally

13   made false allegations in the Silber Complaint in order to state an FCRA claim,

14   including, among others, that: (1) Silber was denied a mortgage on March 17, 2023;

15   (2) FRMC denied the mortgage "based on the fact that 'US Bank is reporting multiple

16   late payments on your tradeline with them'"; and (3) Silber "suffered concrete harm"

17   and "mental and emotional pain" because of Experian's reporting. Silber Compl. ¶¶

18   44-47.

19   401.  Silber has never applied for credit with FRMC. And FRMC never

20   denied her mortgage application in March 2023, or at any other time.

21   402.  On March 17, 2023, at the direction of Judah Stein, Soffer fabricated a

22   credit denial letter for Silber on FRMC letterhead. Thereafter, Soffer sent the

23   Fraudulent FRMC Letter to Judah Stein by email.

24   403.  The Fraudulent FRMC Letter had the same common characteristics as

25   the Fake Cornerstone Letters. For example, the letter purports (i) to be from a

26   "licensed mortgage banker"; (ii) that the letter was written "after receiving your loan

27   application"; (iii) that the mortgage banker ran the plaintiff's credit; and (iv) the

28   consumer would not be able to obtain a mortgage due to the reporting of the particular

account at issue in the litigation.

**FUNDING RESOURCES**
MORTGAGE CORP.

March 17, 2023

Dina Silber

RE: Refinance

Dear Dina,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, it is my opinion that your credit scores are currently lower due to the fact that US Bank is reporting multiple late payments on your tradeline with them.

Sincerely,

Daniel J Soffer
VP

404.   Stein Saks and Yaakov Saks knew that Silber had not applied for a loan with FRMC and that FRMC did not deny Silber for a mortgage based on a consumer report from Experian. Stein Saks and Yaakov Saks knew that Soffer had fabricated the Fraudulent FRMC Letter alleged in the Silber Complaint at the direction of Judah Stein.

405.   Stein Saks and Yaakov Saks knew that the false statements in the Silber Complaint were material to the FCRA cause of action because they established standing and actual damages. Stein Saks and Yaakov Saks knew that without an allegation that Silber had suffered a concrete injury and actual damages as a result of errors in her credit report there would not be a viable FCRA claim against Experian.

406.   Although Stein Saks and Yaakov Saks knew that each of the allegations based on the Fraudulent FRMC Letter was false, they knowingly and intentionally caused those allegations to be made in the Silber Complaint in order to fraudulently

COMPLAINT
Case No. 8:24-cv-1186

induce Experian to pay money to settle the case.

407.   As a result of having to litigate the sham Silber lawsuit, Experian has incurred a substantial amount of attorneys' fees and costs. Experian will prove the exact amount of damages at trial.

### E.   Additional Evidence Of Fraud

408.   The Cornerstone and FRMC Schemes directed by the Stein Saks Defendants are only the tip of the iceberg. While the full extent of their fraud has yet to be uncovered, the Stein Saks Defendants have coordinated with numerous other credit repair organizations—including TwoPointZeroNY, Millennial Credit Repair, Inc., and DOE organizations—to file lawsuits that are strikingly similar to the sham lawsuits in the Cornerstone and the FRMC Schemes.

409.   As with the Cornerstone and FRMC Schemes, on information and belief, the Stein Saks Defendants directed others to identify consumers for sham lawsuits, set up cases with frivolous disputes, create false evidence of mortgage denials from various mortgage-related entities, and fraudulently induce inflated settlement payments, from which they derive revenue and profit.

410.   Since September 2022, Stein Saks has filed at least 34 lawsuits that fraudulently allege mortgage application denials from at least eleven different mortgage entities: Ark Mortgage, Inc., Astar Home Capital, Inc., BankSouth Mortgage, Capital M Mortgage Masters, Funding Source Corp., JVM Lending, Landstone Equities, LLC, Onyx Equity Partners Corp. All of these entities have confirmed that the respective plaintiffs either did not apply for a mortgage or, for a small number of plaintiffs, they applied for and were granted a mortgage. None of the entities have any record of any mortgage denial for the plaintiffs.

411.   Furthermore, at least half of these entities are brokers—Astar Home Capital, Inc., Capital M Mortgage Masters, Funding Source Corp., Landstone Equities, LLC, and Onyx Equity Partners Corp.—which cannot legally make mortgage loans under the law of the jurisdiction where Stein Saks alleged the

consumer was seeking a mortgage. N.Y. Banking Law § 590(5)(a).

412.   The language used in the purported mortgage denial letters is similar to the language Soffer instructed Argy to use for the Cornerstone Scheme and Soffer to use for the FRMC Scheme. The letters are only a few sentences and contain some or all of the following statements that purport (i) to be from a "licensed mortgage banker"; (ii) that the letter was written "after receiving your loan application"; (iii) that the mortgage banker "reviewed all three of your credit reports"; (iv) that due to the reporting of a particular account that is the subject of litigation, the consumer has a lower credit score or would receive a higher interest rate, and (v) the consumer would be unable to obtain a mortgage.

## **FIRST CLAIM FOR RELIEF**

### **Violation of 18 U.S.C. § 1962(c)**
**Association In Fact Enterprise**
**(Against All Defendants)**

413.   Experian realleges and incorporates herein by reference each and every forgoing paragraph as if set forth in full.

414.   At all relevant times, Experian is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

415.   At all relevant times, each Defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

### *The RICO Enterprise*

416.   At all relevant times, Defendants formed and orchestrated an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4). The association-in-fact enterprise created by Defendants had the common purpose of carrying out separate but related fraudulent schemes—the Cornerstone Scheme and the FRMC Scheme—to defraud Experian by inducing it to pay settlements and incur substantial legal fees to defend sham lawsuits brought by Stein Saks and Zeig Law, though their respective agents, based on fake, false, and fraudulent credit denial letters.

417.   The participants in the association-in-fact enterprise remained constant throughout the execution of the schemes and had an ongoing framework for carrying out the schemes through the manufacturing and use of fake, false, and fraudulent credit denial letters and the filing of sham lawsuits based on those letters. As a result of the enterprise's criminal conduct, Experian was forced to incur substantial attorneys' fees and costs in defending and resolving the sham lawsuits. The enterprise was structured as follows to accomplish the goals of the criminal scheme:

a. The Stein Saks Defendants have been responsible for the oversight of the scheme to defraud and extort Experian, and have directed other members of the enterprise to take actions necessary to accomplish the overall aims of the criminal enterprise—namely, manufacturing the Fake Cornerstone Letters and the Fraudulent FRMC Letters, filing sham lawsuits in U.S. courts across the country, fraudulently misleading clients and the courts about the status of cases, fraudulently inducing and extorting Experian to settle sham lawsuits, laundering the illegally-obtained settlement proceeds to out-of-state lawyers and non-lawyers, defrauding clients of settlement proceeds, and abusing the judicial process.

b. Zeig and Zeig Law served as counsel in at least one of the sham FRMC lawsuits, and laundered the illegally-obtained settlement proceeds from the Stein Saks client trust account through the Zeig Law trust account to pay Zeig, Monk, and Argy for their participation in the Cornerstone Scheme.

c. Monk created or caused to be created fraudulent the Fake Cornerstone Letters that were used as evidence in the sham Cornerstone lawsuits in exchange for a portion of any settlement money obtained from the lawsuits. Monk also identified and recruited plaintiffs for sham lawsuits, and directed the sham plaintiffs to sign a "retainer agreement" with Stein

1               Saks, even though the sham plaintiffs had not consulted with or even

2               met any lawyer from Stein Saks before signing the "retainer agreement."

3               Monk also recruited Argy to create the Fake Cornerstone Letters.

4          d. Soffer created or caused to be created fraudulent the Fraudulent FRMC

5               Letters that were used as evidence in the sham FRMC lawsuits. Soffer

6               also identified and recruited plaintiffs for sham lawsuits, and he

7               attempted to obstruct justice by falsely completing portions of invalid

8               mortgage loan applications in response to a lawfully-issued subpoena.

9      418.   The acts committed by each Defendant are related because they are

10 based on the same methodology, which is to obtain fake, false, fraudulent credit

11 denial letters based on false facts where there was no evaluation of credit, application,

12 or denial, and these letters are used by attorneys from the same law firm, Stein Saks,

13 to support filings in court. These acts are also related because they are used to achieve

14 the same purpose to establish damages and standing in the sham lawsuits, and to

15 unlawfully extort money from the same victim, Experian.

16      419.   At all relevant times, Defendants conducted or participated, directly and

17 indirectly, in the conduct of the association-in-fact enterprise's affairs through a

18 pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) of the

19 RICO statute, in violation of 18 U.S.C. § 1962(c). The conduct of preparing and using

20 fake mortgage denial letters has been continuous from middle of 2022 to the present.

21      420.   At all relevant times, the association-in-fact enterprise alleged herein

22 was engaged in, and its activities affected, interstate and/or foreign commerce within

23 the meaning of 18 U.S.C. § 1962(c). As alleged herein, in or about January 2023,

24 Judah Stein sent an email from his office in New Jersey to Argy in Florida, a template

25 for Argy to use in manufacturing fake, false, and fraudulent credit denial letters to

26 support sham lawsuits that would be filed by the Stein Saks Defendants. The Stein

27 Saks Defendants then caused multiple sham lawsuits to be filed from its offices in

28 New Jersey through the electronic CM/ECF system in the Central District of

COMPLAINT
Case No. 8:24-cv-1186

California, the Southern District of New York, the Eastern District of New York, the District of New Jersey, and other federal district courts throughout the United States.

421.    As a result of the schemes to defraud, Defendants caused Experian to send settlement monies by U.S. Mail and interstate wire transfer from the Central District of California to Stein Saks's client trust account in New Jersey. As part of the schemes to defraud Experian, Stein Saks caused portions of amounts paid by Experian to settle sham lawsuits to be transferred from its client trust account in New Jersey to the client trust account of Zeig Law in Florida.

### *Pattern of Racketeering Activity*

422.    Under Section 1961(1) of the RICO statute "racketeering activity" is, among other things, any act indictable under any of the provisions of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1951 (extortion), 18 U.S.C. §§ 1503, 1512(c) (obstruction of justice), 18 U.S.C. § 1512(b) (witness tampering), 18 U.S.C. §1956 (money laundering), and 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity). Defendants each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

423.    The predicate acts committed by each Defendant as part of the association-in-fact enterprise's scheme to defraud Experian included all of the facts as alleged in paragraphs 29 through 407 herein.

424.    Defendants engaged in these predicate acts over a substantial period of time, from at least the middle of 2022 through January 24, 2024, and thereafter. Moreover, Defendants would have continued to engage in additional predicate acts in furtherance of the enterprise's schemes to defraud Experian but for the discovery of enterprise's filing of sham lawsuits based on fake, false, and fraudulent credit denial letters to extort settlements from Experian as alleged in paragraphs 29 through 407 herein.

425.    All of the predicate acts alleged herein were related so as to establish a

pattern of racketeering activity within the meaning of 18 U.S.C. §1962 in that the predicate acts were related to each other by virtue of common participants (members of the association-in-fact enterprise), a common victim (Experian), a common method of commission (the filing of sham lawsuits based on fake, false, and fraudulent credit denial letters), and the common purpose and common result of each of the predicate acts (to defraud Experian by inducing it to pay money to settle sham lawsuits based on fake, false, and fraudulent credit denial letters). Specifically, Defendants engaged in a collaborative fraudulent undertaking with the objective of maximizing the amount of settlement monies that Experian would pay to settle sham lawsuits based on fake credit denial letters and enriching Defendants while concealing the enterprise's fraudulent activities.

426.   The association-in-fact enterprise alleged herein perpetrated its collaborative undertaking by, among other things, recruiting consumers under the guise of providing credit repair services and using those consumers as plaintiffs in sham lawsuits filed against Experian without explaining how any settlement proceeds would be distributed and concealing the fact that settlement proceeds would be shared among Defendants who did not provide any legal services to the plaintiffs and with non-lawyers in violation of applicable ethical rules.

427.   The association-in-fact enterprise alleged herein perpetrated its collaborative undertaking, by, among other things, concealing the involvement of third party lawyers in the scheme to defraud by laundering settlement proceeds paid by Experian to Stein Saks in order to compensate non-lawyers for identifying consumers to serve as plaintiffs in sham lawsuits.

428.   In furtherance of the enterprise, the Stein Saks Defendants, Zeig, Zeig Law, Monk, and Argy agreed to split the proceeds of any settlements paid by Experian to resolve the sham Cornerstone lawsuits with third-party attorneys and non-attorneys without disclosing the payment arrangement to the consumer plaintiffs in the sham Cornerstone lawsuits brought against Experian.

COMPLAINT
Case No. 8:24-cv-1186

429.   As a direct and proximate result of, and by reason of, the conduct of Defendants as alleged herein, Experian has suffered millions of dollars in financial losses defending sham lawsuits brought by the Stein Saks Defendants in at least six federal district courts.

430.   Experian is therefore entitled to recover from Defendants individually, and jointly and severally, the damages it sustained, which are to be trebled under 18 U.S.C. § 1964(c), as well as the costs of this suit, including reasonable attorneys' fees and expert witness fees.

### *Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343)*

431.   The wire fraud statute prohibits the use of the interstate wires for the purpose of executing a scheme or artifice to defraud. *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001).

432.   The mail fraud statute prohibits the use of the mails for the purpose of executing a scheme or artifice to defraud. *Id.*

433.   A "scheme or artifice to defraud" is a plan to deprive a person of something of value by trick, deceit, chicanery, or overreaching.

434.   Any mailing that is incident to an essential part of the scheme satisfies the mailing element of mail fraud, even if the mailing itself does not contain any false information. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008); *see also Bondit, LLC v. Hallows Movie, Inc.*, 2020 WL 7777992, at *7 (C.D. Cal. Apr. 1, 2020) (same). The same rule applies to any use of the interstate wires. *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). The scheme need not be successful in order for liability to attach under the statute.

435.   Each mailing or use of the wires in furtherance of the scheme to defraud constitutes a separate violation and predicate act. *Garlick*, 240 F.3d at 792; *Gonzalez v. Hadid*, 2018 WL 11474122, at *7 (C.D. Cal. June 22, 2018) ("Each use of the wires constitutes a separate violation of the wire fraud statute.").

436.   Fraudulent intent is established by proof of intentional fraud or by

COMPLAINT
Case No. 8:24-cv-1186

demonstrating a "reckless indifference to the truth." *Irwin v. U.S.*, 338 F.2d 770, 774 (9th Cir. 1964). Intentional fraud is established by a conscious knowing intent to defraud and that the defendant contemplated or intended some harm to the property rights of the victim.

437.   No showing of reliance is necessary to establish a violation of 18 U.S.C. § 1962(c) through mail or wire fraud. *Phoenix Bond*, 553 U.S. at 649.

438.   By participating in the sham lawsuits based on false legal allegations and manufactured evidence, with the specific intent to defraud, all Defendants have participated in, or conspired in furtherance of, schemes to defraud Experian out of money through settlements.

439.   Defendants used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

440.   Defendants used or caused to be used, interstate wire communications to carry out or attempt to carry out an essential part of the scheme.

### *Extortion (18 U.S.C. § 1951)*

441.   Extortion occurs through the obtaining of property from another, with consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. The predicate act of extortion includes attempts at extortion and conspiracy to extort, even if unsuccessful. *See* 18 U.S.C. 1951(a).

442.   Extortion may occur through fear of only economic loss. *See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 838 (9th Cir. 2014).

443.   Defendants' purpose in bringing sham lawsuits based on intentionally false allegations and fabricated evidence was to pressure Experian by (a) concealing Experian's defense of lack of standing, and (b) increasing both the perceived magnitude of Experian's potential exposure and the perceived likelihood that the exposure would result in substantial legal fees in defense and ultimately in liability.

444.   As described herein, Defendants advanced the sham lawsuits through

manifestly wrong means, to wit, sham litigation, misrepresentations, omission of material information, manufactured evidence, and intentionally false allegations. These tactics did, in fact, increase the perceived threat of harm to Experian by increasing the perceived dollar exposure, increasing the perceived probability of an unfavorable judgment or verdict, by increasing the perceived probability of protracted and costly litigation. These tactics also induced Experian to pay settlements based on wholly illegitimate grounds.

445.   Defendants made representations they knew to be materially false in order to induce settlements and obtain settlement proceeds from Experian:

    a.   As alleged herein, they falsely represented that the plaintiffs in the sham lawsuits were legitimate consumer plaintiffs who had legitimate legal claims;

    b.   As alleged herein, they falsely represented that the plaintiffs in the sham lawsuits were legitimate consumer plaintiff who suffered damages in the form of credit denials;

    c.   As alleged herein, they falsely represented that the Fake Cornerstone Letters and Fraudulent FRMC Letters were genuine letters prepared and sent by the entity listed on the letterhead;

    d.   As alleged herein, they falsely represented that the credit denial letters were evidence of the plaintiffs' credit denials;

446.   Defendants repeatedly used threats of potential liability that they knew were false. These threats were "wrongful" under § 1951 because Defendants were not legally entitled to the property sought and could not have had a good faith belief in that entitlement (which was based on the fabricated legal allegations).

447.   As described herein, Defendants are therefore liable for extortion as follows in each case brought or threatened under wrongful threat of fear.

### ***Obstruction of Justice (18 U.S.C. §§ 1503, 1512(c))***

448.   Obstruction of justice occurs when one "corruptly or by threats of force,

or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice." *See* 18 U.S.C. § 1503; *see also* 18 U.S.C. § 1512(c) (relating to obstruction by one who corruptly alters or conceals evidence in any official proceeding or "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so).

449.   Obstruction is a predicate act under RICO in cases where, as here, Defendants' efforts were "designed to prevent detection and prosecution of the organization's illegal activities [and] were part of a consistent pattern that was likely to continue for the indefinite future, absent outside intervention." *United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991).

450.   As described herein, the Stein Saks Defendants corruptly manufactured evidence in the sham lawsuits in the form of, for example, fake credit denial letters, fraudulent credit denial letters, and falsified interrogatory responses.

451.   The Stein Saks Defendants filed and prosecuted frivolous and contrived legal claims in federal courts throughout the country with the wrongful or corrupt intent, or improper purpose of abusing the judicial process and the courts in an effort to instill fear of liability in Experian to extort and obtain settlement proceeds.

452.   Obstruction of justice also includes "[f]raudulently cancelling depositions to prevent the deponent from testifying." *Corp. v. Newport Trial Grp.*, 2016 WL 11520711, at *10 (C.D. Cal. Aug. 1, 2016).

453.   As described herein, the Stein Saks Defendants obstructed, influenced, and impeded official proceedings, and attempted to do so, by, among other things, falsely informing courts that Sofer and Mizrahi "no longer wish[ ] to pursue [their] claims against" Experian, moving to dismiss the sham lawsuits to avoid discovery of the scheme, falsely telling Cahan and Franz that the *Mizrahi* lawsuit was going to be dismissed, and instructing Franz to not respond to third-party discovery requests.

454.   As alleged herein, Saland obstructed, influenced, and impeded an official proceeding and attempted to do so, by, among other things, cancelling

Mizrahi's noticed deposition to avoid discovery of the scheme to defraud by preventing Mizrahi from giving his testimony.

455. Whether or not Defendants were successful in influencing those proceedings is irrelevant under the statute. Only the attempt to influence is sufficient for liability. Defendants' conduct has had the actual, natural, and probable effect of interfering with the due administration of justice. *See United States v. Aguilar*, 515 U.S. 593, 600 (1995).

### ***Witness Tampering (18 U.S.C. § 1512(b))***

456. Witness tampering under Section 1512(b) includes the "corrupt persuasion" of a witness. *See United States v. Khatami*, 280 F.3d 907, 911 (9th Cir. 2002) (holding that witness tampering occurred where conviction arose solely out of non-coercive conduct directed toward witness based on theory that defendant had corruptly persuaded those witnesses to mislead investigators with false information). Attempts to persuade a witness to "give false testimony and bribing a witness to withhold information are both forms of non-coercive conduct that fall within the reach of the statute. . ." *Id.* at 913-14 (holding that "non-coercive attempts to persuade witness to lie . . . violated 18 U.S.C. § 1512(b)").

457. Witness tampering includes when one knowingly "corruptly persuades . . . or . . . engages in misleading conduct toward another person with intent to . . . prevent the testimony of any person in an official proceeding" (18 U.S.C. § 1512(b)(1)) or to "cause or induce any person to be absent from an official proceeding to which such person has been summoned by legal process (18 U.S.C. § 1512(b)(2)(D)).

458. One corruptly persuades under the statute when they have a "consciousness of wrongdoing." *United States v. Lonich*, 23 F.4th 881 (9th Cir. 2022).

459. Witness tampering also involves attempting to "hinder, delay, or prevent the communication to a . . . judge of the United States information relating to the

COMPLAINT
Case No. 8:24-cv-1186

commission or possible commission of a Federal offense." *See* 18 U.S.C. 1512(b)(3).

460.   An official proceeding is a "proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, or a Federal Grand Jury." *Vierria v. California Highway Patrol*, 2011 WL 2971170, at *4 (E.D. Cal. July 20, 2011).

461.   As described herein, Defendants engaged in witness tampering by causing and attempting to cause witnesses to withhold material information from Experian and the courts, in order to prevent discovery of their scheme to defraud Experian by among other things, corruptly persuading and engaging in misleading conduct toward Cahan by falsely informing him that the *Mizrahi* lawsuit was dismissed—when it was not—with the specific intent to prevent Cahan from testifying about the sham Mizrahi denial letter, and corruptly persuading and engaging in misleading conduct toward Franz by instructing her to contact Argy and Judah Stein before responding to legitimate discovery requests with the specific intent to prevent Franz from testifying and producing documents regarding the sham Mizrahi denial letter.

### ***Money Laundering (18 U.S.C. §§ 1956, 1957)***

462.   Money laundering, pursuant to 18 U.S.C. §§ 1956, 1957 occurs when an individual engages in a financial transaction which involved proceeds from specified illegal activity, knew that the proceeds were from illegal activity, and intended the transaction to either promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds." *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir. 1996).

463.   As described herein, Defendants' mailings and use of wires in furtherance of the enterprise's scheme to defraud Experian constituted mail and wire fraud.

464.   The Stein Saks Defendants procured under false pretenses settlement proceeds from Experian and knew that the proceeds were obtained from illegal

activity because the proceeds came from cases in which they knew the credit denial letters were fake, false, and fraudulent and that were was no other evidence that the various plaintiff had been denied credit as a result of any inaccuracies in their Experian credit reports.

465.   The Stein Saks Defendants, the Zeig Law, Zeig, and Monk knew the settlement proceeds were from illegal activity.

466.   The deposit of settlement proceeds into the Stein Saks client trust account, the transfer of funds from Stein Saks' client trust account to Zeig Law's client trust account, the transfer of funds from Zeig Law's client trust account to Collective Credit International, and the transfer of funds from Argy to Monk via Zelle all constitute monetary transactions in and affecting interstate commerce and by and through a financial institution of $10,000 or more. Each such transaction was intended to conceal the nature, source, and ownership of the illegal proceeds by attempting to disguise the true nature of the payments and conceal the scheme to defraud Experian.

### ***Specific Predicate Acts for Each Defendant***

467.   At all relevant times, Judah Stein, Yaakov Saks, Saland, and Babad acted as authorized agents, employees, attorneys or principals of Stein Saks. Their conduct was performed for the benefit of Stein Saks and caused Stein Saks to profit by unlawful means. Any predicate act identified herein that was performed by, or at the direction of, an agent, employee, attorney, or principal of Stein Saks was also performed by or at the direction of Stein Saks. *See Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1155 (9th Cir. 1992) ("an employer that is benefited by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of *respondeat superior* and agency when the employer is distinct from the enterprise.").

468.   Each Defendant is liable for the predicate acts committed by and through their pursuit of frivolous claims and sham lawsuits against Experian.

469. The following defendants are liable for the below predicate acts committed by and through their pursuit of fabricated and fraudulent claims against Experian, as alleged in paragraphs 29 through 407 herein:

    a. Wire Fraud (and Obstruction of Justice) by directing clients to apply for credit with the intention of creating a rejection (Judah Stein and Monk);

    b. Wire Fraud (and Obstruction of Justice) by directing the creation of fake, false, and fraudulent credit denial letters (Judah Stein);

    c. Obstruction of Justice by manufacturing and fabricating, and causing the manufacture and fabrication of, the Fake Cornerstone Letters (Judah Stein and Monk);

    d. Obstruction of Justice by manufacturing and fabricating, and causing the manufacture and fabrication of, the Fraudulent FRMC Letters (Judah Stein and Soffer);

    e. Wire Fraud by using email to send the Fake Cornerstone Letters and Fraudulent FRMC Letters (Judah Stein and Soffer).

    f. Wire Fraud (and Obstruction of Justice and Extortion) through the electronic filing of the following sham lawsuits:

        i. Mizrahi, Sofer, Hano, Gang, Kahen, Amiram, Herskowitz, Mendlowitz, Small, Greenblatt (Stein Saks and Saland);

        ii. Zabludovsky, Kanelsky, Adjmi, Vargas, Zokari, Malachi (Stein Saks and Babad);

        iii. King, Glick, Woods Johnson, and Silber (Stein Saks and Yaakov Saks); and

        iv. Dorray (Zeig Law and Zeig);

    g. Wire Fraud (and Obstruction of Justice) through the email service of the Fake Cornerstone Letters and false discovery responses in each of the following sham lawsuits:

        i. Mizrahi, Sofer, Hano, Gang, and Kahen (Stein Saks and

Saland);

    ii.    Zabludovsky and Kanelsky (Stein Saks and Babad);

    iii.   Glick (Stein Saks and Yaakov Saks); and

h.  Wire Fraud (and Extortion and Obstruction of Justice) through the email service of the settlement demands in each of the sham lawsuits:

    i.    Hano, Gang, Kahen, and Amiram (Stein Saks and Saland);

    ii.    Zabludovsky, Kanelsky, and Adjmi (Stein Saks and Babad);

    iii.   Glick (Stein Saks and Yaakov Saks); and

i.  Wire Fraud (and Extortion and Obstruction of Justice) through the email delivery of the executed settlement agreements in each of the following sham lawsuits:

    i.    Hano and Gang (Stein Saks and Saland);

    ii.    Zabludovsky and Kanelsky (Stein Saks and Babad);

    iii.   King and Glick (Stein Saks and Yaakov Saks); and

j.  Mail Fraud by inducing Experian to mail the settlement payment checks in each of the sham lawsuits:

    i.    Hano and Gang (Stein Saks and Saland);

    ii.    Zabludovsky, Kanelsky, and Adjmi (Stein Saks and Babad);

    iii.   King and Glick (Stein Saks and Yaakov Saks);

k.  Mail Fraud by use the mail to send portions of ill-gotten settlement proceeds (Zeig and Zeig Law);

l.  Wire Fraud (and Money Laundering) by causing the deposit of the settlement payment checks from the sham lawsuits into the Stein Saks client trust account:

    i.    Hano and Gang, (Stein Saks and Saland);

    ii.    Zabludovsky, Vargas, and Zokari (Stein Saks and Babad);

    iii.   King and Glick (Stein Saks and Yaakov Saks);

m. Wire Fraud (and Money Laundering) by the electronic transfer through

1    interstate wires of a portion of the settlement payments in the sham

2    lawsuits from the Stein Saks client trust account to the Zeig Law client

3    trust account (Stein Saks, Judah Stein, Zeig Law, and Zeig);

4    n.  Wire Fraud (and Money Laundering) by the electronic transfer through

5    interstate wires of a portion of the settlement payments in the sham

6    lawsuits from the Zeig Law client trust account to CCI (Zeig Law and

7    Zeig);

8    o.  Wire Fraud (and Money Laundering) by the electronic transfer through

9    interstate wires of a portion of the settlement payments in the sham

10    lawsuits via Zelle to Monk's bank account (Monk);

11    p.  Witness Tampering (and Obstruction of Justice) by falsely and corruptly

12    inducing Franz not to appear for her lawfully scheduled deposition

13    (Stein Saks and Judah Stein);

14    q.  Witness Tampering (and Obstruction of Justice) by falsely and corruptly

15    inducing Cornerstone and Cahan not to appear for its lawfully scheduled

16    deposition (Stein Saks and Judah Stein);

17    r.  Obstruction of Justice by filing of motions to dismiss the Sofer and

18    Mizrahi lawsuits to avoid discovery of the enterprise and fraudulent

19    schemes (Stein Saks, Judah Stein, and Saland).

20    **<u>SECOND CLAIM FOR RELIEF</u>**

21    **Violation of 18 U.S.C. § 1962(d)**

22    **Conspiracy**
**(Against All Defendants)**

23    470.  Experian realleges and incorporates herein by reference each and every

24  forgoing paragraph as if set forth in full.

25    471.  18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to

26  violate any of the provisions of subsection (a), (b) or (c) of this section."

27    472.  As alleged herein, at all relevant times each Defendant was  a "person"

28  within the meaning of 18 U.S.C. § 1961(3).

473.   At all relevant times, Defendants together formed an association-in-fact enterprise for the purpose of defrauding Experian. The association-in-fact enterprise was an "enterprise" within the meaning of 18 U.S.C. § 1961(4)(c).

474.   At all relevant times, the association-in-fact enterprise was engaged in, and its activities, affected, interstate and foreign commerce, within the meaning of 18 U.S.C. § 1962(c).

475.   As set forth in Count One, Defendants and the other conspirators conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

476.   Defendants and their co-conspirators have unlawfully, knowingly, and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

477.   Defendants and each of the other conspirators committed and caused to be committed a series of overt acts in furtherance of the RICO Conspiracy and to affect the objects thereof, including but not limited to the acts alleged above in the First Cause of Action.

478.   As part of the conspiracy, each Defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the association-in-fact enterprise alleged herein.

479.   As alleged herein, the predicate acts engaged in by Defendants and the other conspirators satisfied the elements of the criminal offense of mail fraud, wire fraud, extortion, obstruction of justice, witness tampering, money laundering, and money structuring that taken together constitute a violation of 18 U.S.C. § 1962(c).

480.   As a direct and proximate result of the actions of Defendants and the other conspirators, including but not limited to the overt actions taken in furtherance of the conspiracy, in violation of 18 U.S.C. § 1962(c), Experian has been injured in their business and property as alleged herein and have sustained millions of dollars

in financial losses litigating the sham lawsuits.

481.   As a result of the conspiracy, Defendants are liable to Experian for the losses it has incurred in an amount to be determined at trial.

482.   Pursuant to 18 U.S.C. § 1964(c), Experian is entitled to recover treble damages plus its costs and attorneys' fees and expert fees from Defendants.

### THIRD CLAIM FOR RELIEF

**FRAUD**
**(Against All Defendants)**

483.   Experian realleges and incorporates herein by reference each and every forgoing paragraph as if set forth in full.

484.   Defendants have knowingly misrepresented, omitted, and/or concealed material facts in their pleadings and representations before U.S. courts, in their communications with Experian, and in their settlement agreements between their clients and Experian. Each and every Defendant has personally engaged in this conduct, or knew or should have known that other Defendants were engaged in it on his or her behalf. These false representations and omissions are detailed throughout this Complaint and include the Fake Cornerstone Letters and Fraudulent FRMC Letters, the false allegations included in lawsuits about mortgage and credit denials, and the false representations about discovery and cases statuses.

485.   Defendants made these false representations while knowing their misrepresentations were materially false and/or that their omissions were material.

486.   Defendants further made these representations and/or omissions with the intent of obtaining falsely inflated settlements from Experian for baseless FCRA claims, preventing Experian from discovering the fraud, and propagating false information about Experian to consumers, the U.S. courts, and the public.

487.   These material misrepresentations and/or omissions have been reasonably and justifiably relied upon by Experian, the U.S. courts, the consumer clients.

488.   As a direct, proximate, and foreseeable result of Defendants' fraud, Experian has been harmed, including significant pecuniary, reputational, and other damages. These injuries include significant damage to Experian's reputation and goodwill, expending hundreds of thousands of dollars to settle frivolous lawsuits, and incurring substantial operational costs and attorneys' fees have to defend against objectively baseless, improperly motivated sham litigation propped up by fabricated evidence.

489.   Defendants have engaged in malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Experian is entitled to, and should be awarded, compensatory and punitive damages against each Defendant.

### FOURTH CLAIM FOR RELIEF

**Unjust Enrichment**
**(Against All Defendants)**

490.   Experian realleges and incorporates herein by reference each and every forgoing paragraph as if set forth in full.

491.   Defendants have obtained hundreds of thousands of dollars from Experian in settlement funds in carrying out the RICO conspiracy and engaging in unfair business practices.

492.   All money Defendants have obtained or could obtain in the future from Experian will be acquired through Defendants' tortious, illegal, fraudulent, and conspiratorial conduct as set forth herein.

493.   By their tortious, illegal, fraudulent, and conspiratorial conduct, Defendants were unjustly enriched at the expense of Experian, and it would be unjust to all Defendants to retain these benefits.

494.   Experian seeks restitution from Defendants and seeks an order disgorging all profits, benefits, and other compensation obtained by Defendants from the tortious, illegal, fraudulent, and conspiratorial conduct in an amount to be proven

1    at trial.

2

### FIFTH CLAIM FOR RELIEF

3

### ABUSE OF PROCESS
**(Against All Defendants)**

4

5    495.   Experian realleges and incorporates herein by reference each and every

6 forgoing paragraph as if set forth in full.

7    496.   California recognizes the tort of abuse of process where, as here,

8 Defendants (1) contemplated an ulterior motive in using the process, and (2)

9 committed a willful act in the use of the process not proper in the regular conduct of

10 the proceedings.

11    497.   As set forth above, Defendants formed an association-in-fact enterprise

12 for the purpose of defrauding Experian through the fabrication of evidence for use in

13 sham lawsuits to facilitate settlement at fraudulently inflated values.

14    498.   To effectuate the scheme, Defendants conspired to manufacture fake

15 credit denial letters to fabricate claims of injury and actual damages based on alleged

16 FCRA violations. Stein Saks flooded federal courts throughout the nation with sham

17 lawsuits based on the fake letters. Defendants advanced the sham lawsuits through

18 manifestly wrong means, to wit, sham litigation, misrepresentations, omission of

19 material information, manufactured evidence, and intentionally false allegations.

20    499.   Defendants also engaged in witness tampering by causing and

21 attempting to cause witnesses to withhold material information from Experian and

22 the courts, in order to prevent discovery of their scheme to defraud Experian.

23 Defendants' wrongful actions include, among other things, corruptly persuading and

24 engaging in misleading conduct toward Cahan by wrongfully informing him that the

25 Mizrahi litigation was dismissed—when it was not—with the specific intent to

26 prevent Cahan from testifying about the sham Mizrahi denial letter, and corruptly

27 persuading and engaging in misleading conduct toward Franz by instructing her to

28 contact Stein Saks and Judah Stein before responding to legitimate discovery requests

COMPLAINT
Case No. 8:24-cv-1186

1   with the specific intent to prevent Franz from testifying and producing documents

2   regarding the sham Mizrahi denial letter

3       500.   As a direct and proximate result of Defendants' conduct, Experian has

4   been injured in their business and property as alleged herein and have sustained

5   millions of dollars in financial losses litigating the sham lawsuits.

6

7                           **SIXTH CLAIM FOR RELIEF**

8   **California Business and Professions Code §§ 17200, *et seq.***
    **California State Unfair Competition**
9   **(Against All Defendants)**

10      501.   Experian realleges and incorporates herein by reference each and every

11   forgoing paragraph as if set forth in full.

12      502.   Defendants are liable for violations of the California unfair competition

13   laws.

14      503.   Experian brings this Count pursuant to the Unfair Competition Law at

15   Business & Professional Code §§ 17200, *et seq.* Defendants' conduct described

16   herein constitutes unfair, unlawful and/or fraudulent business practices within the

17   meaning of Business & Professional Code § 17200.

18      504.   A violation of 18 U.S.C. § 1962(c) or 18 U.S.C. § 1962(d) constitutes

19   an unlawful, unfair or, under the circumstances alleged, fraudulent business practices

20   and, as such, constitutes a predicate offense under the UCL.

21      505.   Experian is subject to a real and immediate threat of continuing or

22   additional injury from Defendants and their enterprise. As described herein, there are

23   at least two spokes to this enterprise resulting in nationwide lawsuits against Experian

24   seeking to extract settlement fees through the filing of sham lawsuits based on false

25   legal allegations and manufactured evidence.

26      506.   Defendants' attacks on Experian are not isolated—Stein Saks often

27   names other CRAs as defendants in these suits, too. The threat of harm is present and

28   palpable. Injunctive relief is necessary to prevent continuing or future harm to

COMPLAINT
Case No. 8:24-cv-1186

Experian and the public generally.

507.   Pursuant to Business & Professions Code § 17204, Experian seeks an order of this Court enjoining Defendants from continuing to engage in the acts as set forth in Counts One and Two, which acts constitute violations of Business & Professions Code § 17200, *et seq.*

508.   Defendants' conduct has injured the credit reporting system and as whole through the management and operation of the enterprise to defraud Experian. Defendants' actions have adversely impacted consumer confidence in the credit reporting system and unnecessarily driven up the cost of credit reporting agencies, like Experian, to operate and furnish consumer reports. This is not only harmful to Experian, it is also damaging to the credit reporting ecosystem, stifling competition.

509.   Defendants' conduct has injured the legal profession as whole through the management and operation of the enterprise to defraud Experian. Defendants' conduct has abused the judicial process and jeopardized the trust of the public in the integrity of lawyers to act in the best interest of their clients. Rather than acting for their clients, Defendants acted for the own benefit, at the expense of their clients, the judiciary, Experian, and the public.

510.   Defendants' conduct presents a matter of substantial public concern and interest necessitating injunctive relief that will limit the potential for fraudulent lawsuits based on sham mortgage denial letters.

511.   As a result of Defendants' unfair, unlawful and fraudulent acts and practices, Experian has been injured in their business and property as alleged herein and have sustained millions of dollars in financial losses to litigate the sham lawsuits.

512.   Experian is entitled to injunctive relief and restitution for Defendants' unlawful, unfair, and fraudulent business practices.

## DEMAND FOR JURY TRIAL

513.   Experian demands a jury trial on all issues triable of right by jury.

COMPLAINT
Case No. 8:24-cv-1186

**PRAYER FOR RELIEF**

WHEREFORE, Experian prays that this Court enter judgment in its favor and against: Stein Saks; Judah Stein; Yaakov Saks; Saland; Babad; Zeig Law; Zeig; Soffer; and Monk, awarding the following relief:

514. An award of money damages in an amount to be determined by the trier of fact and estimated to be substantially in excess of the minimum jurisdictional amount of this Court, which damages are to be trebled threefold pursuant to 18 U.S.C. § 1964(c);

515. An award of compensatory damages in an amount equal to Experian's expenditures in the underlying sham lawsuits, including attorney's fees and costs expended defending against the sham FCRA lawsuits discussed herein;

516. An award of exemplary and punitive damages under Cal. Civ. Code § 3294 and other applicable laws and statues for Defendants' fraudulent conduct undertaken with intent to injure Experian, or with a willful and conscious disregard of Experian's rights. This is an exceptional case that involves the intentional filing of sham lawsuits supported by fraudulently manufactured evidence by lawyers—who are entrusted most to uphold and follow the law. An award of punitive damages sufficient to deter and prevent future conduct is appropriate in this case;

517. A permanent injunction or injunctive relief as the court shall deem fit and just, including, but not limited to, an injunction imposing prophylactic pre-filing requirements on the Stein Saks Defendants, Zeig Law, and Zeig as described hereinabove;

518. An Order requiring the Stein Saks Defendants, Zeig Law, and Zeig to file with this Court a compliance plan under oath describing the method and manner in which Stein Saks Defendants, Zeig Law, and Zeig intend to comply with the injunction(s), including a description of any new operating procedure and policies, to be filed within 30 days after service of an injunction;

519. An award of costs and reasonable attorney fees and expenses incurred

1    by Experian in connection with this action;

2       520.    An accounting of all Defendants' profits, revenues, accounts, and

3    proceeds received or obtained, directly or indirectly, or arising out of Defendants'

4    history of RICO violations, and all other allegations presented herein above,

5    including a full accounting of all gross revenues derived from Defendants' fraudulent

6    scheme;

7       521.    General damages for loss of goodwill or harm to Experian's reputation

8    stemming from the publication and dissemination of fraudulent allegations against

9    Experian during and relating to the filing of the sham lawsuits;

10      522.    Restitution;

11      523.    Pre-judgment and post-judgment interest on the above damage awards;

12      524.    An order adjudging all Defendants jointly and severally liable, as the

13    law allows, under each cause of action asserted by Experian and for all damages

14    awarded against any Defendants; and

15      525.    Such other relief as this Court may deem just.

1   Dated:  June 3, 2024                              JONES DAY

2

3                                                     By:  */s/ Richard J. Grabowski*

4

5                                                     Richard J. Grabowski (SBN 125666)
                                                      rgrabowski@jonesday.com
6                                                     John A. Vogt (SBN 198677)
                                                      javogt@jonesday.com
7                                                     Cheryl L. O'Connor (SBN 173897)
                                                      coconnor@jonesday.com
8                                                     Ryan D. Ball (SBN 321772)
                                                      rball@jonesday.com
9                                                     JONES DAY
                                                      3161 Michelson Drive, Suite 800
10                                                    Irvine, California 92612.4408
                                                      Telephone:  +1.949.851.3939
11                                                    Facsimile:   +1.949.553.7539

12                                                    Kerianne Tobitsch (*pro hac vice*
                                                      application forthcoming)
13                                                    ktobitsch@jonesday.com
                                                      JONES DAY
14                                                    250 Vesey Street
                                                      New York, New York  10281.1047
15                                                    Telephone:  +1.212.326.3939
                                                      Facsimile:   +1.212.755.7306

16                                                    Attorneys for Experian Information
                                                      Solutions, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
Case No. 8:24-cv-1186