UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

 Melissa H. Kunig                                         N/A
Deputy Clerk                                        Court Reporter

Attorneys Present for Plaintiff:                    Attorneys Present for Defendant:

Not Present                                        Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE [44] [46]; GRANTING IN PART AND DENYING AS MOOT IN PART MOTIONS TO DISMISS [39] [45] [49]; AND DENYING AS MOOT MOTION TO STAY [82]**

Plaintiff Experian Information Solutions, Inc. ("Experian") brings this case against Defendant Stein Saks, PLLC ("Stein Saks"); Defendant Judah Stein ("Stein"); Defendant Yaakov Saks ("Saks"); Defendant Tamir Saland ("Saland"); Defendant Eliy Abu Babad ("Babad") (Stein Saks, Stein, Saks, Saland, and Babad together, the "Stein Saks Defendants"); Defendant Zeig Law Firm, LLC (the "Zeig Firm"); Defendant Justin Zeig ("Zeig") (the Zeig Firm and Zeig together, "the Zeig Defendants"); Defendant Chesky Monk ("Monk")[1]; and Defendant Daniel. J. Soffer ("Soffer") (all Defendants collectively, "Defendants," and all Defendants except Monk, "Responding Defendants"), alleging that Defendants "have operated a nationwide [Racketeer Influenced and Corrupt Organizations Act, 'RICO'] enterprise" with the "ultimate aim [] to extort Experian to settle sham lawsuits under the Fair Credit Reporting Act ('FCRA') at fraudulent values." (Dkt. 1 ("Complaint" or "Compl.") ¶ 1.) Before the court are several motions:

1. Soffer's Motion to Dismiss (Dkt. 39 ("Soffer Motion to Dismiss" or "Soffer MTD"));

---

[1] Monk's response to the Complaint is not due until December 6, 2024. (Dkt. 87.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

2. The Zeig Defendants' Motion to Strike (Dkt. 44 ("Zeig Motion to Strike" or "Zeig MTS"));
3. The Stein Saks Defendants' Motion to Dismiss, (Dkt. 45 ("Stein Saks Motion to Dismiss" or "Stein Saks MTD")), which the Zeig Defendants move to join (Dkt. 49);
4. The Stein Saks Defendants' Motion to Strike (Dkt. 46 ("Stein Saks Motion to Strike" or "Stein Saks MTS")); and
5. The Stein Saks Defendants' Motion to Stay Case Pending Resolution of Pleadings Challenges and Motion to Transfer Venue (Dkt. 82 ("Motion to Stay" or "MTS")).

All of these motions are fully briefed.  (*See* Dkts. 57-61, 65-71, 85.)  The court held a hearing on the motions on November 14, 2024.  (Dkt. 88.)  Based on the state of the record, as applied to the applicable law, the court **GRANTS IN PART AND DENIES IN PART** the Stein Saks Motion to Strike and the Zeig Motion to Strike, **GRANTS IN PART AND DENIES AS MOOT IN PART** the Stein Saks Motion to Dismiss and the Soffer Motion to Dismiss, and **DENIES AS MOOT** the Motion to Stay.

## I.    Background

Experian's 118-page, 525-paragraph Complaint alleges a sprawling RICO conspiracy. (*See generally* Compl.)  The basic allegations are these.  Stein Saks—a New York law firm with offices in New York and New Jersey, and where Stein, Saks, Saland, and Babad work— is "one of the most prolific filers of FCRA lawsuits in the country."  (*Id.* ¶¶ 1, 9, 29.)  In 2021, the Supreme Court of the United States issued a "decision in *Transunion LLC v. Ramirez*, 594 U.S. 413 (2021), which held that the mere risk of future harm does not establish Article III standing" in FCRA cases.  (*Id.* ¶ 32.)  "In response to *Ramirez*, Stein Saks changed its business model by implementing a scheme to manufacture evidence of credit denials to demonstrate standing and actual damages in FCRA lawsuits against Experian."  (*Id.* ¶ 34.)  The scheme involved "manufacturing fake, false, and fraudulent denial letters from Cornerstone" and Funding Resources Mortgage Corporation ("FRMC") in order to generate standing, "filing sham lawsuits in U.S. courts across the country," "fraudulently inducing and extorting Experian to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

settle sham lawsuits, laundering the illegally-obtained settlement proceeds to out-of-state
lawyers and non-lawyers, defrauding clients of settlement proceeds, and abusing the judicial
process." (*Id.* ¶¶ 37-38, 417.a.)

Specifically, Stein Saks attorneys drafted a template credit denial—even when the person
referenced in the letter had not actually applied for or been denied credit—reading, for example:

> RE: Refinance
>
> Dear __,
>
> I am a licensed mortgage banker. After receiving your loan
> application, I ran your credit. As discussed, at this time, due to the late
> mortgage payment with NR/SMS/CAL, your credit scores has been
> affected and you would be paying a higher interest rate. Based on
> your current scores, it would not make sense for you to refinance.

(*Id.* ¶¶ 56, 284; *see also id.* ¶¶ 269-70 (Stein providing Soffer draft language for a credit denial
letter and Soffer using that language on FRMC letterhead).)  Then, Stein Saks attorneys directed
non-lawyers including Monk, Soffer, and nonparty Yenon Argy ("Argy") to issue the template
letters on the letterhead of either Cornerstone or FRMC regarding individuals Stein Saks
intended to represent.  (*Id.* ¶¶ 17-18, 20, 417.)  Stein Saks then used the fake denial letters to
support standing allegations in sham lawsuits against Experian in various federal courts,
including in the Central District of California, Eastern District of New York, Southern District
of New York, District of New Jersey, Eastern District of Pennsylvania, and Middle District of
Florida.  (*Id.* ¶ 62.)  Stein Saks also "used the fake credit denials to extort a settlement from
Experian," causing Experian to settle cases it would not otherwise have agreed to settle.  (*Id.*
¶¶ 66, 128-40, 289-292.)  The Zeig Defendants helped launder money from the scheme and also
filed one of the sham lawsuits in the Middle District of Florida.  (*Id.* ¶¶ 3, 66, 372, 417.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

In this case, Experian asserts six claims.  The first two claims are RICO claims: one under 18 U.S.C. § 1962(c) (making it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt"), and one under 18 U.S.C. § 1962(d) (making it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section").  (*Id.* ¶¶ 413-482.)  The other four claims are California state law claims for fraud, unjust enrichment, abuse of process, and violation of California's Unfair Competition Law ("UCL").  (*Id.* ¶¶ 483-512.)

## II.    Motions to Strike [44, 46]

The court first analyzes the Zeig Motion to Strike and the Stein Saks Motion to Strike, both of which are brought under California's anti-Strategic Lawsuit Against Public Participation ("SLAPP") statute.  (*See generally* Zeig MTS; Stein Saks MTS.)  California's anti-SLAPP statute provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Code § 425.16(b)(1).

"Litigation of an anti-SLAPP motion involves a two-step process."  *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1009 (2021).  "First, the moving defendant bears the burden of establishing that the challenged allegations or claims 'arise from' protected activity in which the defendant has engaged."  *Id.* (cleaned up).  The defendant meets this burden by demonstrating that the act underlying the plaintiff's cause of action fits one of the categories spelled out in section 425.16(e), which includes written or oral statements or writings made before a judicial proceeding or in connection with an issue under consideration or review by a judicial body. Civ. Code § 425.16(e)(1)–(2).  If the defendant makes that showing, courts proceed to the second step, under which "the plaintiff must show the claim has 'at least minimal merit.'"

CIVIL MINUTES – GENERAL                                        4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

*Bonni*, 11 Cal. 5th at 1009.  "If the plaintiff cannot make this showing, the court will strike the claim."  *Id.*

### A. Protected Activity

In the first step of the anti-SLAPP process, when "determining whether the plaintiff's claims arise from protected activity," "courts are to consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability."  *Bonni*, 11 Cal. 5th 995, 1009 (2021) (internal citation omitted).  "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity."  *Id.*  If a claim alleges both protected and unprotected activity, courts "determine whether particular acts alleged within the cause of action supply the elements of a claim or instead are incidental background . . . or merely provide context."  *Id.* at 1067-68 (internal citations omitted).

In this case, in summary, Experian's state law claims[2] allege that the Stein Saks Defendants and the Zeig Defendants "manufactur[ed] and use[ ] fake, false, and fraudulent credit denial letters" in order to generate standing to file FCRA lawsuits, filed "sham lawsuits based on those letters," "fraudulently induc[ed] and extort[ed] Experian to settle sham lawsuits," "launder[ed] the illegally-obtained settlement proceeds to out-of-state lawyers and non-lawyers, defraud[ed] clients of settlement proceeds, and abus[ed] the judicial process." (Compl. ¶ 417.)  The court finds that Experian's state law claims based on these allegations "arise from" protected activity, namely the protected activity of "written or oral statement[s] or

_____

[2] The Zeig Defendants move to strike not only Experian's state law claims but also Experian's RICO claims.  (*See generally* Zeig MTS.)  "Although the anti-SLAPP statute does apply to state law claims brought in federal court, it does not apply to federal question claims in federal court because such application would frustrate substantive federal rights."  *Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006).  The Zeig Motion to Strike is therefore **DENIED** insofar as it challenges Experian's RICO claims.  *See id.* ("Consequently, the Court finds that the anti-SLAPP statute is inapplicable to Bulletin's RICO . . . claims.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                           Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

writing[s] made before a . . . judicial proceeding" or "made in connection with an issue under
consideration or review by a . . . ." Cal. Civ. Proc. Code § 425.16(e)(1)-(2); *Rusheen v. Cohen*,
37 Cal. 4th 1048, 1056 (2006) (explaining that protected activity "includes communicative
conduct such as the filing, funding, and prosecution of a civil action," including "qualifying acts
committed by attorneys in representing clients in litigation"); *Cabral v. Martins*, 177 Cal. App.
4th 471, 479-80 (2009) ("Under the plain language of section 425.16, subdivisions (e)(1) and
(e)(2), as well as the case law interpreting those provisions, all communicative acts performed
by attorneys as part of their representation of a client in a judicial proceeding or other
petitioning context are per se protected as petitioning activity by the anti-SLAPP statute.");
*Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1368 (2009) (stating that abuse of
process claims "by definition" arise from protected activity).

Experian argues the Motions to Strike "fail[] at the first step because "the evidence
conclusively establishes … that the assertedly protected speech or petition activity was illegal
as a matter of law." (Opp. to Zeig MTS at 10; Opp. to Stein Saks MTS at 7-8 (both citing
*Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006)).) The court is not persuaded. When a defendant
brings an anti-SLAPP motion asserting that the claims arise from protected activity, "but either
the defendant concedes, or the evidence conclusively establishes, that the assertedly protected
speech or petition activity was illegal[3] as a matter of law, the defendant is precluded from using
the anti-SLAPP statute to strike the plaintiff's action." *Flatley*, 39 Cal. 4th at 320. "The
circumstances in which the protected activity may be found illegal as a matter of law are
narrow; only when the defendant concedes the claim arose from illegal activity or it was
conclusively established." *Moten v. Transworld Sys. Inc.*, 98 Cal. App. 5th 691, 703 (2023).
"[I]t is not sufficient that plaintiffs can reasonably *argue* or offer *some evidence* that
defendant's conduct was unlawful. Rather, at this early stage of the proceedings, the illegality
exception applies only if the defendant's activity is 'illegal as a matter of law,' meaning either
the defendant concedes the point or the evidence 'conclusively establishes' as much." *Dziubla
v. Piazza*, 59 Cal. App. 5th 140, 151 (2020); *see also Moten*, 98 Cal. App. 5th at 703 ("At this

---

[3] "Illegal" under this standard means the conduct must be "criminal, and not merely violative of
a statute. *Mendoza v. ADP Screening & Selection Services, Inc.*, 182 Cal. App. 4th 1644, 1654
(2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

stage in the proceedings, although Moten alleges the Substitute Rosters are fraudulent, there was no conclusive evidence of illegal activity.").  "Neither occurred here."  *Dziubla*, 59 Cal. App. 5th at 151; *see also Mendoza*, 182 Cal. App. 4th at 1655 ("In the end, we are satisfied that SASS properly invoked the anti-SLAPP statute to challenge Mendoza's complaint because SASS's underlying conduct involved speech activity in furtherance of its First Amendment rights, and SASS did not concede that its underlying conduct was criminal, nor did the evidence conclusively establish that its conduct was criminal."); *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1159 (2021) ("Illegal conduct as a matter of law under *Flatley* must be based on a defendant's concession or on uncontroverted and conclusive evidence—neither of which is present at this stage of the proceedings.  Appellants have not conceded that their conduct was illegal, and Belen has not conclusively proven that appellants' conduct was illegal as a matter of law.") (citation omitted); *Psaila v. Girardi*, 2024 WL 1056064, at *3 (C.D. Cal. Feb. 27, 2024) ("Here, the Court cannot determine whether the alleged petitioning activity was illegal as a matter of law.  The EG Defendants have not conceded that they engaged in illegal conduct, and there is no uncontroverted and conclusive evidence of illegality.  Because the Court cannot determine that the EG Defendants acted illegally as a matter of law, the Court will apply anti-SLAPP law.").

        In summary, the court finds the Stein Saks Defendants and the Zeig Defendants have made a prima facie showing that Experian's state law claims arise from protected activity, *see Fire Ins. Exch.*, 211 Cal. App. 4th at 822, and that the *Flatley* exception for illegal conduct does not apply, *see Flatley*, 39 Cal. 4th at 320.

        **B.     Minimal Merit**

        Because the court finds the Stein Saks Defendants and the Zeig Defendants have met their burden of establishing that Experian's state law claims arise from protected activity, the court proceeds to the second step, "under which the plaintiff must show the claim[s] ha[ve] 'at least minimal merit.'"  *Bonni*, 11 Cal. 5th at 1009.  At this step, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  *Pott v. Lazarin*, 47 Cal. App. 5th 141, 150 (2020), *as modified on denial of reh'g* (May 21,

CIVIL MINUTES – GENERAL                                                                        7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

2020), *review denied* (Aug. 19, 2020). This burden is relatively low, and "[t]he plaintiff need only establish that his or her claim has minimal merit." *Id.* (internal quotation omitted); *see Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) ("[T]he second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong.").

The Stein Saks Defendants and the Zeig Defendants argue that Experian cannot show it has a probability of prevailing due to the application of (1) the *Noerr-Pennington* doctrine and (2) California's litigation privilege. (Zeig MTS at 8-13; Stein Saks MTS at 11-15.)

## 1.    *Noerr-Pennington* Doctrine

The Zeig Defendants argue Experian cannot show a probability of prevailing on the state law claims because the *Noerr-Pennington* doctrine applies to bar those claims. (Zeig MTS at 8-12.) Experian responds that the *Noerr-Pennington* doctrine does not apply to sham petitions and contends that Experian adequately alleges the lawsuits filed based on the faked denial letters were sham petitions. (Opp. to Zeig MTS at 13-17.) On this point, the court agrees with Experian.

"The *Noerr-Pennington* doctrine . . . provides that litigation activity (including pre-litigation cease-and-desist letters) cannot form the basis of liability unless the litigation is a 'sham.'" *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 532 n.1 (9th Cir. 2022) (quoting *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 347 n.1 (9th Cir. 2014)) (citations omitted); *see also Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009)) ("The agents of that litigation—employees and law firms and lawyers—may benefit from the immunity as well."). The Ninth Circuit has identified "three circumstances in which the sham litigation exception might apply:" (1) "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful"; (2) "where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose"; and (3) "if the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of
its legitimacy.'"  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (quoting *Kottle v.
NW. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)).

   In this case, Experian's allegations include the following.  The Zeig Defendants "filed a
sham lawsuit in the Middle District of Florida on behalf of Sharon Dorray ('Dorray'), alleging
FCRA violations by Experian, TransUnion, Equifax, and Pentagon Federal Credit Union
('PenFed')."  (FAC ¶ 372 (citing *Dorray v. Equifax Info. Servs., LLC*, 8:23-cv-02224 (M.D.
Fla.).)  The Zeig Defendants "knowingly and intentionally made false allegations in the Dorray
Complaint in order to state an FCRA claim, including, among others, that: (1) Dorray 'was only
able to obtain a loan with a very high interest rate'; (2) it 'would have been financially
unfeasible for [her] to have refinanced' due to the PenFed account; and (3) Dorray was
'emotionally distraught' and 'unable to secure the necessary credit' because of Experian's
reporting."  (*Id.* ¶ 373 (citing Dorray Compl. ¶¶ 70, 73-77).)  However, in reality, "Dorray never
applied for credit with FRMC" and "FRMC never denied her refinance mortgage loan
application at any time," and the Zeig Defendants knew it.  (*Id.* ¶¶ 374, 377.)  The Zeig
Defendants "also knew that Soffer had fabricated the Fraudulent FRMC Letter alleged in the
Dorray Complaint at the direction of Judah Stein."  (*Id.* ¶ 377.)  Despite this, "they knowingly
and intentionally caused those allegations to be made in the Dorray Complaint in order to
fraudulently induce Experian to pay money to settle the case."  (*Id.* ¶ 379.)

   The court finds Experian has adequately pleaded that the sham exception to the *Noerr-
Pennington* doctrine applies to these and similar allegations because (1) the Dorray lawsuit was
objectively baseless and the Zeig Defendants' motive in bringing it was unlawful, (2) the Zeig
Defendants were involved in the filing of a series of lawsuits brought without regard to the
merits and for an unlawful purpose, and/or (3) the Zeig Defendants knowingly made intentional
misrepresentations that deprived the litigation of its legitimacy.  *See Sosa*, 437 F.3d at 938; *see,
e.g.*, *Nat. Immunogenics Corp. v. Newport Trial Grp.*, 2016 WL 11520711, at *5 (C.D. Cal.
Aug. 1, 2016) (finding first sham exception adequately pleaded when the plaintiff "specifically
allege[d] that (1) the *Nilon, Chromadex, Carter-Reed, Himalaya Drug, Nutrisystem, Nature's*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

*Way, Kiss My Face*, and *Bobba* actions all lacked probable cause because the material allegations supporting the class representative's claims in the operative complaint were intentionally false; and (2) the NTG Defendants filed these fraudulent lawsuits with the improper purpose to extract out-of-court settlement from the corporate defendants in these lawsuits."); (*see also* Opp. to Zeig MTS at 14-17 (collecting cases)).

## 2.    Litigation Privilege

Both the Stein Saks Defendants and the Zeig Defendants argue Experian cannot show a probability of prevailing because the litigation privilege applies to bar Experian's claims.  (Zeig MTS at 8-13; Stein Saks MTS at 11-15.)  "A plaintiff cannot show a probability of prevailing on the merits of a cause of action for anti-SLAPP purposes where the cause of action is barred by the litigation privilege codified in Civil Code section 47."  *Flickinger v. Finwall*, 85 Cal. App. 5th 822, 840 (2022); *see also Flatley*, 39 Cal.4th at 323 (explaining that the litigation privilege is relevant in the anti-SLAPP analysis' second step because "it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing").  The litigation privilege—which applies to all torts except malicious prosecution—covers "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Silberg v. Anderson,* 50 Cal.3d 205, 212 (1990); *see* Cal. Civ. Code § 47(b); *Rusheen*, 37 Cal.4th at 1058.  "The breadth of the litigation privilege cannot be understated."  *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010).  "Any doubt about whether the privilege applies is resolved in favor of applying."  *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

The litigation privilege exists "to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation."  *Rusheen*, 37 Cal.4th at 1063.  "The privilege is broadly construed to effectuate these purposes, even when it means litigants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

cannot recover damages for injurious publications made in judicial proceedings." *Weiser L. Firm, P.C.*, 2023 WL 5030096, at *8 (citing *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241 (2007); *Dziubla v. Piazza*, 59 Cal. App. 5th 140, 155 (2020) ("These policy considerations are paramount, and courts recognize that guarding them by adhering to the privilege will result in some real injuries that go uncompensated. This is simply part of the price that is paid for free access to the courts.") (internal citations and quotations omitted); *Rusheen*, 37 Cal. 4th at 1064 ("Thus, the salutary policy reasons for an absolute litigation privilege supersede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings.") (cleaned up).

    The court finds that all four elements of the litigation privilege are met here. First, the Zeig Defendants' and the Stein Saks Defendants' challenged statements and actions were made in judicial proceedings or in preparation for judicial proceedings. *See Silberg*, 50 Cal.3d at 212 (explaining that the privilege applies even when the "publication is made outside the courtroom and no function of the court or its officers is involved"); *Hagberg*, 32 Cal. 4th at 361 (stating that the privilege extends to statements made "prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit"); *Rubin v. Green*, 847 P.2d 1044, 1048 (Cal. 1993) (deciding litigation privilege applied to meeting and discussing with potential plaintiffs the facts and merits of the proposed lawsuit). Second, the Zeig Defendants and the Stein Saks Defendants were attorneys or authorized participants in those proceedings. *See Silberg*, 50 Cal. 3d at 219 ("Defendant's statements regarding Dr. Adler's suitability were made by a participant, i.e., the attorney for a party.").

    And as to the third and fourth elements—which "[i]n practice . . . are merged into a single inquiry"—the Zeig Defendants' and the Stein Saks Defendants' statements and actions had at least "some connection or logical relation to the action." *Silberg,* 50 Cal.3d at 212; *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) ("For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the [litigation] privilege."); *see, e.g.*, *Microsoft Corp.*, 2018 WL 5094969, at *7 (rejecting argument that alleged abuse of process through public records search had no "logical connection" to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                           Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

case when "Microsoft's use of the information obtained in that records search to support
Microsoft's Motion to Amend was relevant to the underlying action"); *Butkus v. Downtown
Athletic Club of Orlando, Inc.*, 2008 WL 11338099, at *4 (C.D. Cal. Mar. 10, 2008) ("[C]ourts
have consistently concluded that [] communications to third parties with some interest in the
litigation have the requisite 'connection or logical relation to the action' to qualify for the
absolute immunity provided by the litigation privilege").

In its briefing and at the hearing, Experian argued (1) the litigation privilege does not
apply to Experian's UCL claim, and (2) the litigation privilege does not apply to statements to
nonauthorized participants.  (Opp. to Zeig MTS at 18-20; Opp. to Stein MTS at 11-13.)

On the first point, the court agrees with Experian.  Experian's UCL claim alleges that
Defendants' "violation of 18 U.S.C. § 1962(c) or 18 U.S.C. § 1962(d) constitutes an unlawful,
unfair or, under the circumstances alleged, fraudulent business practices and, as such,
constitutes a predicate offense under the UCL."  (Compl. ¶ 504.)  In the UCL claim, "Experian
seeks an order of this Court enjoining Defendants from continuing to engage in the acts as set
forth in Counts One and Two"—the RICO claims—"which acts constitute violations of
Business & Professions Code § 17200, *et seq.*"  (*Id.* ¶ 507.)  As the court has already explained,
California's anti-SLAPP law does not apply to Experian's RICO claims, so those claims survive
the Motions to Strike.  Similarly, Experian's RICO claims are "predicated on federal law and as
such, [are] not governed by, and preempt[] California privilege law."  *Lauter v. Anoufrieva*,
2010 WL 3504745, at *11 (C.D. Cal. July 14, 2010), *report and recommendation adopted as
modified,* 2010 WL 3504732 (C.D. Cal. Aug. 31, 2010).  And "[c]ourts routinely hold that when
the underlying unlawful conduct is not protected by the litigation privilege, the corresponding
UCL claim is also not protected by the litigation privilege."  *Nat. Immunogenics Corp.*, 2016
WL 11520711, at *15 (denying anti-SLAPP motion of UCL claim with corresponding RICO
claim); *see Blackburn v. ABC Legal Servs., Inc.*, 2011 WL 8609453, at *3 (N.D. Cal. June 16,
2011) ("Moreover, because Plaintiff's Section 17200 claim is premised on . . . violations of the
FDCPA, a federal claim to which California's litigation privilege is inapplicable, Plaintiff's
Section 17200 claim is not barred by the litigation privilege either."); *Lauter*, 2010 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                          Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

3504745, at *13 ("Here, as the instant [UCL] claim is predicated in part upon alleged violations
of federal statutes [including RICO] as to which the litigation privilege does not apply,
Defendants' Motion to dismiss such claim . . . should be denied."); *see also Johnson v. JP
Morgan Chase Bank DBA Chase Manhattan*, 536 F. Supp. 2d 1207, 1213 (E.D. Cal. 2008)
("Unifund did not challenge Ms. Johnson's federal claims against Unifund.  Thus, Ms. Johnson
states a claim for 'unfair' and 'unlawful' activity by asserting, at a minimum, the unchallenged
federal causes of action.  Moreover, the federal claims preempt the litigation privilege.").
Accordingly, the court finds the litigation privilege does not bar Experian's UCL claim, which
is premised on Defendants' alleged RICO violations.

However, the court is unpersuaded by Experian's argument that the litigation privilege
does not apply to Experian's allegations relating to Zeig Defendants and the Stein Saks
Defendants' statements and actions concerning third parties—such as the Zeig Defendants'
unlawful transfer of settlement proceeds to third parties such as Argy and the Stein Saks
Defendants' communications with Argy, Monk, and Soffer to manufacture fake mortgage
denials—because those third parties were not litigants or other participants authorized by law.
(Opp. to Zeig MTS at 19; Opp. to Stein MTS at 11-13.)  At the hearing, Experian explained
that, for example, the fraud claim it contends is not barred by the litigation privilege would
include a claim that fake mortgage denials were created as a result of communications between
Stein Saks and nonauthorized litigation participants such as Argy, Monk, and Soffer; Experian
relied on those fake mortgage denials; and Stein Saks intended to induce that reliance.  But the
court is not persuaded that the communications with nonauthorized participants resulting in the
fake mortgage denials are far enough removed from the litigation process to fall outside the
broad scope of the litigation privilege.  Rather, the court finds that Experian's allegations reflect
the communications with nonauthorized participants had at least "some relation" to judicial
proceedings.  *Butkus v. Downtown Athletic Club of Orlando, Inc.*, 2008 WL 11338099, at *4
(C.D. Cal. Mar. 10, 2008); *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) ("For well over a
century, communications with 'some relation' to judicial proceedings have been absolutely
immune from tort liability by the [litigation] privilege."); *see also Geragos v. Abelyan*, 88 Cal.
App. 5th 1005, 1031-32, (2023), *review denied* (June 14, 2023) ("The litigation privilege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                          Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

protects even communication made with an intent to harm, so long as the communication is made in 'relation' to a pending/ongoing or genuinely contemplated judicial or other official proceeding."); *see, e.g.*, *Microsoft Corp.*, 2018 WL 5094969, at *7 (rejecting argument that alleged abuse of process through public records search had no "logical connection" to a case when "Microsoft's use of the information obtained in that records search to support Microsoft's Motion to Amend was relevant to the underlying action"). Indeed, Experian alleges that the fake mortgage denials were created in order to generate standing in FCRA cases Stein Saks sought to file. (Compl. ¶ 34 ("In response to *Ramirez*, Stein Saks changed its business model by implementing a scheme to manufacture evidence of credit denials to demonstrate standing and actual damages in FCRA lawsuits against Experian.")); *Adams*, 2 Cal. App. 4th at 530 (finding connection to judicial proceedings when, among other indicators, a court considered the information provided).

Similarly, Experian argued at the hearing that the abuse of process claim based on manufacture of the fake mortgage denials would survive to the extent it is based on actions by nonauthorized participants. But again, the court is not persuaded that the challenged actions did not have at least "some relation" to judicial proceedings given that Experian alleges the fake mortgage denials were generated in order to create standing for specific FCRA cases Stein Saks intended to file. (*See* Compl. ¶ 42 ("This, in turn, would generate a credit denial letter that could be used as fraudulent 'evidence' of standing and damages caused by Experian.")); *Kimes*, 84 F.3d at 1126; *Mar. v. Twin Cities Police Auth.*, 2014 WL 3725931, at *12 (N.D. Cal. July 25, 2014) (granting anti-SLAPP motion because the plaintiff failed to show a probability that he would prevail on his abuse of process claim since that claim was barred by the litigation privilege); *see also Smith v. Fireside Thrift Co.*, 2007 WL 2729329, at *5 (N.D. Cal. Sept. 18, 2007) (noting that striking an abuse of process claim based on the litigation privilege could "produce a troubling result in some situations," but determining that "the anti-SLAPP statute, together with the litigation privilege, seem to compel this result"); *Blaha v. Rightscorp, Inc.*, 2015 WL 4776888, at *3 (C.D. Cal. May 8, 2015) ("While application of the litigation privilege narrows the scope of the abuse of process tort, California courts are well-aware of this and find it consistent with the public policy of the state."); *Hagberg v. Cal. Fed. Bank*, 32 Cal.4th 350,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

360 (2004); *Rusheen*, 37 Cal.4th at 1063 ("[D]espite . . . concern for the potential abolishment of the common law tort of abuse of process, modern public policy seeks to encourage free access to the courts and finality of judgments by limiting derivative tort claims arising out of litigation-related misconduct.")).

Likewise, the court finds that the unjust enrichment claim Experian contends would not be barred by the litigation privilege—based on nonauthorized participants' receipt of settlement proceeds—is based on statements and actions that have at least "some relation" to judicial proceedings. *Kimes*, 84 F.3d at 1126; *Butkus*, 2008 WL 11338099, at *4.

### C.    Summary

In summary, the Zeig Motion to Strike and Stein Saks Motion to Strike are **GRANTED** insofar as they seek to strike Experian's fraud, abuse of process, and unjust enrichment claims. The Zeig Motion to Strike is **DENIED** insofar as it seeks to strike Experian's RICO and UCL claims. The Stein Saks Motion to Strike is **DENIED** insofar as it seeks to strike Experian's UCL claim.

## III.    Motions to Dismiss [39, 45, 49]

Next, the court turns to the Soffer Motion to Dismiss and the Stein Saks Motion to Dismiss, which the Zeig Defendants join. The court first considers Soffer's argument that the court lacks personal jurisdiction over him. (Soffer MTD at 5-11, 19.) The court then turns to Soffer's and the Stein Saks Defendants' arguments regarding the sufficiency of Experian's allegations against them. (Soffer MTD at 11-22; Stein Saks MTD at 9-24.)

### A.    Personal Jurisdiction Over Soffer

Soffer, a citizen of New Jersey, (Compl. ¶ 1, 18; Soffer MTD at 1), moves to dismiss the Complaint against him for lack of personal jurisdiction. (Soffer MTD at 5-11.) Experian

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

asserts that RICO provides the court with personal jurisdiction over Soffer.  (Opp. to Soffer
MTD at 8-16.)  The civil RICO statute provides:

> In any action under section 1964 of this chapter in any district court of
> the United States in which it is shown that the ends of justice require
> that other parties residing in any other district be brought before the
> court, the court may cause such parties to be summoned, and process
> for that purpose may be served in any judicial district of the United
> States by the marshal thereof.

18 U.S.C. § 1965(b).  The purpose of the "ends of justice" provision is "to enable plaintiffs to
bring all members of a nationwide RICO conspiracy before a court in a single trial."  *Butcher's
Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).  "The right to
nationwide service in RICO suits is not unlimited," however, and the act of "merely naming
persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s
nationwide service provisions."  *Gen. Steel Domestic Sales, LLC v. Suthers*, 2007 WL 704477,
at *3 (E.D. Cal. Mar. 2, 2007) (quoting *Butcher's Union,* 788 F.2d at 539).  "In order to
establish personal jurisdiction under Section 1965(b), Plaintiffs must show: (1) the Court has
personal jurisdiction over at least one of the participants in the action; (2) there is no other
district in which a court will have personal jurisdiction over the alleged co-conspirators; and
(3) the facts show a *single nationwide* RICO conspiracy exists."  *Doe v. Walmart Inc.*, 2019 WL
499754, at *6 (N.D. Cal. Feb. 8, 2019).

    To plead the existence of a single nationwide conspiracy, a plaintiff must allege facts
showing that the "conspirator…intend[ed] to further an endeavor which, if completed, would
satisfy all of the elements of a substantive criminal offense."  *Salinas v. United States*, 522 U.S.
52, 65 (1997).  The plaintiff does not have to show that the conspirator agreed "to undertake all
of the acts necessary for the crime's completion"; rather, "it suffices that he adopt the goal of
furthering or facilitating the criminal endeavor," including "by agreeing to facilitate only some
of the acts leading to the substantive offense."  *Id.*  Additionally, the plaintiff must show the

**CIVIL MINUTES – GENERAL**                                                    **16**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

defendant "was aware of the essential nature and scope of the enterprise and intended to
participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (internal citation
omitted).  While it is not necessary that each conspirator know all of the details of the
conspiracy, *Hernandez v. Balakian*, 480 F.Supp.2d 1198, 1212 (E.D. Cal. 2007), or "be aware
of the specific identity or activity of the other" co-conspirators, *United States v. Christensen*,
828 F.3d 763, 781 (9th Cir. 2015), a plaintiff must adequately allege that the defendant
"knowingly agree[d] to facilitate a scheme which includes the operation or management of a
RICO enterprise," *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (quoting
*Smith v. Berg*, 247 F.3d 532 (3rd Cir. 2001)).  "A single nationwide conspiracy exists only if a
plaintiff has alleged that the defendants have 'specific knowledge' of or participate in *one*
conspiracy." *Doe*, 2019 WL 499754, at *6 (quoting *Butcher's Union*, 788 F.2d at 539).

     In this case, the court finds Experian has not adequately alleged that Soffer knowingly
agreed to participate in a single nationwide conspiracy such that it is appropriate to exercise
personal jurisdiction over him under the RICO statute.  Specifically, Experian fails to
adequately allege that Soffer knew of any other participants in the alleged conspiracy other than
Stein Saks and Zeig, or that Soffer knew Stein Saks and Zeig were manufacturing fake
mortgage denial letters with other individuals or entities.  *See id.* ("Here, there are simply no
allegations specifying what relationship each Defendant had with one another.  Plaintiffs fail to
identify any Defendant with any kind of relationship, business or otherwise, with any other
Defendant. . . . Like in *Butcher's Union*, here, there are no allegations that Kroger, for instance,
had specific knowledge of or participation in Walmart's relationship with CEC."); *Butcher's
Union*, 788 F.2d at 539 ("As the Unions concede, none of the four defendant employers had any
specific knowledge of or participation in any of the other conspiracies.  The involvement of the
defendant lawyers and NMU agents in each of the individual conspiracies does not overcome
this fact. The district court properly concluded that the complaint did not allege a single
nationwide RICO conspiracy as required for nationwide service of process under the ends of
justice provision of section 1965(b).").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

"As [Experian] has failed to [adequately allege] the first element required to establish jurisdiction under 1965(b), the existence of a nationwide conspiracy, the Court finds it unnecessary to address the other two elements: (2) whether the Court has personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy; and (3) that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, 2007 WL 5289737, at *6 (C.D. Cal. Sept. 12, 2007). However, the court finds that "granting [Experian] an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and [Experian] ha[s] not acted in bad faith, [so] the Court grants leave to amend" and **GRANTS WITHOUT PREJUDICE** the Soffer MTD to the extent it argues the court lacks personal jurisdiction over Soffer. *Doe*, 2019 WL 499754, at *8.

### B.    Sufficiency of Experian's Allegations

Soffer and the Stein Saks Defendants both argue that Experian fails to adequately allege its claims against them. (Soffer MTD at 11-22; Stein Saks MTD at 8-24.) Because the court has stricken Experian's fraud, abuse of process, and unjust enrichment claims, the court considers the motions to dismiss only insofar as they challenge Experian's RICO and UCL claims.

### 1.    Legal Standard

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (stating that, in ruling on a Rule 12(b)(6) motion, the court may consider attached exhibits). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                            Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

In addition, Rule 9(b) establishes a heightened pleading standard for claims sounding in fraud, requiring a party to "state with particularity the circumstances constituting fraud or mistake" but permits "[m]alice, intent, knowledge and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotation marks omitted). This standard mandates "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation and internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted). "In addition, the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (cleaned up).

Rule 9(b) applies to claims that are "grounded in fraud" or that "sound in fraud," whether or not fraud is a necessary element. *Vess*, 317 F.3d at 1103-04. So "if a plaintiff chooses to allege in the complaint that the defendant has engaged in fraudulent conduct, then the pleading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (cleaned up). The heightened pleading standard under Rule 9(b) applies to both state and federal claims brought in federal court. *See Vess*, 317 F.3d at 1103.

### 2.    Analysis

To sufficiently allege a RICO claim, a plaintiff must plausibly allege the defendant "participate[d] in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity" where the "conduct [was] (5) the proximate cause of harm to the victim." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Experian alleges that "Defendants formed and orchestrated an association-in-fact enterprise." (Compl. ¶ 416.) "[A]n association-in-fact enterprise must have at least three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The second feature involves "both interpersonal relationships and a common interest." *Id.* Using the analogy of a hub-and-spoke structure, it is not enough to "allege[] bilateral agreements" between the hub and the spokes, but rather a plaintiff must "plead facts plausibly suggesting" the existence of a "unifying rim" or "wheel." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010). As stated, while each conspirator need not know all of the details of the conspiracy, or "be aware of the specific identity or activity of the other" co-conspirators, the plaintiff must adequately allege that the spokes knew that other spokes existed, and thereby "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *Christensen*, 828 F.3d at 781; *Fernandez*, 388 F.3d at 1230; *Butcher's Union*, 788 F.2d at 539.

In this case, as explained above in the context of personal jurisdiction over Soffer, the court finds that Experian has not adequately alleged that the spokes—individuals drafting fake mortgage denial letters such as Soffer, Argy, and Monk—knew that there were other spokes, i.e. other people drafting fake mortgage denial letters. (*See, e.g.*, Opp. at 11 (describing

**CIVIL MINUTES – GENERAL**                                                    **20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

*Fernandez*, 388 F.3d at 1227 as reasoning that "[i]t was sufficient that the method of operation between the sub-groups remained constant, *there was evidence the sub-groups were coordinated (to ensure no two groups were taxing the same area)*, and there was common participation of key senior gang members") (emphasis added).) The court therefore finds that Experian fails to adequately allege that Defendants were "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer*, 8 F.3d at 1346. And because Experian's UCL claim is founded on its RICO claims, (Compl. ¶ 504), the court finds that claim insufficiently alleged as well. Accordingly, the court **DISMISSES** Experian's RICO claims and UCL claim under Rule 12(b)(6).

"When justice requires, a district court should 'freely give leave' to amend a complaint." *Ctr. for Bio. Diversity v. United States Forest Serv.*, 80 F.4th 943, 955-56 (9th Cir. 2023) (quoting *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016)). Although leave to amend may be denied when granting it would be futile, *id.* at 956, "[l]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)). *Ctr. for Bio. Diversity*, 80 F.4th at 956 ("Amendment is futile when 'it is clear . . . that the complaint could not be saved by any amendment.'") (quoting *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022)). The court does not find at this stage that granting Experian leave to amend would be futile, and therefore grants Experian leave to amend.

**IV.    Motion to Stay [82]**

Finally, in the Motion to Stay, the Stein Saks Defendants ask the court to stay this case pending disposition of the pending pleadings challenges. (*See generally* MTS.) Because the court has now ruled on the relevant motions, the Motion to Stay is **DENIED AS MOOT.**

**V.    Disposition**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                           Date: November 19, 2024
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART**
the Stein Saks Motion to Strike and the Zeig Motion to Strike, **GRANTS IN PART AND
DENIES AS MOOT IN PART** the Stein Saks Motion to Dismiss and the Soffer Motion to
Dismiss, and **DENIES AS MOOT** the Motion to Stay.  The cumulative import of the court's
rulings is that all claims in the Complaint are either stricken or dismissed with leave to amend.
If Experian seeks to file an amended complaint, it shall do so on or before **January 6, 2025.**
Failure to file an amended complaint on or before the deadline set by the court will result in the
dismissal of this action with prejudice without further notice for failure to prosecute and/or
comply with a court order.  *See* Fed. R. Civ. P. 41(b); *In re Phenylpropanolamine (PPA) Prods.
Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("Rule 41(b) permits dismissal for failure of
the plaintiff to prosecute or to comply with any order of court."); *Chambers v. NASCO, Inc.*,
501 U.S. 32, 44 (1991) (courts may "act sua sponte to dismiss a suit for failure to prosecute")
(cleaned up); *Link v. Wabash R.R.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial
court to dismiss a plaintiff's action with prejudice because of [their] failure to prosecute cannot
seriously be doubted."); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689
(9th Cir. 2005) ("[C]ourts may dismiss under Rule 41(b) sua sponte, at least under certain
circumstances."); *Pagtalunan v. Galaza*, 291 F.3d 639, 640-43 (9th Cir. 2002) (affirming *sua
sponte* dismissal with prejudice "for failure to prosecute and for failure to comply with a court
order"); *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986)
(stating "[d]istrict courts have inherent power to control their dockets" and "[i]n the exercise of
that power they may impose sanctions including, where appropriate, default or dismissal").

Initials of Deputy Clerk: mku