UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01186-FWS-JDE                          Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING MOTION TO STRIKE [100] AND MOTIONS TO DISMISS [101] [103] [104] [105], AND GRANTING IN SUBSTANTIAL PART MOTION FOR ATTORNEY FEES PURSUANT TO C.C.P. § 425.16 [97]**

Plaintiff Experian Information Solutions, Inc. ("Experian") brings this case against Defendants Stein Saks, PLLC ("Stein Saks"); Judah Stein ("Stein"); Yaakov Saks ("Saks"); Tamir Saland ("Saland"); Eliy Abu Babad ("Babad") (Stein Saks, Stein, Saks, Saland, and Babad together, the "Stein Saks Defendants"); Zeig Law Firm, LLC (the "Zeig Firm"); Justin Zeig ("Zeig") (the Zeig Firm and Zeig together, "the Zeig Defendants"); Chesky Monk ("Monk")[1]; and Daniel. J. Soffer ("Soffer") (all Defendants collectively, "Defendants," and all Defendants except Monk, "Responding Defendants"), alleging that Defendants "have operated a nationwide [Racketeer Influenced and Corrupt Organizations Act, 'RICO'] enterprise" with the "ultimate aim [] to extort Experian to settle sham lawsuits under the Fair Credit Reporting Act ('FCRA') at fraudulent values." (Dkt. 91 ("Amended Complaint" or "FAC") ¶ 1.) The court previously issued an Order Granting in Part and Denying in Part Motions to Strike; Granting in Part and Denying as Moot in Part Motions to Dismiss; and Denying as Moot Motion to Stay. (Dkt. 89 ("Prior Order").) Experian filed the Amended Complaint after the Prior Order, and now before the court are several motions:

---

[1] Monk's response to the Amended Complaint is not due until April 28, 2025. (Dkt. 110.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

1. The Zeig Defendants' Motion to Strike Amended Complaint, (Dkt. 100 ("Zeig Motion to Strike" or "Zeig MTS"));
2. The Stein Saks Defendants' Motion to Dismiss Amended Complaint, (Dkt. 101 ("Stein Saks Motion to Dismiss" or "Stein Saks MTD")), which the Zeig Defendants join, (Dkt. 103);
3. The Zeig Defendants' Motion to Dismiss, (Dkt. 104 ("Zeig Motion to Dismiss" or "Zeig MTD"));
4. Soffer's Motion to Dismiss, (Dkt. 105 ("Soffer Motion to Dismiss" or "Soffer MTD")); and
5. The Stein Saks Defendants' Motion for Attorney Fees Pursuant to California Code of Civil Procedure 425.16, (Dkt. 97 ("Stein Saks Fee Motion" or "Stein Saks Fee Mot.")).

All of these motions are fully briefed. (*See* Dkts. 111-115, 117-121.) The court finds these matters appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the hearing set for April 24, 2025, is **VACATED** and off calendar. Based on the state of the record, as applied to the applicable law, the court **DENIES** the Zeig Motion to Strike, the Stein Saks Motion to Dismiss, the Zeig Motion to Dismiss, and the Soffer Motion to Dismiss; and **GRANTS IN SUBSTANTIAL PART** the Stein Saks Fee Motion.

## I.    Background

Experian's 120-page, 512-paragraph Amended Complaint alleges a sprawling RICO conspiracy. (*See generally* FAC.) The basic allegations are these. Stein Saks—a New York law firm with offices in New York and New Jersey, and where Stein, Saks, Saland, and Babad work—is "one of the most prolific filers of FCRA lawsuits in the country." (*Id.* ¶¶ 1, 9, 29.) In 2021, the Supreme Court of the United States issued a "decision in *Transunion LLC v. Ramirez*,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

594 U.S. 413 (2021), which held that the mere risk of future harm does not establish Article III standing" in FCRA cases.  (*Id.* ¶ 32.)  "In response to *Ramirez*, Stein Saks changed its business model by implementing a scheme to manufacture evidence of credit denials to demonstrate standing and actual damages in FCRA lawsuits against Experian."  (*Id.* ¶ 34.)  The scheme involved "manufacturing fake, false, and fraudulent denial letters from Cornerstone" and Funding Resources Mortgage Corporation ("FRMC") in order to generate standing, "filing sham lawsuits in U.S. courts across the country," "fraudulently inducing and extorting Experian to settle sham lawsuits, laundering the illegally-obtained settlement proceeds to out-of-state lawyers and non-lawyers, defrauding clients of settlement proceeds, and abusing the judicial process."  (*Id.* ¶¶ 37-38, 424.a.)

Specifically, Stein Saks attorneys drafted a template credit denial—even when the person referenced in the letter had not actually applied for or been denied credit—reading, for example:

> RE: Refinance
>
> Dear __,
>
> I am a licensed mortgage banker. After receiving your loan application, I ran your credit. As discussed, at this time, due to the late mortgage payment with NR/SMS/CAL, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance.

(*Id.* ¶¶ 56-57 (Stein providing nonparty Yenon Argy ("Argy") "an example of a letter" and Argy then using nearly identical language on Cornerstone letterhead); *id.* ¶ 291 ("On November 14, 2022, at the direction of Judah Stein, Soffer fabricated a credit denial letter for Amiram on FRMC letterhead" and "sent the Fraudulent FRMC Letter to Judah Stein by email."); *see also id.* ¶¶ 272-73 (Stein providing Soffer draft language for a credit denial letter and Soffer using that language on FRMC letterhead).)  Then, Stein Saks attorneys directed non-lawyers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025

Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

including Monk, Soffer, and Argy to issue the template letters on the letterhead of either Cornerstone or FRMC regarding individuals Stein Saks intended to represent. (*Id.* ¶¶ 17-18, 20, 424.) Stein Saks then used the fake denial letters to support standing allegations in sham lawsuits against Experian in various federal courts, including in the Central District of California, Eastern District of New York, Southern District of New York, District of New Jersey, Eastern District of Pennsylvania, and Middle District of Florida. (*Id.* ¶ 62.) Stein Saks also "used the fake credit denials to extort a settlement from Experian," causing Experian to settle cases it would not otherwise have agreed to settle. (*Id.* ¶¶ 37-38, 54, 66, 97, 141-143, 162-164, 185-188, 223-225, 298-300, 311-313, 325-327, 338-340, 351-353, 364-366.) The Zeig Defendants helped launder money from the scheme and also filed one of the sham lawsuits in the Middle District of Florida. (*Id.* ¶¶ 3, 15-16, 67-72, 378, 424.)

In the Amended Complaint, Experian asserts three claims. The first two claims are RICO claims: one under 18 U.S.C. § 1962(c) (making it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt"), and one under 18 U.S.C. § 1962(d) (making it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section"). (*Id.* ¶¶ 420-489.) The third claim is for violation of California's Unfair Competition Law ("UCL"), and is based on the same allegations as the RICO claims. (*Id.* ¶¶ 490-501; *see id.* ¶ 493 (alleging that a RICO violation constitutes a UCL violation).)

## II.    Zeig Motion to Strike [100]

The court first analyzes the Zeig Motion to Strike, which is brought under California's anti-Strategic Lawsuit Against Public Participation ("SLAPP") statute. (*See generally* Zeig MTS.) As the Zeig Defendants recognize, the Zeig Motion to Strike "reassert[s]" arguments "that the Court previously rejected." (*Id.* at 9, 13.) The Zeig Defendants state that the Zeig Motion to Strike

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

> is being filed to protect the record for appellate review and to obviate
> any argument that the Zeig Defendants waived/abandoned/forfeited
> their anti-SLAPP arguments as to the recently filed Amended
> Complaint (which is the operative pleading in this matter).  Further,
> the Zeig Defendants submit that the instant motion is being made in a
> good faith effort to argue for a good faith change in the law, see ABA
> model rule of professional conduct 3.1.  Accordingly, the Zeig
> Defendants are submitting a proposed order denying this motion, the
> Plaintiff *should not be required* to submit a response in opposition,
> *see* Fed. R. Civ. P. 1 ("just, speedy, and inexpensive determination"),
> and no claim for attorney's fees is being made.

(Zeig MTS at ii.)  Accordingly, for the reasons stated in the Prior Order, (*see* Prior Order at 4-15), the court finds the Zeig Defendants' arguments unpersuasive and therefore **DENIES** the Zeig Motion to Strike.

## III.    Motions to Dismiss [101, 103, 104, 105]

Next, the court turns to the Soffer Motion to Dismiss; the Stein Saks Motion to Dismiss, which the Zeig Defendants join; and the Zeig Motion to Dismiss.  (Dkts. 101, 103, 104, 105.) The court considers (1) whether the court has personal jurisdiction over Soffer and (2) the sufficiency of Experian's allegations.

### A.    Personal Jurisdiction Over Soffer

Soffer, a citizen of New Jersey, (FAC ¶ 1, 18; Soffer MTD at 7), moves to dismiss the Amended Complaint against him for lack of personal jurisdiction.  (Soffer MTD at 7-13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                           Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

Experian asserts that RICO provides the court with personal jurisdiction over Soffer.  (Dkt. 115 ("Opp. to Soffer MTD") at 7-12.)  The civil RICO statute provides:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b).  The purpose of the "ends of justice" provision is "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).  "The right to nationwide service in RICO suits is not unlimited," however, and the act of "merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." *Gen. Steel Domestic Sales, LLC v. Suthers*, 2007 WL 704477, at *3 (E.D. Cal. Mar. 2, 2007) (quoting *Butcher's Union,* 788 F.2d at 539).  "In order to establish personal jurisdiction under Section 1965(b), Plaintiffs must show: (1) the Court has personal jurisdiction over at least one of the participants in the action; (2) there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators; and (3) the facts show a *single nationwide* RICO conspiracy exists." *Doe v. Walmart Inc.*, 2019 WL 499754, at *6 (N.D. Cal. Feb. 8, 2019).

Regarding the first element, the court finds that it has personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy, including Stein Saks and Saland who "purposefully directed their activities at the forum and Experian by intentionally filing or causing to be filed sham lawsuits in the Central District of California against Experian, hiring local counsel to facilitate the filing of such lawsuits, and filing motions to appear pro hac vice as counsel of record, directly causing harm to Experian in California, where Experian has its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

principal place of business."  (FAC ¶ 25; *see* Opp. to Soffer MTD at 9-10); *Butcher's Union*, 788 F.2d at 539.

Regarding the second element, the court finds there is no other district in which a court would have personal jurisdiction over all of the alleged co-conspirators.  *See Butcher's Union*, 788 F.2d at 539.  Soffer argues that Defendants are all subject to personal jurisdiction in New Jersey.  (Mot. at 11-12.)  However, the court is not persuaded that a New Jersey court would have personal jurisdiction over all Defendants, including Saland and the Zeig Defendants.  (*See* Opp. to Soffer MTD at 10-11.)

The court therefore turns to the third element, whether Experian adequately alleges that a single nationwide RICO conspiracy exists.  *See Butcher's Union*, 788 F.2d at 539.  To plead the existence of a single nationwide conspiracy, a plaintiff must allege facts showing that the "conspirator…intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense."  *Salinas v. United States*, 522 U.S. 52, 65 (1997).  The plaintiff does not have to show that the conspirator agreed "to undertake all of the acts necessary for the crime's completion"; rather, "it suffices that he adopt the goal of furthering or facilitating the criminal endeavor," including "by agreeing to facilitate only some of the acts leading to the substantive offense."  *Id.*  Additionally, the plaintiff must show the defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it."  *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (internal citation omitted).  While it is not necessary that each conspirator know all of the details of the conspiracy, *Hernandez v. Balakian*, 480 F.Supp.2d 1198, 1212 (E.D. Cal. 2007), or "be aware of the specific identity or activity of the other" co-conspirators, *United States v. Christensen*, 828 F.3d 763, 781 (9th Cir. 2015), a plaintiff must adequately allege that the defendant "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise," *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (quoting *Smith v. Berg*, 247 F.3d 532 (3rd Cir. 2001)).  "A single nationwide conspiracy exists only if a plaintiff has alleged that the defendants have 'specific knowledge' of or participate in *one* conspiracy."  *Doe*, 2019 WL 499754, at *6 (quoting *Butcher's Union*, 788 F.2d at 539).

## CIVIL MINUTES – GENERAL                                                    7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

The court previously determined that Experian did not adequately allege in the Complaint "that Soffer knowingly agreed to participate in a single nationwide conspiracy such that it is appropriate to exercise personal jurisdiction over him under the RICO statute" because "Experian fail[ed] to adequately allege that Soffer knew of any other participants in the alleged conspiracy other than Stein Saks and Zeig, or that Soffer knew Stein Saks and Zeig were manufacturing fake mortgage denial letters with other individuals or entities." (Prior Order at 17.)

The court now finds that Experian plausibly alleges in the Amended Complaint a single nationwide conspiracy that encompasses Soffer. *See Butcher's Union*, 788 F.2d at 539. Experian alleges that "Defendants knowingly and intentionally agreed and conspired to identify consumers for lawsuits, fabricate evidence of damages, induce settlement payments, and share ill-gotten fees and settlement proceeds amongst themselves," which scheme "was facilitated by the creation of fake, false, and fraudulent denial letters from FRMC." (FAC ¶ 38.) Experian further alleges that "Soffer acted in concert with the other defendants to this action in furtherance of the enterprise by, among other things, using his position at FRMC and coordinating with the defendants to this action," including Zeig, Monk, and Argy, each of whom he knew, "to identify consumers for lawsuits, create false evidence of a mortgage denial from FRMC, and share business referrals amongst themselves from which they derive revenue and profit." (*Id.* ¶ 18.) Regarding the connection between Soffer and other participants in the scheme, the FAC states that "Soffer and Judah Stein went to school together, and they have known each other for over 25 years," and that "Stein discussed the Cornerstone Scheme with Soffer, in which they agreed to use near identical fake credit denial letters and share settlement proceeds with the other participants." (*Id.* ¶¶ 270, 276.) The FAC notes that "Monk and Soffer knew each other through Judah Stein and were connected on LinkedIn." (*Id.* ¶ 277.) And the FAC alleges that "Soffer knew that Stein Saks had directed others to manufacture fraudulent credit denial letters." (*Id.* ¶ 424.d.) Taking these allegations together, and drawing reasonable inferences in favor of Experian, the court concludes Experian adequately alleges a single nationwide conspiracy encompassing Soffer. *See Butcher's Union*, 788 F.2d at 539; *see also*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

*Fernandez*, 388 F.3d at 1248 n.34 ("[I]t is well-established that a single conspiracy may involve several subagreements or subgroups of conspirators. Where the agreements and actions of different groups of conspirators can be traced to an overall agreement among them to achieve a common goal, and where the co-conspirators knew of each other's existence or benefitted from each other's activities, then a single conspiracy has been proved.") (citations omitted).

The court further finds that Experian has adequately alleged that Soffer "was aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer*, 8 F.3d at 1346. As noted, Experian plausibly alleges that Soffer knew the letters he generated were false, specifically intended that those letters be used in fraudulent litigation, and also knew that "Stein Saks had directed others to manufacture fraudulent credit denial letters." (*See, e.g.*, FAC ¶¶ 267-87, 424.d.) For example, Experian alleges that Soffer drafted and provided these letters which "specifically and falsely state[d] that the denial was based solely upon the derogatory account on which Judah Stein was going to sue" despite the fact that "none of the consumers submitted a competed loan application," in order that "Stein could argue that his client was denied credit because of Experian's reporting of that specific account, and that specific account alone, and not as the result of any other derogatory tradelines that were reporting on his client's credit file, which would harm the sham lawsuit," even when a client had more serious derogatory notations or other delinquent accounts on their credit file. (*Id.* ¶¶ 267-70, 276, 282.) Based on those facts, Experian alleges "Soffer knew that Judah Sein was requesting the Fraudulent FRMC Letters to support damages claims in litigation against Experian and the other credit reporting agencies." (*Id.* ¶ 275.) "The point of" this element is to ensure there is some showing "that the defendants had some knowledge of the nature of the enterprise" so as "to avoid an unjust association of the defendant with the crimes of others." *Christensen*, 828 F.3d at 780 (cleaned up). The court concludes Experian provides sufficient allegations in the First Amended Complaint to achieve that aim. *See id.*

Accordingly, the court concludes Experian adequately alleges that the court has personal jurisdiction over Soffer under the civil RICO statute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                              Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

Finally, contrary to Soffer's arguments, (Soffer MTD at 19-20), the court finds that it has pendent personal jurisdiction over Soffer with respect to Experian's UCL claim because that claim "arises out of a common nucleus of operative facts with" Experian's RICO claims. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.").

In summary, the court determines that it has personal jurisdiction over Soffer, and the court **DENIES** the Soffer MTD insofar as it contends the court lacks personal jurisdiction.

## B.    Sufficiency of Experian's Allegations

The court next turns to the Soffer Motion to Dismiss, Zeig Motion to Dismiss, and Stein Saks Motion to Dismiss, in which Responding Defendants argue that Experian fails to adequately allege the claims against them.  (Soffer MTD at 13-19; Zeig MTD at 6-13; Stein Saks MTD at 11-22.)

### 1.    Legal Standard

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (stating that, in ruling on a Rule 12(b)(6) motion, the court may consider attached exhibits).  To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

*v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

In addition, Rule 9(b) establishes a heightened pleading standard for claims sounding in fraud, requiring a party to "state with particularity the circumstances constituting fraud or mistake" but permits "[m]alice, intent, knowledge and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotation marks omitted). This standard mandates "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation and internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted). "In addition, the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (cleaned up).

Rule 9(b) applies to claims that are "grounded in fraud" or that "sound in fraud," whether or not fraud is a necessary element. *Vess*, 317 F.3d at 1103-04. So "if a plaintiff chooses to allege in the complaint that the defendant has engaged in fraudulent conduct, then the pleading

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:24-cv-01186-FWS-JDE                                Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (cleaned up).  The heightened pleading standard under Rule 9(b) applies to both state and federal claims brought in federal court.  *See Vess*, 317 F.3d at 1103.

## 2.    Analysis

The Amended Complaint asserts three claims: two RICO claims and a UCL claim.  (FAC ¶¶ 420-501.)  Because Experian alleges that a RICO violation constitutes a UCL violation, (*id.* ¶ 493), the sufficiency of Experian's allegations turns on whether Experian has adequately alleged RICO claims.  The RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To sufficiently allege a RICO claim, a plaintiff must plausibly allege the defendants "participate[d] in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity" where the "conduct [was] (5) the proximate cause of harm to the victim."  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  The court considers these elements in turn.

### a.    Conduct

To be liable under Section 1962(c), which makes it unlawful "for any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," 18 U.S.C. § 1962(c), "one must participate in the operation or management of the enterprise itself."  *Reves v. Ernst & Young*, 507 U.S. 170, 172, 185 (1993).  In other words, "simply being involved" in the enterprise is not sufficient to meet the "conduct" requirement of Section 1962(c); rather "there must be an element of direction."  *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).  This element may be met by, for example, "giving, or taking, direction," "occupy[ing] a position in the 'chain of command' . . . through

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

which the affairs of the enterprise are conducted," "becom[ing] a participant in directing the
enterprise's affairs by knowingly implementing decisions of upper management," being
"indispensable to achievement of the enterprise's goal," or having one's "participation [be]
'vital' to the mission's success." *Id.*; *see Tatung Co., Ltd. v. Hsu*, 2015 WL 11072178, at *20
(C.D. Cal. Apr. 23, 2015) (similar).

The Stein Saks Defendants argue Experian fails to adequately allege this element as to
the Stein Saks Defendants. (Stein Saks MTD at 20-21; Reply at 9-10.) The court disagrees.
Indeed, Experian alleges that Stein Saks and Stein devised the fake denial letter scheme in
response to the Supreme Court's *Transunion* decision, drafted fake denial letters and gave the
drafts to individuals from Cornerstone and FRMC to put on their letterhead, drafted and filed
the complaints based on the purported injury the fake denial letters represented, demanded
settlements from Experian based on allegations they knew were false and letters they knew
were fake, and kept proceeds from the scheme. (*See, e.g.*, FAC ¶¶ 2, 9-10, 55-58, 61-62, 89,
110, 129, 138-40, 148, 267-68, 279-81, 414.) Experian further alleges that Saks, Saland, and
Babad knowingly and intentionally filed the fraudulent lawsuits and demanded settlements from
Experian despite knowing that the letters were fake and the lawsuits contained false allegations.
(*See, e.g., id.* ¶¶ 89, 89, 110, 117, 129, 136, 138-40, 148, 156-157, 169, 176, 194, 201-205, 211-
13, 218, 230, 232, 236-39, 242-45, 249-51, 253-545, 259-62, 265, 288-90, 294-96, 302-04, 307-
09, 316-16, 318, 321-23, 329-30, 334-36, 342-43, 347-49, 355-56, 361-62, 368-69, 373-75,
405-06, 410-12, 424.) The court finds Experian's allegations sufficiently allege the Stein Saks
Defendants "g[ave], or t[ook], direction," "occup[ied] a position in the 'chain of command' . . .
through which the affairs of the enterprise [were] conducted," were "participant[s] in directing
the enterprise's affairs by knowingly implementing decisions of upper management," were
"indispensable to achievement of the enterprise's goal," and/or contributed "participation [that
was] 'vital' to the mission's success." *Walter*, 538 F.3d at 1249; *see, e.g., Tatung Co., Ltd.*,
2015 WL 11072178, at *21 (finding this element adequately pleaded when the allegations
reflected the defendants "have each taken steps beyond those of a mere foot-soldier in their
participation in the conduct of the Sham Enterprise," and "[e]ach allegedly knew of the
wrongfulness of the conduct from the inception of the enterprise in 2004/2005, each was

**CIVIL MINUTES – GENERAL**                                                        **13**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

rewarded along the way for his active participation, and each played a central (rather than peripheral) role in the enterprise").

The court also finds unpersuasive the Zeig Defendants' similar argument that Experian fails to allege the "conduct" element against the Zeig Defendants. (Zeig MTD at 7-8.) Experian alleges the Zeig Defendants knowingly and intentionally made false allegations in a sham lawsuit they caused to be filed, and that the Zeig Defendants were an integral part of laundering the proceeds from the scheme, which helped "to conceal the nature of the fraudulent scheme, the fact that the money was illicitly-obtained, and the payment of unlawful referral fees to Zeig Law, Zeig, Monk, and Argy." (FAC ¶¶ 67-72, 144-45, 378-79, 383-85, 424.) The court finds Experian adequately alleges the Zeig Defendants "occup[ied] a position in the 'chain of command' . . . through which the affairs of the enterprise [were] conducted," were "indispensable to achievement of the enterprise's goal," and/or that the Zeig Defendants' "participation [was] 'vital' to the mission's success." *Walter*, 538 F.3d at 1249.

Finally, the court finds Experian adequately alleges that Soffer, who allegedly drafted as directed fake denial letters that were used in fraudulent lawsuits, (*see, e.g.*, FAC ¶¶ 18, 38, 267-87, 424), "t[ook], direction," was a "participant in directing the enterprise's affairs by knowingly implementing decisions of upper management," was "indispensable to achievement of the enterprise's goal," and/or contributed "participation [that was] 'vital' to the mission's success." *Walter*, 538 F.3d at 1249. Accordingly, the court concludes Experian adequately alleges the first element of a RICO claim as to all Responding Defendants.

      **b.**    **Enterprise**

Responding Defendants argue that the Amended Complaint fails to adequately allege the next element, a RICO enterprise. (Stein Saks MTD at 11-12; Dkt. 119 (Stein Saks Reply) at 2-5; Zeig MTD at 6-7; Soffer MTD at 15-16.) The court disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

Experian alleges that "Defendants formed and orchestrated an association-in-fact enterprise." (FAC ¶ 423.) "[A]n association-in-fact enterprise must have at least three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

The court finds Experian adequately alleges an association-in-fact enterprise at this stage of the litigation. Regarding the first feature, Experian alleges "Defendants had the common purpose of carrying out separate but related fraudulent schemes—the Cornerstone Scheme and the FRMC Scheme—to defraud Experian by inducing it to pay settlements and incur substantial legal fees to defend sham lawsuits brought by Stein Saks and Zeig Law, though their respective agents, based on fake, false, and fraudulent credit denial letters." (FAC ¶ 423.)

Regarding the second feature, the court previously found that Experian had not adequately alleged relationships among those associated with the enterprise. (Prior Order at 20-21.) The second feature involves "both interpersonal relationships and a common interest." *Boyle*, 556 U.S. at 946. Using the analogy of a hub-and-spoke structure, it is not enough to "allege[] bilateral agreements" between the hub and the spokes, but rather a plaintiff must "plead facts plausibly suggesting" the existence of a "unifying rim" or "wheel." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010). While each conspirator need not know all of the details of the conspiracy, or "be aware of the specific identity or activity of the other" co-conspirators, the plaintiff must adequately allege that the spokes knew that other spokes existed, and thereby "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *Christensen*, 828 F.3d at 781; *see Fernandez*, 388 F.3d at 1230; *Butcher's Union*, 788 F.2d at 539. As explained above in the context of personal jurisdiction over Soffer, the court finds that Experian has now adequately alleged that the spokes—individuals drafting fake mortgage denial letters such as Soffer, Argy, and Monk— knew that there were other spokes, i.e. other people drafting fake mortgage denial letters. (*See, e.g.*, FAC ¶¶ 267-70, 276-77, 282, 424.) Taking Experian's allegations as true, and drawing all inferences in Experian's favor, the court finds Experian's allegations sufficiently support the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                              Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

relationships necessary to adequately allege an association-in-fact enterprise. *See N. Star Gas Co. v. Pac. Gas & Elec. Co.*, 2016 WL 5358590, at *19 (N.D. Cal. Sept. 26, 2016) (finding allegations regarding coordination sufficient even though "somewhat sparse" because the allegations adequately reflected "that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role").

Finally, the court finds Experian adequately alleges the third feature of sufficient longevity. *See Boyle*, 556 U.S. at 946; (FAC ¶¶ 42, 265 (indicating the Cornerstone scheme began in early 2018 and the FRMC scheme began in late 2022)).

### c.    Pattern of Racketeering Activity

"Racketeering activity, the fourth element, requires predicate acts, which in this case are alleged to be mail and wire fraud under 18 U.S.C. §§ 1341 and 1343," *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014), in addition to obstruction of justice, extortion, and witness tampering. (FAC ¶ 476.) A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

Contrary to Responding Defendants' arguments, (*see, e.g.*, Stein Saks MTD at 15-20; Zeig MTD at 8-9; Soffer MTD at 17-19), the court finds at this stage of the proceedings that Experian adequately alleges a pattern of racketeering activity. *See* 18 U.S.C. § 1961(5); *Eclectic Props.*, 751 F.3d at 997.

### d.    Causing Injury to Business or Property

Finally, a plaintiff must adequately allege that the challenged conduct is "the proximate cause of harm to the victim." *Eclectic Props.*, 751 F.3d at 997 (numbering removed); *see also Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 363 (9th Cir. 2005) ("It is well settled that, to maintain a civil RICO claim predicated on mail [or wire] fraud, a plaintiff must show that the defendants' alleged misconduct proximately caused the injury."). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

RICO statute states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor."  18 U.S.C. § 1964(c).

Responding Defendants argue Experian fails to allege a sufficient causal relationship between Responding Defendants' alleged actions and Experian's alleged damages.  (Stein Saks Mot. at 15; Stein Saks Reply at 5-8; Zeig MTD at 9-10; Soffer MTD at 19.)  The court is not persuaded.  At this stage of the proceedings, taking Experian's allegations as true and drawing all reasonable inferences in Experian's favor, the court finds Experian has adequately alleged that Responding Defendants' conduct was the proximate cause of Experian's injury, including because Experian alleges that Experian had to spend money defending and settling meritless, fraudulent lawsuits due to the false credit denial letter scheme.  (*See, e.g.*, FAC ¶¶ 5, 436, 487); *see Living Designs*, 431 F.3d at 364 (reversing district court's determination that the plaintiffs' allegations "fail[ed] to allege a cognizable RICO injury and therefore fail as a matter of law").

In summary, the court finds Experian adequately alleges a Section 1962(c) claim at this stage.[2]  Responding Defendants' challenges to Experian's Section 1962(d) conspiracy claim and UCL claim are based on their arguments that Experian's 1962(c) claim is not adequately alleged.  (Stein Saks MTD at 22; Zeig MTD at 12-13; Soffer MTD at 20.)  Because the court determines the Section 1962(c) claim is adequately alleged, the court also rejects Responding Defendants' challenges to Experian's other claims at this stage of the litigation.  The court therefore **DENIES** the Soffer MTD, the Zeig MTD, and the Stein Saks MTD.

---

[2] The Zeig Defendants also argue that "Experian's complaint is barred *in toto* by the *Noerr-Pennington* doctrine," while "acknowledg[ing] that the Court has previously rejected this argument."  (Zeig MTD at 10 & n.6.)  Because the Zeig Defendants "reassert[]" this argument solely "to protect the record for appellate review and to obviate any argument that the Zeig Defendants waived/abandoned/forfeited it by not raising it in respect to the operative pleading," the court does not readdress the issue here.  (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                         Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

## IV.  Stein Saks Fee Motion [97]

In the Prior Order, the court granted the Stein Saks Defendants' anti-SLAPP motion as to
the Complaint (the "Prior Anti-SLAPP Motion") "insofar as [the Stein Saks Defendants sought]
to strike Experian's fraud, abuse of process, and unjust enrichment claims," and denied the
Prior Anti-SLAPP Motion "insofar as it s[ought] to strike Experian's UCL claim."  (Prior Order
at 15.)  After the Prior Order, Experian filed the Amended Complaint, which did not include
fraud, abuse of process, or unjust enrichment claims.  (*Compare* Dkt. 1 (Complaint) *with* FAC;
*see* Dkt. 111 ("Opp. to Stein Saks Fee Mot.") at 1-2 (Experian noting that "Experian did not
attempt to replead the three state law claims that the Court found were subject to the anti-
SLAPP statute").)

In the Stein Saks Fee Motion, Stein Saks seeks fees for prevailing on the Prior Anti-
SLAPP Motion.  (*See generally* Stein Saks Fee Mot.)  The court considers (1) whether to grant
fees, and, after resolving this question in the affirmative, (2) what amount of fees is appropriate
to award.

### A. Whether to Award Fees

California's anti-SLAPP statute provides that "a prevailing defendant on a special motion
to strike shall be entitled to recover his or her attorney's fees and costs."  Cal. Civ. Proc. Code
§ 425.16(c); *see Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th
Cir. 2004) ("We have previously confirmed that defendants sued in federal courts can bring
anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when
they prevail.").

In this case, Experian argues that fees should not be awarded because "[p]ursuant to
*Verizon* [*Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081 (9th Cir. 2004)], courts within this
District and Circuit find that anti-SLAPP remedies, such as attorney's fees, are not available

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                  Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

when the anti-SLAPP motion was brought against the plaintiff's initial complaint" and leave to amend was granted.  (Mot. at 2.)  The court is not persuaded.

In the cases Experian cites, courts denied fee motions where leave to amend was granted because, under the circumstances presented in those cases, leave to amend meant the claims were not dismissed with a sufficient level of finality to make fees appropriate at that time.  *See Big3 LLC v. Al-Rumaihi*, 2018 WL 11470406, at \*8 (C.D. Cal. Nov. 29, 2018) (denying *without prejudice* anti-SLAPP fee request, determining "Moving Defendants are not entitled to attorneys' fees under the Anti-SLAPP statute **at this time**") (emphasis added); *Masimo Corp. v. Mindray DS USA, Inc.*, 2014 WL 12597114, at \*2 (C.D. Cal. Jan. 2, 2014) ("However, because the Court granted Shenzhen Mindray leave to amend, its order was not the '**final word**' on the applicability of the statute.") (emphasis added); *Peak Health Ctr. v. Dorfman*, 2019 WL 5893188, at \*12 (N.D. Cal. Nov. 12, 2019) (Accordingly, the Court denies Mr. Dorfman's anti-SLAPP motion to strike and request for fees and costs without prejudice **at this time**.") (emphasis added); *see also Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC*, 2017 WL 10591754, at \*19 (C.D. Cal. July 7, 2017) (granting motion to strike "without prejudice to the filing of an amended complaint that cures the issues identified in this Order" and finding awarding fees inappropriate "where a court concludes that leave to amend would not be futile because viable claims could be asserted" because, among other reasons, "[i]t would be inappropriate to impose what would be, in effect, a financial charge on a party as a condition to exercising what a court has determined to be its right to amend").

Here, in contrast, the court finds a sufficient level of finality exists, and that Stein Saks was the prevailing party on the Prior Anti-SLAPP Motion.  *Contrast Masimo Corp.*, 2014 WL 12597114, at \*2 ("Since then, Shenzhen Mindray's counterclaims have been amended—including a reassertion of the tenth counterclaim—meaning that the litigation is in substantially no different a position now than it was prior to Masimo's motion. Under such circumstances, the practical benefit of Masimo's motion was largely insignificant, and therefore prevents a finding that it is a 'prevailing party' for purposes of the anti-SLAPP statute.").  "The purpose of the anti-SLAPP statute is to discourage the litigation of claims that lack merit and have a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                         Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

chilling effect on the exercise of Constitutional rights." *Hu*, 2017 WL 10591754, at *19.
Contrary to Experian's arguments, the court finds that it is now adequately clear that the
granting in part of the Prior Anti-SLAPP Motion was not a "technical victory," but rather a
complete victory on those claims. (Opp. to Stein Saks Fee Mot. at 4); *see Vargas v. Berkeley
Unified Sch. Dist.*, 2017 WL 5991857, at *1 (N.D. Cal. Dec. 4, 2017) ("Here, I ruled on
defendants' anti-SLAPP motion prior to receiving the amended complaint. Sacks was the
prevailing party. That I granted leave to amend does not negate that defendants were successful
on their anti-SLAPP motion. Plaintiffs' amendment did not cure the problem that Sacks's
conduct arose out of protected activity and that the litigation privilege applied to bar plaintiffs'
state law claims against her. Sacks is entitled to attorneys' fees."); *cf. Brown v. Elec. Arts, Inc.*,
722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010) ("The crucial question is one of practicality; did
anything of substance (technical victories notwithstanding) change in the posture of the case
and the claims being lodged against the defendant after it brought the special motion to strike
than were in existence beforehand."). Accordingly, the court concludes an award of fees is
appropriate.

**B.    What Amount of Fees to Award**

Although anti-SLAPP fees are "mandatory," courts have broad discretion in determining
what amount of attorney fees and costs is reasonable. *Ketchum v. Moses*, 24 Cal. 4th 1122,
1136, 1140-42 (2001); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777,
785 (1996). A prevailing defendant may recover fees and costs reasonably spent on the motion
to strike, including fees spent seeking fees, but may not recover all fees incurred in the case.
*Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1324 (2008) ("The anti-SLAPP statute's
fee provision applies only to the motion to strike, and not to the entire action.") (cleaned up).
Courts generally begin with the "lodestar," or the number of hours reasonably expended
multiplied by a reasonable hourly rate. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149
n.4 (9th Cir. 2001); *Ketchum*, 24 Cal. 4th at 1131, 1136; *PLCM Grp., Inc. v. Drexler*, 22 Cal.
4th 1084, 1095 (2000). The lodestar figure may then be adjusted after considering case-specific
circumstances to fix the fee at the fair market value for the legal services provided. *Ketchum*,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                            Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

24 Cal. 4th at 1132; *PLCM Grp.*, 22 Cal. 4th at 1095.  The party seeking fees bears the burden of "submitting evidence of the hours worked," the rate charged, and that "the rate charged is in line with the prevailing marking rate of the relevant community."  *Carson v. Billings Pol. Dep't.*, 470 F.3d 889, 891 (9th Cir. 2006).

In the Stein Saks Fee Motion, Stein Saks seeks a total of $39,982.50 in fees.  (Stein Saks Fee Mot. at 10; Dkt. 119 (Reply in Support of Stein Saks Fee Mot.) at 8; Dkt. 98 (Declaration of David D. Samani, "Samani Decl.") ¶ 10.)  This request is based on 17.2 hours of work at a rate of $725.00 per hour for partner David D. Samani ("Samani") and 51.2 hours of work at a rate of $400.00 per hour for associate Ryan A. Drossel ("Drossel") for the Prior Anti-SLAPP Motion, and 9.7 additional hours for Samani to prepare the briefing on the Stein Saks Fee Motion.  (Samani Decl. ¶¶ 10-11.)  The court considers what hourly rate is reasonable and then considers what number of hours was reasonably spent.

        **1.       Hourly Rate**

To determine a reasonable hourly rate, courts consider factors including the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained.  *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015).  Courts also are guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); *see Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005).  They may "rely[ ] on their own knowledge of customary rates and their experience concerning reasonable and proper fees."  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

**CIVIL MINUTES – GENERAL**                                                21

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                                    Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

### a.    Samani

Samani, a partner at Lewis Brisbois Bisgaard & Smith LLP, is "lead counsel for the Stein Saks Defendants." (Samani Decl. ¶¶ 1-3.) Samani "was responsible for overseeing all of the briefing throughout this action, including the preparation of the" Prior Anti-SLAPP Motion. (*Id.* ¶ 3.) Samani graduated from Cornell Law School in 2011 and was admitted to the California bar that same year. (*Id.* ¶ 4.) "Immediately after taking the bar exam, [Samani] served a six-month term as a Graduate Fellow to the Honorable James A. Steele (now retired), then a judge of the Los Angeles Superior Court." (*Id.*) Samani "ha[s] more than 12 years of experience in litigating cases in California, and [he] dedicate[s] a substantial amount of my practice to defending professionals, with a particular focus on the defense of lawyers." (*Id.*) The Stein Saks Defendants request the court award an hourly rate of $725.00 for Samani's work. (*Id.* ¶ 10.)

The court finds that the requested hourly rate of $725.00 for Samani is reasonable. This case, and the Prior Anti-SLAPP Motion in particular, involves novel and complex issues, and the quality of representation and the results obtained support the requested hourly rate. *See Kilopass Tech.*, 82 F. Supp. 3d at 1170 (N.D. Cal. 2015). The court further finds, based on the evidence presented and the court's knowledge of customary rates and experience concerning reasonable and proper fees, that "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation" supports the requested hourly rate for Samani. *Ingram*, 647 F.3d at 928; *Trevino*, 99 F.3d at 925.

Experian argues that $725.00 is an excessive hourly rate for Samani, stating that "in a nearly identical motion for attorneys' fees under the anti-SLAPP statute," Samani "represented to this court less than one year ago 'that the hourly rate of $525 is reasonable for Mr. Samani,' noting that he had previously been awarded this hourly rate by this Court." (Opp. to Stein Saks Fee Mot. at 9 (citing *Engineer.AI Corp. v. Barry B. Kaufman, et al.*, No. 2:22-cv-03552, Dkt. 67 at 8 (Mar. 27, 2024)).) "[A]n attorney's prior fee award may bear on the selection of a reasonable fee in a later case, particularly when the award was for work performed in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                               Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

relevant community." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). However, the court is not persuaded that the prior request presents adequate countervailing evidence to undermine the court's determination that $725.00 is a reasonable hourly rate for Samani's work on the Prior Anti-SLAPP Motion in this case, especially given the differences between the cited *Engineer.AI Corp.* case and this case and the time that has passed between the prior request. *See Gates*, 987 F.2d at 1405. Accordingly, the court will award the requested $725.00 hourly rate for Samani's work.

  **b. Drossel**

  Drossel, an associate at Lewis Brisbois Bisgaard & Smith LLP, was responsible for preparing initial drafts for all of the briefing submitted in connection with the" Prior Anti-SLAPP Motion. (Dkt. 97-1 (Declaration of Ryan Drossel, "Drossel Decl.") ¶¶ 1, 3; *see also* Samani Decl. ¶ 3 (stating that Drossel "served as the primary drafter of" that motion).) Drossel "was admitted to the California bar in 2020 after graduating from Loyola Law School," and "dedicate[s] a substantial amount of [his] practice to defending professionals." (Drossel Decl. ¶ 4.) The Stein Saks Defendants request the court award an hourly rate of $400.00 for Drossel's work.

  The court finds that the requested hourly rate of $400.00 for Drossel's work is reasonable and supported by, among other factors, the fact that this case involves novel and complex issues, the quality of representation, the results obtained, and the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *See Ingram*, 647 F.3d at 928; *Trevino*, 99 F.3d at 925.

  **2. Hours Spent**

  The court turns to whether the billed hours are reasonable. Reasonable hours expended are hours that are not "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted). "[T]he fee applicant bears the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                          Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

burden of documenting the appropriate hours expended in the litigation and must submit
evidence in support of th[e] hours worked." *Gates*, 987 F.2d at 1397-98.  However, "[b]y and
large, the court should defer to the winning lawyer's professional judgment as to how much
time he was required to spend on the case; after all, he won, and might not have, had he been
more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

As noted above, Stein Saks seeks reimbursement for 17.2 hours Samani spent and 51.2
hours Drossel spent on the Prior Anti-SLAPP Motion, and an additional 9.7 hours Samani spent
on the Stein Saks Fee Motion.  (Samani Decl. ¶¶ 10-11.)  In support, Stein Saks submits
declarations from Samani and Drossel, and billing records reflecting the time spent on the Prior
Anti-SLAPP Motion.  (Samani Decl.; Drossel Decl.; Dkt. 98-1 ("Billing Records").)  The court
finds that the hours spent on the Prior Anti-SLAPP Motion are reasonable and will award them
with the following two exceptions.

First, the court considers the fact that the Stein Saks Defendants only partially prevailed
on the Prior Anti-SLAPP Motion.  "An award of attorney fees to a partially prevailing
defendant under section 425.16, subdivision (c) [] involves competing public policies: (1) the
public policy to discourage meritless SLAPP claims by compelling a SLAPP plaintiff to bear a
defendant's litigation costs incurred to eliminate the claim from the lawsuit; and (2) the public
policy to provide a plaintiff who has facially valid claims to exercise his or her constitutional
petition rights by filing a complaint and litigating those claims in court." *Mann v. Quality Old
Time Serv., Inc.*, 139 Cal. App. 4th 328, 344 (2006).  "[W]hen a defendant is only partially
successful in challenging portions of the complaint, these policies to ensure prompt and
meaningful redress for defendants subject to SLAPP suits must be balanced with the *plaintiff's*
constitutional right to petition for redress of his or her claims," and "[t]he fees awarded to a
defendant who was only partially successful on an anti-SLAPP motion should be commensurate
with the extent to which the motion changed the nature and character of the lawsuit in a
practical way." *Id.* at 345.  In this case, the court finds the fact that the Prior Anti-SLAPP
Motion was granted as to the fraud, abuse of process, and unjust enrichment claims was a
meaningful and compensable victory; however, the court is also somewhat persuaded by

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                              Date: April 18, 2025
Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

Experian's argument that "[w]hile the stricken state law claims involved distinct elements, the
factual basis for Experian's suit remains unchanged, and the burden of litigation is, at best, only
negligibly reduced" such that "[a]warding the Stein Saks Defendants complete reimbursement
for all fees expended on their special motion to strike would be improper on this record."  (Opp.
to Stein Saks Fee Mot. at 7 (citing *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D.
Cal. 2010)).)  Based on these "competing public policies" and their application in this case, and
in the court's discretion and judgment based on its familiarity with the facts and particular
considerations involved in this case, the court determines it is appropriate to decrease the fees
sought regarding the Prior Motion to Strike by fifteen percent.  *See Mann*, 139 Cal. App. 4th at
344; *cf. Moreno*, 534 F.3d at 1112 ("Nevertheless, the district court can impose a small
reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and
without a more specific explanation.").

        Second, the hearing on the Prior Anti-SLAPP Motion took place during the same hearing
in which the court considered motions to dismiss and a motion to stay discovery.  (*See* Dkt. 88
(Minutes of Motions Hearing).)  Experian correctly notes that Samani's time entries to prepare
for, travel to, and attend the hearing, totaling 10 hours, (understandably) do not separate time
spent in relation to the portion of the hearing devoted to motions other than the anti-SLAPP
motion, which time is not compensable at this stage.  (Opp. to Stein Saks Fee Mot. at 9-10;
Billing Records at 4.)  To account for this, the court will reduce the hours reimbursed for
Samani's time preparing for, traveling to, and attending the prior hearing by 5 hours.

        **3.    Summary**

        In summary, the court finds hourly rates of $725.00 per hour for Samani and $400.00 per
hour for Drossel to be reasonable in this case.  As explained in Section IV.B.2., *supra*, the court
deducts 5 hours from the 17.2 hours of Samani worked on the Prior Anti-SLAPP Motion, and
awards the full 51.2 hours of work for Drossel's work on the Prior Anti-SLAPP Motion.
Awarding $725.00 per hour for 12.2 hours of Samani's work, plus $400.00 per hour for 51.2
hours of Drossel's work, and reducing the total amount of fees awarded on the Prior Anti-

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01186-FWS-JDE                           Date: April 18, 2025

Title: Experian Information Solutions Inc. v. Stein Saks, PLLC, *et al.*

SLAPP Motion by 15% to account for the Stein Saks Defendants' limited success on that motion, results in a fee award of $24,926.25. The court also awards the 9.7 hours Samani seeks for preparing the briefing on the Stein Saks Fee Motion, at a rate of $725.00 per hour, for an additional award of $7,032.50. Accordingly, the court awards the Stein Saks Defendants **$31,958.75** in fees.

**V.     Disposition**

For the reasons set forth above, the court **DENIES** the Zeig Motion to Strike, the Stein Saks Motion to Dismiss, the Zeig Motion to Dismiss, and the Soffer Motion to Dismiss. The court **ORDERS** Responding Defendants to file an answer to the Amended Complaint on or before **May 9, 2025.**

The court **GRANTS IN SUBSTANTIAL PART** the Stein Saks Fee Motion, and awards **$31,958.75** in fees.