**GESSIN SCHACHTER LLP**
Jesse Gessin (SBN 263889)
Jesse@gessinschachter.com
Michael Schachter (SBN 298610)
Michael@gessinschachter.com
Mailing - 806 E. Avenida Pico, Suite I-291
San Clemente, CA 92673
Physical – 910 South El Camino Real, Suite 201
San Clemente, CA 92672
Tel.: (949) 328-6629

**MARGULIS GELFAND DIRUZZO & LAMBSON**
Joseph A. DiRuzzo, III *(Pro Hac Vice)*
Fla. Bar No. 0619175
jd@margulisgelfand.com
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
Tel.: (954) 615-1676
Facsimile: (954) 827-0340

*Counsel for Defendants JUSTIN ZEIG and the ZEIG LAW FIRM, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ZEIG LAW FIRM, LLC, JUSTIN ZEIG et al.,<br><br>Defendants. | Case No. 8:24-cv-01186-FWS-JDE<br><br>**NOTICE OF MOTION AND MOTION TO SEVER AND STAY CLAIMS AGAINST THE ZEIG DEFENDANTS; REQUEST TO PROCEED WITH ADR BEFORE THE MAGISTRATE JUDGE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Hon. Fred W. Slaughter<br><br>Date: October 22, 2026<br>Time: 10:00 a.m.<br>Courtroom: 10D |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 22, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Fred W. Slaughter at the United States District Court for the Central District of California, 411 West 4th Street, Santa Ana, California, Defendants Zeig Law Firm, LLC and Justin Zeig (collectively, the "Zeig Defendants") will and hereby do move this Court for an order: (1) severing, under Federal Rule of Civil Procedure 21, all claims asserted against the Zeig Defendants by Plaintiff Experian Information Solutions, Inc. ("Experian"); and (2) staying the severed claims pending final resolution of *General Star Indemnity Co. v. Zeig Law Firm, LLC, Justin E. Zeig, and Experian Information Solutions, Inc.*, No. 0:26-cv-61549-AHS (S.D. Fla.) (the "Coverage Action"), or until further order of this Court, on such just terms, including periodic joint status reports, as the Court deems appropriate.

The Zeig Defendants further request, for cost purposes, that the parties be permitted to appear before Magistrate Judge Early for a settlement conference, rather than private mediation.

This motion is made upon this notice, the attached memorandum of points and authorities, the declaration of Jesse Gessin ("Gessin Decl.") and the exhibits thereto, the concurrently filed Request for Judicial Notice, all records, papers, and pleadings on file in this action, and all further evidence as may be presented before or after the filing of the motion.

This motion is made following the conference of counsel required by Local Rule 7-3. On August 24, 2026, counsel for the Zeig Defendants sent counsel for Experian a detailed letter setting forth the grounds for this motion and the authorities supporting it. The conference of counsel took place on September 1, 2026. The parties were unable to reach a resolution, and this motion followed. Gessin Decl. ¶¶ 9-10.

## STATEMENT OF RELIEF SOUGHT

As set forth in more detail in the Memorandum of Points and Authorities below, the Zeig Defendants bring this motion because their professional liability insurer, General Star Indemnity Company ("General Star"), has sued them in the Coverage

Action, seeking to terminate the funding of their defense in this case, to escape any duty to indemnify, and to recover from the Zeig Defendants, jointly and severally, every defense dollar it has advanced. The Coverage Action turns on the same facts as Experian's claims here, and its outcome will determine whether the Zeig Defendants have counsel at all. The Zeig Defendants therefore respectfully request that the Court sever the claims against them under Rule 21 and stay the severed claims pending final resolution of the Coverage Action or, at a minimum, pending the Southern District of Florida's adjudication of General Star's duty to defend, on such just terms as the Court deems appropriate.

Mr. Zeig has moved for a stay of the Coverage Action. That motion is pending with no hearing date set on the docket. If the stay is granted, this Motion will be moot.

Dated: September 18, 2026 **GESSIN SCHACHTER LLP**

By: */s/ Jesse Gessin*

Jesse Gessin
910 South El Camino Real, Suite 201
San Clemente, California 92672
Tel: (949) 328-6629
Jesse@gessinschachter.com

*Counsel for Defendants ZEIG LAW FIRM, LLC, and JUSTIN ZEIG*

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. The Underlying Action ..... 3

B. The Coverage Action ..... 4

C. Experian Is Defending the Coverage Action and Has Pleaded That General Star Must Stay in the Defense ..... 4

D. The Zeig Defendants Cannot Afford Counsel and Are Proceeding Pro Se in the Coverage Action ..... 5

E. Meet and Confer ..... 6

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. Each Landis Factor Favors Staying the Claims Against the Zeig Defendants ..... 7

1. A Stay Will Not Damage Experian ..... 7

2. Absent a Stay, the Zeig Defendants Face Severe and Compounding Hardship ..... 8

3. A Stay Serves the Orderly Course of Justice ..... 10

B. Without a Severance and Stay, This Case Will Inevitably Be Sidetracked by the Forced Withdrawal of Counsel ..... 11

C. The Equities Are Sharpened by the Nature of Experian's Claim: Negligence Masquerading as RICO ..... 12

D. Severance Under Rule 21 Eliminates Any Conceivable Prejudice to Experian ..... 13

V. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases**

*Clear Blue Specialty Ins. Co. v. Ozy Media, Inc.*
669 F. Supp. 3d 907 (N.D. Cal. 2023) ........ 9, 10, 11

*CMAX, Inc. v. Hall*
300 F.2d 265 (9th Cir. 1962) ........ 6, 7

*Doe v. Interinsurance Exch. of the Auto. Club*
2025 U.S. Dist. LEXIS 163880 (C.D. Cal. Aug. 21, 2025) ........ 12

*In re WorldCom, Inc. Sec. Litig.*
354 F. Supp. 2d 455 (S.D.N.Y. 2005) ........ 10

*Landis v. N. Am. Co.*
299 U.S. 248 (1936) ........ 6

*Leyva v. Certified Grocers of Cal., Ltd.*
593 F.2d 857 (9th Cir. 1979) ........ 6, 10

*Lockyer v. Mirant Corp.*
398 F.3d 1098 (9th Cir. 2005) ........ 6, 7, 8, 10

*Montrose Chem. Corp. v. Superior Court*
25 Cal. App. 4th 902 (1994) ........ 9

*RLI Ins. Co. v. Ace Am. Ins. Co.*
2020 U.S. Dist. LEXIS 50004 (N.D. Cal. Mar. 20, 2020) ........ 7, 9

*Rowland v. California Men's Colony*
506 U.S. 194 (1993) ........ 2, 11

*Trees v. SEIU Local 503*
574 F. Supp. 3d 856 (D. Or. 2021) ........ 9, 10

*Tyler v. Travelers Commercial Insurance Co.*
499 F. Supp. 3d 693 (N.D. Cal. 2020) ........ 7

*Voyager Indem. Ins. Co. v. Goldsmith*
733 F. Supp. 3d 905 (C.D. Cal. 2024) ........ 9

*Zurich Am. Ins. Co. v. Omnicell, Inc.*
2019 WL 570760 (N.D. Cal. Feb. 12, 2019) .......... 9

**Rules**

C.D. Cal. L.R. 83-2.2.2 .......... 2, 11
C.D. Cal. L.R. 83-2.3.2 .......... 11
Cal. R. Prof. Conduct 1.16(b)(5) .......... 11
Fed. R. Civ. P. 21 .......... 6, 13

**MEMORANDUM OF POINTS & AUTHORITIES**

Defendants Zeig Law Firm, LLC, and Justin Zeig (the "Zeig Defendants") submit this memorandum supporting their motion to sever the claims asserted against them by Plaintiff Experian Information Solutions, Inc. ("Plaintiff" or "Experian") under Federal Rule of Civil Procedure 21 and to stay the severed claims pending final resolution of the Coverage Action (the "Motion").

## I. INTRODUCTION

Experian filed this case against the Zeig Defendants to discover evidence for a criminal referral of the Stein Saks Defendants (and probably Mr. Zeig too). After litigating several cases in multiple jurisdictions, it still lacks sufficient evidence to convince the government to bring charges, yet Experian marches on, at a cost of millions of dollars in legal fees. This case is not about money damages, and it never will be. The Zeig Defendants have a million-dollar "burning" insurance policy, and nothing else. Experian could not care less about the policy. It wants what it cannot have: evidence of crimes that the record does not support. And so, we all must march in Experian's parade.

This Motion seeks narrow, practical relief designed to keep this case on track. On May 26, 2026, General Star Indemnity Company ("General Star"), the professional liability insurer that has funded the Zeig Defendants' defense of this action from its inception, sued the Zeig Defendants and Experian in the United States District Court for the Southern District of Florida. General Star asks that court to declare that it owes the Zeig Defendants no defense and no indemnity, that it may cease paying defense costs immediately, and that the Zeig Defendants must repay, jointly and severally, every defense dollar General Star has advanced. Gessin Decl., Ex. A ¶¶ 25-39. The exclusions on which General Star relies, for "dishonest, fraudulent, criminal, knowingly wrongful, willful, or intentional acts," willful violations of law "including RICO," misappropriation, violations of the FCRA, and improper personal profit, track Experian's allegations in this case. *Id.* ¶ 10. The two

actions accordingly turn on the same decisive question: whether the Zeig Defendants knowingly participated in the enterprise Experian alleges.

Remarkably, every party with a stake in the question has told the Florida court, in the forum of its choosing, that the defense of this case must continue. Mr. Zeig, who cannot afford separate coverage counsel and is defending the Coverage Action pro se, has moved the Florida court to stay the Coverage Action and to require General Star to continue funding the defense of this action. Gessin Decl., Ex. E. And Experian itself, a named, soon-to-be-dismissed defendant in the Coverage Action that is defending it through the same law firm appearing for it here, has pleaded that General Star "has waived any right to deny coverage, withdraw from the defense of the Zeig Defendants, or seek reimbursement of defense costs," and is equitably estopped from doing so. Gessin Decl., Ex. B at 8-9. Experian is right about that. But Experian cannot tell the Florida court that the carrier must remain in the defense while telling this Court that the merits should race forward as though the defense were secure. General Star has filed to dismiss Experian from the Coverage Action without prejudice, with Experian, by stipulation, to remain "bound by any judgment on the merits concerning coverage for the underlying lawsuit." Gessin Decl. ¶ 12, Ex. G. Party or not, Experian has agreed that the Coverage Action's judgment will bind it.

If the claims against the Zeig Defendants are not severed and stayed, one of two things will happen. Either the Florida court preserves the defense funding[1], or the funding terminates mid-litigation. In the latter event, the Zeig Defendants cannot afford to pay counsel. Gessin Decl. ¶ 5. Undersigned counsel would face clients unable to perform their obligations under the engagement agreement, the threat of nonpayment alone being an anticipatory breach of that agreement, and would be compelled to move to withdraw before coverage is resolved. Zeig Law Firm, LLC, a defunct entity, cannot appear except through licensed counsel, *see Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993); L.R. 83-2.2.2, and Mr. Zeig

[1] Indeed, the Zeig Defendants' pending motion (Gessin Decl., Ex. E) may be granted before the Court hears this Motion, thereby mooting it.

would be left to face a sprawling RICO case pro se from Florida. Withdrawal motions, searches for successor counsel, inevitable discovery motions (Mr. Zeig cannot fund discovery vendors), and, almost certainly, continuance requests would follow. If the Coverage Action is not stayed, then without a severance and stay this case will inevitably be sidetracked. The only question is whether that happens in an orderly fashion now or chaotically later.

The equities are sharpened by the character of Experian's claim. Discovery has produced scant evidence that the Zeig Defendants were knowing participants in any RICO enterprise. What the discovery has shown, at most, is a lawyer who failed to detect fabricated documents, which is professional negligence, not racketeering. This is a negligence claim by a third party masquerading as a RICO claim, and it is precisely that treble-damages label, not the underlying conduct, that manufactured the present coverage crisis. Experian should not be permitted to plead the Zeig Defendants out of their insurance coverage and then insist that the resulting emergency have no effect on these proceedings.

## II. BACKGROUND

### A. The Underlying Action

Experian's operative amended complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.*, and California's Unfair Competition Law against nine defendants. Experian has since voluntarily dismissed one of the nine, Chesky Monk, without prejudice. Dkt. 142. As to the Zeig Defendants, Experian alleges participation in an "association-in-fact enterprise" with another law firm to settle purportedly sham FCRA lawsuits, the use of fabricated credit denial letters in those suits, and transfers of settlement proceeds through the Zeig Firm's client trust account. Dkt. 91. On April 18, 2025, the court denied the Zeig Defendants' motions to dismiss and to strike the amended complaint. Dkt. 122. The Zeig Defendants answered on May 30, 2025, denying the material allegations. Dkt. 133. Under the operative scheduling order, initial expert disclosures are due October

15, 2026; the non-expert and expert discovery cut-offs fall on December 22, 2026; the private mediation must be completed by January 15, 2027; and jury trial is set for July 20, 2027. Dkts. 163, 175. For cost purposes, the Zeig Defendants request, by this Motion, a settlement conference with Magistrate Judge Early instead of private mediation.

**B. <u>The Coverage Action</u>**

On May 26, 2026, General Star filed the Coverage Action against the Zeig Defendants and Experian. Gessin Decl., Ex. A. General Star alleges that it issued Lawyers Professional Liability Policy No. IJA402693 to the Firm and that it has been defending the Zeig Defendants in this case "under a full reservation of rights, including the right to deny coverage and recoup defense expenses." *Id.* ¶ 1. The complaint pleads three counts: (1) a declaration that General Star owes no duty to defend and "may cease paying defense costs" (*id.* ¶¶ 25-29); (2) a declaration that General Star owes no duty to indemnify (*id.* ¶¶ 30-34); and (3) a judgment that the Zeig Defendants are jointly and severally liable to reimburse all defense expenses General Star has paid, and continues to pay, on their behalf (*id.* ¶¶ 35-39). The exclusions General Star invokes turn on whether the claims here "aris[e] out of" dishonest, fraudulent, criminal, knowingly wrongful, willful, or intentional acts; willful or knowing violations of law, including RICO; conversion or misappropriation; violations of the Fair Credit Reporting Act; and gain of personal profit or advantage to which an insured is not legally entitled. *Id.* ¶ 10. Those are the very issues a jury in this Court will try.

**C. <u>Experian Is Defending the Coverage Action and Has Pleaded That General Star Must Stay in the Defense</u>**

Experian answered the Coverage Action on July 1, 2026, through Goodwin Procter LLP, the same firm that represents it here. Gessin Decl., Ex. B. Among its affirmative defenses, Experian pleads that General Star "has waived any right to deny coverage, withdraw from the defense of the Zeig Defendants, or seek reimbursement

of defense costs" (Fourth Affirmative Defense), and that General Star "is equitably estopped from denying coverage and from seeking reimbursement of defense costs paid on behalf of the Zeig Defendants" (Fifth Affirmative Defense). *Id.* at 8-9. In other words, Experian has told the Florida court, in a signed pleading, that the carrier must continue paying for the Zeig Defendants' defense of this very case.

On September 4, 2026, counsel for General Star advised Mr. Zeig and Experian's counsel by email that General Star intends to dismiss Experian from the Coverage Action without prejudice. Gessin Decl. ¶ 12, Ex. G. General Star has since done exactly that. According to General Star, Experian was named "solely so that the coverage determination would bind it as the underlying claimant," and, consistent with an executed Stipulation to Be Bound by Judgment, Experian "would be dismissed while remaining bound by any judgment on the merits concerning coverage for the underlying lawsuit." *Id.* Whether or not Experian remains a party in Florida, it has agreed that the Coverage Action's judgment will bind it as the claimant in this case.

The timing of the September 4 email is telling. On September 1, the parties met and conferred about this Motion; three days later, Experian and General Star agreed to dismiss Experian from the Coverage Action. The inference is that Experian understands that the positions it took in the Coverage Action support this Motion and thereby undermine its opposition to it.

**D. <u>The Zeig Defendants Cannot Afford Counsel and Are Proceeding Pro Se in the Coverage Action</u>**

The Zeig Defendants cannot afford to retain counsel with their own funds. Gessin Decl. ¶ 5. In the Coverage Action, Mr. Zeig is proceeding pro se in his individual capacity: he answered General Star's complaint on September 1, 2026 (Gessin Decl., Ex. C), and the Firm, a defunct entity that cannot appear pro se, has asked the Florida court for time to retain licensed counsel. Gessin Decl., Ex. D. Mr.

Zeig has moved for a stay of the Coverage Action. Gessin Decl., Ex. E. That motion is pending. If the stay is granted, this Motion will be moot.

### E. Meet and Confer

On August 24, 2026, counsel for the Zeig Defendants sent counsel for Experian a detailed letter setting forth the grounds for this Motion and the authorities supporting it, and proposing a stipulated severance and stay. Gessin Decl. ¶ 9, Ex. F. The conference of counsel required by Local Rule 7-3 took place on September 1, 2026. The parties were unable to reach a resolution, and this Motion followed. *Id.* ¶ 10.

## III. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," and this rule "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005) (*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). In ruling on a *Landis* stay, courts weigh (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party," and that "[t]he court may also sever any claim against a party." Fed. R. Civ. P. 21. Severance is committed to the Court's broad discretion

and may be deployed, together with the Court's inherent authority over its docket, so that relief warranted as to some defendants does not delay the case as to others.

## IV. ARGUMENT

### A. Each *Landis* Factor Favors Staying the Claims Against the Zeig Defendants

#### 1. A Stay Will Not Damage Experian

Experian purports to seek money damages from the Zeig Defendants for alleged past conduct.[2] A delay in the recovery of damages "is not the kind of prejudice which should move a court to deny a requested postponement." *CMAX*, 300 F.2d at 269; *accord RLI Ins. Co. v. Ace Am. Ins. Co.*, No. 19-cv-04180-LHK, 2020 U.S. Dist. LEXIS 50004, at *12-13 (N.D. Cal. Mar. 20, 2020). This case is nothing like *Lockyer*, where the Ninth Circuit vacated a stay because the plaintiff sought "injunctive relief against ongoing and future harm" and the parallel proceeding was "unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court." 398 F.3d at 1112-13. The Firm is a dissolved entity; no ongoing conduct is alleged that a stay would perpetuate; trial is more than nine months away; and the severance requested below ensures that Experian's case against the remaining defendants proceeds on the current schedule without interruption. Nor is the requested stay open-ended like the one rejected in *Tyler v. Travelers Commercial Insurance Co.*, 499 F. Supp. 3d 693, 703-04 (N.D. Cal. 2020): it is tethered to a pending federal action between these very parties in which a motion seeking to stay the Coverage Action is already on file. Gessin Decl., Ex. E. Moreover, the party seeking the stay in *Tyler* was the plaintiff.

Experian's own litigation conduct forecloses any claim of prejudice. Experian is a defendant in the Coverage Action. It is defending that case through the same counsel appearing here. It has affirmatively pleaded that General Star waived, and is estopped from asserting, "any right to deny coverage, withdraw from the defense of

[2] Experian will likely never admit that its true purpose is to secure a criminal referral of the Stein Saks Defendants, irrespective of what the actual evidence proves.

the Zeig Defendants, or seek reimbursement of defense costs." Gessin Decl., Ex. B at 8-9. A party that tells one federal court the insurer must keep funding its adversaries' defense cannot credibly tell another federal court that it would be damaged by a sequencing order designed to protect that same defense until the funding question is answered. That is doubly true now: General Star is dismissing Experian from the Coverage Action precisely because Experian has stipulated to be bound by its judgment. Gessin Decl. ¶ 12, Ex. G. A party that has agreed the Florida judgment will bind it cannot claim to be a stranger to that proceeding, or to be prejudiced by a schedule that awaits the very judgment it has agreed will control. Experian's interest in a solvent, funded, and represented adversary, and in any eventual judgment being collectible, is served, not harmed, by the requested stay, if monetary damages are truly the end goal of this litigation. Nor is this Motion premature because General Star has not yet stopped paying. General Star has asked the Florida court to declare that it "may cease paying defense costs" now, and its reimbursement count enlarges the Zeig Defendants' claimed joint-and-several exposure with every passing invoice. Gessin Decl., Ex. A ¶¶ 28-29, 35-39. The Zeig Defendants need not wait until funding is cut off mid-deposition before seeking orderly relief. Instead, as discussed below, the Zeig Defendants' counsel will have no choice but to move to withdraw before funding is cut off.

**2. Absent a Stay, the Zeig Defendants Face Severe and Compounding Hardship**

The Zeig Defendants recognize that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. Their hardship is of a different and well-recognized kind. Courts in this Circuit have repeatedly held that forcing an insured to litigate simultaneously against its insurer and against the claimant in the underlying litigation is severe, cognizable prejudice: "Courts have found that any prejudice (if at all) to the insurer in having to pay defense costs while the underlying case is pending

is outweighed by prejudice to the insured in having to fight a 'two-front war.'" *RLI*, 2020 U.S. Dist. LEXIS 50004, at *20 (quoting *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *6 (N.D. Cal. Feb. 12, 2019)); *accord Clear Blue Specialty Ins. Co. v. Ozy Media, Inc.*, 669 F. Supp. 3d 907, 932 (N.D. Cal. 2023) ("[T]he prejudice to insureds can be severe where declaratory relief actions have overlapping factual issues with the underlying suit."); *Trees v. SEIU Local 503*, 574 F. Supp. 3d 856, 869 (D. Or. 2021) ("[S]ubjecting a litigant to the hardship and inequity of unnecessary and duplicative litigation favors a stay." (quotation marks omitted)).

Where, as here, the coverage question and the underlying merits turn on the same facts, the danger is not merely duplicated expense: it is the risk of inconsistent factual determinations and preclusion. "To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 301 (1993)**Error! Bookmark not defined.**, quoted in *Voyager Indem. Ins. Co. v. Goldsmith*, 733 F. Supp. 3d 905, 919-20 (C.D. Cal. 2024); *see also RLI*, 2020 U.S. Dist. LEXIS 50004, at *18 (refusing to hold an insured to the "Hobson's choice" of developing a factual record in one action that could then be used against it in the other, and observing that "the insured may be collaterally estopped from relitigating any adverse factual findings" (quoting *Montrose Chem. Corp. v. Superior Court*, 25 Cal. App. 4th 902, 910 (1994))).[3] Because General Star's exclusions track Experian's allegations of knowing and intentional misconduct, every deposition, brief, and finding in this action will be pressed into service in the Coverage Action, and vice versa.

[3] These cases support staying the Coverage Action, relief the Zeig Defendants have requested (Gessin Decl., Ex. E). Should the Florida court deny that request, it will fall to this Court to prevent inconsistent factual development between the two cases.

Nor can Experian escape this overlap by arguing that a coverage action is a pleadings-only exercise, in which the Florida court will simply lay the operative complaint in this action beside the policy and decide coverage within the confines of those two documents. If so, the Florida court should rule on coverage sooner rather than later, and this Court's severance and stay should not delay Experian's case.

Meanwhile, the hardship here involves a war on multiple fronts, one of them fought without counsel. While defending Experian's RICO claims in this Court through insurance-funded counsel, Mr. Zeig is simultaneously litigating against General Star in Florida pro se, because the Zeig Defendants cannot afford coverage counsel. Gessin Decl. ¶¶ 5-7, Exs. C-E. At the same time, General Star's requested declaration that it "may cease paying defense costs" hangs over every docket entry in this case. Courts recognize that "[t]he failure to receive defense costs when they are incurred constitutes an immediate and direct injury," because "[i]t is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation." *Clear Blue*, 669 F. Supp. 3d at 929 (quoting *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005)). Finally, General Star's reimbursement claim means that every dollar spent defending this action while the coverage dispute remains unresolved deepens the Zeig Defendants' claimed joint-and-several exposure. Proceeding now literally compounds their potential liability day by day.

### 3. A Stay Serves the Orderly Course of Justice

A stay is appropriate where the independent proceeding will "decide, or . . . contribute to the decision of, the factual and legal issues before the district court," *Lockyer*, 398 F.3d at 1113, and the independent proceeding need not be controlling, it need only "bear upon the case," *Leyva*, 593 F.2d at 863-64; *see Trees*, 574 F. Supp. 3d at 869-70. The pending stay motion in the Coverage Action asks the Florida court to issue an immediate stay. Gessin Decl., Ex. E. That ruling may determine whether this case proceeds with funded, stable representation or descends into chaotic and

uncertain withdrawal practice. If the stay is denied, the Coverage Action will proceed on the merits. Sequencing the claims against the Zeig Defendants behind the resolution of the Coverage Action will resolve the representation, funding, and preclusion problems described above. To the extent Experian truly seeks money damages, that ruling will define the Zeig Defendants' indemnity before the ADR this Court has ordered completed by January 15, 2027. *See Clear Blue*, 669 F. Supp. 3d at 932-33. Proceeding in parallel invites midstream disruption of counsel, satellite preclusion disputes, and wasted party and judicial resources.

### B. <u>Without a Severance and Stay, This Case Will Inevitably Be Sidetracked by the Forced Withdrawal of Counsel</u>

The Zeig Defendants cannot afford to pay counsel, vendors, or experts. Gessin Decl. ¶ 5. Their defense of this action has been funded entirely by General Star, the Zeig Firm is defunct, and Mr. Zeig's inability to fund even separate coverage counsel in Florida, where he stands sued by his own insurer, is a matter of public record. Gessin Decl., Exs. C-E. If General Star terminates its funding or obtains the declaration it seeks, the Zeig Defendants will be unable to perform their payment obligations under their engagement agreement with undersigned counsel. The coverage dispute alone results in an anticipatory breach of the agreement, and counsel could seek leave to withdraw at any time. *See* Cal. R. Prof. Conduct 1.16(b)(5) (permitting withdrawal where the client breaches a material term of an agreement with, or obligation to, the lawyer relating to the representation); L.R. 83-2.3.2 (withdrawal only upon order of the Court).

The consequences would cascade. An entity may appear in federal court only through licensed counsel. *Rowland*, 506 U.S. at 201-02 ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."); L.R. 83-2.2.2. Withdrawal, if the Court permits it,[4] would

[4] Gessin Schachter LLP is a small two-attorney firm. Litigating this matter without payment would impose a significant financial strain on the firm. Undersigned counsel also depends on a discovery vendor that has billed approximately six figures for this case. Gessin Schachter LLP cannot afford to pay this vendor.

therefore leave the Zeig Firm exposed to default and Mr. Zeig defending a complex RICO action pro se. The attendant litigation would burden the Court and every party, including Experian. A tailored severance and stay now is the orderly alternative to that inevitable sidetracking later.

**C. <u>The Equities Are Sharpened by the Nature of Experian's Claim: Negligence Masquerading as RICO</u>**

The Court need not resolve the merits in deciding this Motion. But in weighing hardship and equity, it matters what kind of claim the Zeig Defendants are being forced to fund a multi-front war over: Civil RICO. Discovery in this action, spanning nearly two years, multiple document productions, negotiated search terms, and a validated technology-assisted review, has produced no evidence that the Zeig Defendants operated or managed any enterprise, agreed to join any scheme, or knew that any credit denial letter was fabricated. To be sure, the Court sustained the amended complaint at the pleading stage, where the allegations must be accepted as true. Dkt. 122. But the equitable question is not what Experian has alleged, it is what nearly two years of discovery have actually produced as to the Zeig Defendants, and the answer is nothing that transforms an allegation of negligence into the knowing operation of a criminal enterprise. Experian's theory against the Zeig Defendants is that they wrongfully rented out their credentials. That is, at most, a claim of professional negligence, and "the Ninth Circuit has clarified that Congress enacted RICO to combat organized crime, not to provide a federal cause of action and treble damages for every tort plaintiff." *Doe v. Interinsurance Exch. of the Auto. Club*, No. 8:24-cv-02324-DOC-ADS, 2025 U.S. Dist. LEXIS 163880, at *11 (C.D. Cal. Aug. 21, 2025) (quotation and citation omitted). As against the Zeig Defendants, this is a negligence claim by a third party, not a true RICO claim.

That pleading choice is not cost-free. Negligence in the practice of law is the core of what a lawyer's professional liability policy insures. It is Experian's claim choice, not conduct the evidence supports, that precipitated the Coverage Action now

threatening the Zeig Defendants' defense. Equity does not permit Experian to plead its adversaries out of their insurance coverage and then demand that the resulting coverage emergency have no impact on this case. If Experian is confident in its RICO theory, it loses nothing by proving it after the Florida court decides who pays for the Zeig Defendants' defense.

### D. Severance Under Rule 21 Eliminates Any Conceivable Prejudice to Experian

The Zeig Defendants do not ask that Experian's case be halted. Severing the claims against the Zeig Defendants and staying only those severed claims allows Experian to prosecute its claims against the Stein Saks Defendants and all others on the existing schedule, while confining the stay to the two defendants whose defense funding is the subject of active federal litigation and by whose judgment Experian has agreed to be bound. Gessin Decl. ¶ 12, Ex. G. The conduct Experian alleges against the Zeig Defendants, the preparation of the challenged denial letters and transfers through the Zeig Firm's client trust account, is discrete and readily severable from its claims against the remaining defendants. And the Court may impose "just terms," Fed. R. Civ. P. 21, to mitigate any prejudice to Experian: the Zeig Defendants are prepared to submit joint status reports on the Coverage Action every ninety days, to notify the Court within seven days of any ruling on the pending stay motion or the duty to defend, and to return promptly to the schedule the Court then sets. A tailored severance and stay is a far more measured course than the alternatives that would otherwise confront the parties and the Court if the coverage dispute were to overtake this litigation.

## V. CONCLUSION

For the reasons set forth above, the Court should sever the claims against the Zeig Defendants under Federal Rule of Civil Procedure 21 and stay the severed claims pending final resolution of the Coverage Action or further order of this Court, or, at a minimum, pending the Southern District of Florida's adjudication of General Star's

duty to defend, on such just terms, including periodic joint status reports, as the Court deems appropriate. The Court should also permit the parties to appear before the Magistrate Judge for a settlement conference in lieu of private mediation.

Dated: September 18, 2026 **GESSIN SCHACHTER LLP**

By: */s/ Jesse Gessin*

Jesse Gessin
910 South El Camino Real, Suite 201
San Clemente, California 92672
Tel: (949) 328-6629
Jesse@gessinschachter.com

*Counsel for Defendants ZEIG LAW FIRM, LLC, and JUSTIN ZEIG*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Zeig Law Firm, LLC, and Justin Zeig, certifies that this brief contains approximately 5,955 words, which complies with the word limit of L.R. 11-6.1.

Executed on September 18, 2026, at San Clemente, California.

*/s/ Jesse Gessin*
Jesse Gessin

**PROOF OF SERVICE**

I served the foregoing document described as

**NOTICE OF MOTION AND MOTION TO SEVER AND STAY CLAIMS AGAINST THE ZEIG DEFENDANTS**

on the following-listed attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual notice) by the following means of service:

**SERVED BY U.S. MAIL:** There are currently no individuals on the list to receive mail notices for this case.

**SERVED BY CM/ECF:** I certify that, on September 18, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. The filing of the foregoing document will send copies to the CM/ECF participants for this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on September 18, 2026, at San Clemente, California.

*/s/ Jesse Gessin*
Jesse Gessin